No. 25-2397

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

STATE OF WASHINGTON,

Plaintiff - Appellant,

and

OKANOGAN HIGHLANDS ALLIANCE,

Plaintiff,

v.

CROWN RESOURCES CORPORATION and KINROSS GOLD USA, INC.,
Defendants - Appellees.

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON
AT SPOKANE

No. 2:20-cv-00147-MKD
The Honorable Mary K. Dimke
United States District Court Judge

# OPENING BRIEF FOR THE STATE OF WASHINGTON

NICHOLAS W. BROWN
Attorney General of Washington

TIMOTHY E. ALLEN
ELIZABETH HARRIS
Assistant Attorneys General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 521-3213
Timothy.Allen@atg.wa.gov
Elizabeth.Harris@atg.wa.gov

## TABLE OF CONTENTS


I. INTRODUCTION ..................................................................1

II. JURISDICTIONAL STATEMENT ..................................................2

III. STATEMENT OF THE ISSUES ....................................................2

IV. STATEMENT OF THE CASE .......................................................3

A. The Clean Water Act Protects Waters in Washington ................3

B. Crown Has a Long History of CWA Permit Violations .............4

C. OHA and Washington Have Been Litigating This Case for Years Under One Consolidated Lawsuit ...............................................5

D. The Consent Decree Was Exclusively Between OHA and Crown ....................................................................................6

E. Two Separate Orders Led to This Appeal ..................................8

V. SUMMARY OF ARGUMENT .......................................................9

VI. STANDARD OF REVIEW ..........................................................10

VII. ARGUMENT ..........................................................................11

A. Because the Consent Decree Shows No Intent to Preclude Washington's Case, This Court Must Reverse ..........................11

B. Even Under a Standard Claim Preclusion Analysis, Crown Cannot Establish the Necessary Elements of Claim Preclusion 15

1. The consent decree is not a final judgment on the merits for purposes of claim preclusion .............................................15

a. A consent decree is not a final judgment on the merits where it disclaims liability...........................................16

b. A consent decree resolving part of a consolidated lawsuit is not a final judgment .................................................18

2. The privity element of claim preclusion was not met..........23

a. The special statutory scheme exception does not apply 25

b. The adequate representation exception does not apply .27

C. The Consent Decree Does Not Preclude Ongoing Violations ...30

VIII. CONCLUSION.........................................................................32

## TABLE OF AUTHORITIES

Cases

*Bay State HMO Mgmt. Inc. v. Tingley Sys. Inc.*,
181 F.3d 174 (1st Cir. 1999) ................................................................ passim

*Burton v. Stevedoring Services of America*,
196 F.3d 1070 (9th Cir. 1999).............................................................. 26, 27

*Cell Therapeutics, Inc. v. Lash Group, Inc.*,
586 F.3d 1204 (9th Cir. 2009)............................................................... 16, 20

*Ctr. for Env't. Law & Policy v. U.S. Fish & Wildlife Serv.*,
228 F. Supp. 3d 1152 (E.D. Wash. 2017) .................................................. 28

*F.T.C. v. Garvey*,
383 F.3d 891 (9th Cir. 2004)...................................................................... 12

*Federated Dep't Stores, Inc. v. Moitie, et al.*,
452 U.S. 394 (1981) .................................................................................. 20

*Fleming v. Pickard*,
581 F.3d 922 (9th Cir. 2009)................................................................. 10, 11

*Gamino v. SPCP Group, LLC*,
No. 5:21-cv-01466-SB-SHK, 2022 WL 336469 (C.D. Cal. Feb. 2, 2022)........................................................................................... 18, 20

*In re Jenson*,
980 F.2d 1254 (9th Cir. 1992)............................................................... 15, 16

*In re Justice Oaks II, Ltd.*,
898 F.2d 1544, 1549 (11th Cir. 1990).................................................. 10, 17

*In Re. Flashcom, Inc. v. Communications Ventures*,
503 B.R. 99 (C.D. Cal. 2013)...................................................................... 29

*Int'l Tech. Consultants, Inc. v. Pilkington PLC*,
137 F.3d 1381 (9th Cir. 1998) ........................................................ 31

*Lawlor v. Nat'l Screen Serv. Corp.*,
349 U.S. 322 (1955) ........................................................................ 31

*Local No. 93 of Int'l Ass'n of Firefighters v. City of Cleveland*,
478 U.S. 501 (1986) ........................................................................ 12

*Media Rights Tech. Inc. v. Microsoft*,
922 F.3d 1014 (9th Cir. 2019) ........................................................ 10, 31, 32

*Mi Familia Vota v. Fontes*,
111 F.4th 976 (9th Cir. 2024) ........................................................ 18

*Miller v. County of Santa Cruz*,
39 F.3d 1030 (9th Cir.1994) ........................................................... 11

*Richards v. Jefferson County*,
517 U.S. 793 (1996) ........................................................................ 24

*Save the Bull Trout v. Williams*,
51 F.4th 1101 (9th Cir. 2022) ........................................................ 11, 15, 20

*Stewart v. U.S. Bancorp*,
297 F.3d 953 (9th Cir. 2022) .......................................................... 20

*Taylor v. Sturgell*,
553 U.S. 880 (2008) ........................................................................ passim

*Wojciechowski v. Kohlberg Ventures, LLC*,
923 F.3d 685, 689 (9th Cir. 2019) .................................................. passim

Regulations

40 C.F.R. § 135.5 ........................................................................ 4, 29

Statutes

28 U.S.C. § 1291 .......... 2

28 U.S.C. § 1331 .......... 2

33 U.S.C. § 1251(a) .......... 3

33 U.S.C. § 1311(a) .......... 3

33 U.S.C. § 1342 .......... 4

33 U.S.C. § 1362(12) .......... 4

33 U.S.C. § 1365 .......... 25

33 U.S.C. § 1365(a) .......... 4

33 U.S.C. § 1365(b)(1)(B) .......... 25, 26, 28

33 U.S.C. §1365(c)(3) .......... 4, 29, 30

Other Authorities

18 Wright and Miller's Federal Practice and Procedure § 4401 (3d ed. 2024) 18

# I. INTRODUCTION

The district court erred in dismissing Washington's Clean Water Act case against a polluting gold mine. It misapplied the doctrine of claim preclusion to prematurely cut off Washington's case based on a settlement between other parties. This Court should reverse.

Traditionally, the doctrine of claim preclusion applies only where there are two separate lawsuits, an identity of claims, an identity of parties, and a final resolution on the merits of the previous lawsuit. But that is not what happened here. This is a consolidated case involving a complaint filed by the Okanogan Highlands Alliance and a separate complaint filed by the State of Washington. Some, but not all, of the parties to the consolidated action entered into a consent decree: Crown Resources Corp., Kinross Gold U.S.A. Inc, (the owners/operators of the mine) and Okanogan Highlands Alliance. Washington did not join the consent decree and the settling parties did not fully represent Washington's interest. On its face, the consent decree does not bar Washington's case. Because it only resolved part of the consolidated action, it is not a final judgment on the merits.

The district court erred in granting Crown's motion for judgment on the pleadings, dismissing Washington's claims, and denying Washington's motion for relief for three primary reasons. First, the district court incorrectly applied the law of claim preclusion by failing to employ the analysis applicable to consent decrees. Second, even under the standard claim preclusion analysis, the

court erred because the required elements of preclusion were not met. Namely, the consent decree was not a final judgment on the merits barring a non-party's claims and there was no privity. Third, even if this Court concludes that all the elements and prerequisites of claim preclusion were met, the district court still erred in dismissing Washington's claims because Washington asserted claims for future CWA violations, which the consent decree cannot bar.

Because the district court erred in applying the doctrine of claim preclusion and dismissing Washington's claims, this Court should reverse and remand the district court's orders.

## II. JURISDICTIONAL STATEMENT

The district court had jurisdiction to hear this matter under 28 U.S.C. § 1331 since Washington asserted claims under the federal Clean Water Act. This Court has jurisdiction to hear this appeal under 28 U.S.C. § 1291 because the district court's orders granting the Motion for Judgment on the Pleadings and denying Washington's Motion for Relief from Judgment both constitute final decisions of the district court.

## III. STATEMENT OF THE ISSUES

1. Whether the district court erred by concluding the consent decree precluded Washington's claims when the consent decree showed no intent of the parties to preclude the claims.

2. Whether the district court erred in applying the doctrine of claim preclusion when two of the required elements of claim preclusion—final judgment on the merits and privity—were lacking.
3. Whether the district court erred in holding that a consent decree precluded Washington's claims for future permit violations.

## IV. STATEMENT OF THE CASE

This matter is based on Crown Resources Corporation and Kinross Gold USA, Inc.'s (collectively "Crown") longstanding permit violations for pollution discharges at the Buckhorn Mountain Mine. The State of Washington and the Okanogan Highlands Alliance ("OHA") sued Crown to hold Crown accountable for its persistent violations and ongoing degradation to Washington's waters and natural resources.

### A. The Clean Water Act Protects Waters in Washington

Congress enacted the federal Clean Water Act (CWA) to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). The CWA prohibits the discharge of pollutants to waters of the United States, unless in compliance with the Act. 33 U.S.C. §1311(a). As a result, discharge of pollutants from a facility covered by the CWA is unlawful unless the discharger first obtains a National Pollutant Discharge Elimination System (NPDES) permit in accordance with the Clean Water Act and the discharges fully comply with the terms set out in the permit.

33 U.S.C. § 1342. The CWA defines the term "discharge of a pollutant" to mean, in part, "any addition of any pollutant to navigable waters" from a facility subject to the Act. 33 U.S.C. § 1362(12).

Section 505(a) of the CWA allows any person to commence a civil action "on his own behalf" against another person who is alleged to be in violation of an effluent standard or limitation under the Act, such as an NPDES permit. 33 U.S.C. § 1365(a). When the parties to a citizen suit reach a negotiated settlement and seek to enter a consent decree to resolve their case, they must provide the consent decree to the United States Department of Justice and the Environmental Protection Agency. 33 U.S.C. §1365 (c)(3); 40 C.F.R. § 135.5. The Court must wait 45 days after the parties provide the consent decree to the federal government before entering the consent decree to protect the interests of the United States. *Id*.

**B. Crown Has a Long History of CWA Permit Violations**

Crown has a long history of violating the Clean Water Act at the Buckhorn Mountain Mine, a 50-acre underground gold mine they own and operate in Okanagan County, Washington. 4-ER-478-479; 4-ER-483-484. The Washington Department of Ecology issued an NPDES permit to Crown due to anticipated discharges from the mine. 4-ER-486-487. Crown has repeatedly violated the permit conditions throughout the mine's active operation by discharging pollutants into waters surrounding the mine and continues to do so

now that reclamation work is ongoing. *See* 4-ER-485-486; 4-ER-488-494. This non-compliance amounts to tens of thousands of violations. 4-ER-512-576.

### C. OHA and Washington Have Been Litigating This Case for Years Under One Consolidated Lawsuit

Due to Crown's ongoing permit violations, both OHA, a non-profit corporation, and the State of Washington separately provided notice of intent to sue Crown under the CWA. 5-ER-715-717; 4-ER-480-481.

After the required waiting period, OHA and Washington each separately filed suit against Crown under the citizen suit provision of the CWA. 5-ER-715-865; 4-ER-613-713; 4-ER-478-576. Washington filed suit to end "years of non-compliance by Defendants" with the NPDES permits (4-ER-479) and in order "to protect [the State's] own quasi-sovereign and property rights" as the "State owns the groundwater and surface waters . . . in and around the Buckhorn Mine." 4-ER-481-482. Washington alleged thousands of violations including effluent violations for pollutants leaving the mine site, failure to meet reporting requirements under the permit, failure to notify Ecology of conditions endangering health or the environment, and failure to provide plans required under the permit. 4-ER-488-495. Washington alleged continuing violations that accrue past the filing of the Complaint, including "any and all additional violations of the CWA which occur after those described in Plaintiff's Notice Letter but before a final decision in this action . . ." 4-ER-495. This would include any violations that have occurred since entry of the consent decree.

Soon after Washington and OHA filed their separate lawsuits against Crown, all the parties jointly moved to consolidate the two matters. *See* 4-ER-604-612. The district court granted the motion merging the two cause numbers into one, 4-ER-602-603, and later set the consolidated matter for trial with a case schedule and deadlines that applied equally to all parties. 4-ER-577-587.

The Plaintiffs jointly litigated the consolidated matter for over four years. Over the course of the litigation the parties pursued substantial written discovery and Plaintiffs jointly litigated, and won, several motions. 4-ER-577-587; 3-ER-461-476; 3-ER-449-460. OHA and Washington filed expert reports laying out the need for further investigation at the site as well as remedial actions to address ongoing discharge of pollutants from the site. 3-ER-327-329. Two years into the litigation, Crown Resources Corporation jointly stipulated with Washington and OHA to liability for over three thousand of their effluent limit permit violations. 3-ER-330-448.

**D. The Consent Decree Was Exclusively Between OHA and Crown**

In March 2023 the district court referred the case for mediation with all parties. 3-ER-325. Over one year later, in April 2024, following multiple mediation sessions, Washington's counsel reported that mediation between the parties was unsuccessful. 3-ER-322-324. Washington and Crown's counsel did not exchange further drafts of any potential settlement agreements after that report. 2-ER-152.

In September 2024, OHA's counsel notified Washington's counsel that OHA and Crown had reached a settlement, and OHA and Crown proposed a consent decree the next day. 2-ER-153; 2-ER-253-257; 3-ER-260-321. Before this contact, Washington's counsel was unaware that OHA and Crown were in negotiations. 2-ER-153.

The plain language of the consent decree shows that it was exclusively between OHA and Crown. The consent decree makes no reference to resolution of Washington's claims or to claim preclusion. 2-ER-179-243. On its face it resolved *only* OHA's claims against Crown: "OHA releases . . . the claims for Clean Water Act and permit violations alleged in OHA's Complaint in this action" and did not resolve liability. "This consent decree is a settlement of disputed facts and law. It is not an admission . . . regarding any allegations by OHA in this case . . . [or] any of Defendants' defenses to those allegations . . ." 2-ER-197; 2-ER-188-189. Moreover, it reserved all defenses Crown may have against "any claims alleged by the State of Washington[,]" and the consent decree made no reference to claim preclusion. 2-ER-195-196. The district court entered the consent decree in late October 2024. 2-ER-181.

The consent decree provides a plan for investigating the mine site and a process to develop a corrective action plan. 2-ER-189-193. The consent decree did not address Washington's claims or ongoing violations that accrued after entry of the consent decree. Additionally, the consent decree does not

incorporate the recommendations for remedial actions to capture and treat ongoing discharges of pollutants from the mine identified in Washington's expert reports. 2-ER-179-243. Washington and Crown continued to schedule and attend depositions until the district court later stayed the case. 2-ER-61. Washington seeks to continue prosecuting its case against Crown in order to secure additional relief, such as the relief recommended by Washington's experts and not included in the consent decree.

### E. Two Separate Orders Led to This Appeal

In mid-November 2024, Crown filed a Rule 12(c) motion to dismiss Washington's claims based on a claim preclusion theory. *See* 2-ER-155-177. Crown seemed to recognize that its theory was novel, stating, "This case presents a question of first impression . . ." 2-ER-156. At this point, both Crown and Kinross Gold moved to amend their answers to include a res judicata defense. 2-ER-64-75; 2-ER-93; 2-ER-113.

The district court granted Crown's motion and dismissed Washington's claims. 1-ER-14. The district court found, among other things, that "each element of claim preclusion is satisfied." 1-ER-9.

Washington timely moved for relief from judgment. 2-ER-16-26. Washington argued, among other things, that the court erred because it applied claim preclusion to a single consolidated action, contradicting authority that claim preclusion applies only to a "subsequent suit on claims that were raised

or could have been raised in a prior action." 2-ER-18. The court denied Washington's motion. 1-ER-4. Washington timely appealed. 5-ER-866-867.

## V. SUMMARY OF ARGUMENT

The district court incorrectly concluded that claim preclusion applied and barred Washington's CWA citizen suit claims based on a consent decree between a different plaintiff and the same defendants in the consolidated lawsuit.

The district court erred for the following five reasons:

First, the court erred by dismissing Washington's case when the consent decree showed no intent to preclude Washington's claims. When assessing a consent decree, a court must apply a modified claim preclusion analysis. *Wojciechowski v. Kohlberg Ventures, LLC*, 923 F.3d 685, 689 (9th Cir. 2019). A court looks at the consent decree like a contract and determines the intent of the parties. Here, by its plain language, the consent decree does not preclude Washington's claims and there is no indication the parties to the decree intended to do so. Thus, the consent decree does not claim preclude Washington's case.

Second, the court also erred because two essential elements of claim preclusion were not present: a final judgment on the merits and privity. With respect to the first, the consent decree did not "decide the merits" of the claims asserted and thus, is not a final judgment on the merits with a preclusive effect.

*See, e.g.*, *In re Justice Oaks II, Ltd*., 898 F.2d 1544, 1549 (11th Cir. 1990). Because this is a consolidated case, a consent decree signed by some parties is not a final judgment with respect to the whole case. *Bay State HMO Mgmt. Inc. v. Tingley Sys. Inc*., 181 F.3d 174, 180 (1st Cir. 1999). Moreover, regarding the privity element, there are no exceptions to the rule against non-party preclusion that apply in this case. *See Taylor v. Sturgell*, 553 U.S. 880 (2008).

Third, even if the elements of claim preclusion were met, the district court still erred in dismissing Washington's complaint because Washington asserted claims for *future* CWA violations, which the consent decree cannot bar. 2-ER-495. Violations occurring after entry of the consent decree cannot be barred by claim preclusion. *See Media Rights Tech. Inc. v. Microsoft*, 922 F.3d 1014, 1021 (9th Cir. 2019) (internal citation omitted) (holding that "a claim arising after the date of an earlier judgment is not barred, even if arising out of a continuing course of conduct . . .").

In sum, the district court erred in dismissing Washington's claims because Crown failed to meet their high burden of proving that claim preclusion applied and barred Washington's claims.

## VI. STANDARD OF REVIEW

Courts review an order granting a Rule 12(c) motion for judgment on the pleadings de novo. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). Thus, the Court must accept all factual allegations in the complaint as true and

construe them in the light most favorable to the non-moving party. *Id*. Judgment on the pleadings is properly granted only when the party is entitled to judgment as a matter of law." *Id*.

Similarly, courts review *de novo* a district court's determination that res judicata and collateral estoppel bar re-litigation of a claim. *Miller v. County of Santa Cruz*, 39 F.3d 1030, 1032 (9th Cir.1994). A party seeking to invoke claim preclusion bears the burden of establishing each required element. *Taylor*, 553 U.S. at 907. Crown cannot satisfy its heavy burden on the facts of this case.

## VII. ARGUMENT

### A. Because the Consent Decree Shows No Intent to Preclude Washington's Case, This Court Must Reverse

The consent decree resolved OHA's case against Crown. It did not explicitly resolve *Washington's* case against Crown and cannot bar Washington's claims.

This Court analyzes preclusion claims springing from consent decrees differently than preclusion claims based on a more traditional judgment. Traditionally, courts conduct a three-part analysis to determine if claim preclusion applies. A court looks to whether a resolved case: "(1) involved the same claim or cause of action as the later suit; (2) reached a final judgment on the merits; and (3) involved identical parties or privies." *Save the Bull Trout v.*

*Williams*, 51 F.4th 1101, 1107 (9th Cir. 2022) (quoting *Sidhu v. Flecto Co*., 279 F.3d 896, 900 (9th Cir. 2002)).

However, this Court views consent decrees as contracts and looks at the intent of the parties behind the consent decree to determine how to apply claim preclusion, if at all. *F.T.C. v. Garvey*, 383 F.3d 891, 898 n.7 (9th Cir. 2004) ("The basically contractual nature of consent judgments has led to general agreement that preclusive effects should be measured by the intent of the parties." (internal quotation omitted)); *see also Local No. 93 of Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 519 (1986) ("[C]onsent decrees 'have attributes both of contracts and of judicial decrees,' a dual character that has resulted in different treatment for different purposes."). In this way, the standard claim preclusion "inquiry is modified" when looking at a consent decree, and this Court should "look to the intent of the settling parties to determine the preclusive effect of a dismissal with prejudice entered in accordance with a settlement agreement, rather than to general principles of claim preclusion." *Wojciechowski,* 923 F.3d at 689.

Here, there is nothing in the express language of the consent decree that shows an intent to preclude Washington's claims. The language of the consent decree released only OHA's claims against Defendants. The consent decree expressly states that the "Parties to this consent decree intend to resolve OHA's Complaint against Defendants" without ever mentioning resolution of

Washington's claims. *See, e.g.*, 2-ER-185-197. Additionally, Crown expressly reserved their defenses against "any claims alleged by the State of Washington in this action," recognizing that Washington's claims were not released by the consent decree. 2-ER-198-199. On its face, the consent decree shows no intent to preclude Washington's case.

This Court need not look beyond the express language of the consent decree here because the language is unambiguous. However, if this Court finds the express language of the consent decree regarding the parties' intent to be unclear, the court may look beyond the "four corners" of the document. *See, e.g.*, *Wojciechowski*, 923 F.3d at 690 ("Where the plain meaning of an agreement is clear, we may not go beyond the four corners of the document") (internal citation omitted).

Here, statements made by counsel for Crown and OHA confirm that the settling parties did not intend for their agreement to have preclusive effect as to Washington's claims. At a court status conference held shortly after entry of the consent decree, Crown's counsel stated that the consent decree does not dispose of Washington's claims. As summarized in the minutes of the conference, Crown's counsel "indicated he agrees that the consent decree does not dispose of the State of Washington's claims, but he does believe the claims are barred by claim preclusion[,]" and counsel for OHA "stated that he agrees the consent decree does not resolve any claims by the State of Washington.", 2-

ER-178. Similarly, in briefing before the district court, Crown argued that the consent decree "evinces a clear intent to finally resolve OHA's citizen suit," without noting any intent to resolve Washington's suit. 2-ER-120. These positions do not support an argument that Crown or OHA intended the consent decree to preclude Washington's claims. Where, as here, counsel for Crown and OHA cannot point to any evidence showing an intent for the consent decree to dispose of or resolve Washington's claims, the consent decree cannot preclude Washington's claims. *Wojciechowski,* 923 F.3d at 689

Crown argues that "the preclusive effect of a consent decree" can only be altered where "parties deliberately limit the preclusive effect of a consent decree by preserving specific claims." 2-ER-119-120. However, Crown misconstrues the *Wojciechowski* case. *Wojciechowski* recognizes that when looking at a consent decree the court must look to the intent of the parties. *Wojciechowski*, 923 F.3d at 690. The *Wojciechowski* court did not conclude that a court must look only for a deliberate preservation of claims. *Id*.

Here, Crown did not, and could not, show the parties intended to preclude Washington's claims. Crown has the burden of proving that all necessary elements of claim preclusion apply to preclude Washington's case. *See, e.g.*, *Taylor*, 553 U.S. at 907 ("[A] party asserting preclusion must carry the burden of establishing all necessary elements.") (quoting 18 Wright & Miller's Federal Practice & Procedure § 4405, at 83 (2d ed. 2002)); *Save the*

*Bull Trout v. Williams*, 51 F.4th 1101, 1107 (9th Cir. 2022). Where Crown alleges a consent decree creates claim preclusion, that means Crown must show intent to preclude Washington's claims in the consent decree. *Wojciechowski,* 923 F.3d at 689. Crown cannot meet this burden because it can point to nothing in the consent decree showing an intent to preclude Washington's claims.

## B. Even Under a Standard Claim Preclusion Analysis, Crown Cannot Establish the Necessary Elements of Claim Preclusion

As referenced above, claim preclusion applies only "where the earlier suit (1) involved the same 'claim' or cause of action as the later suit, (2) reached a final judgment on the merits, and (3) involved identical parties or privies." *Save the Bull Trout*, 51 F.4th at 1107 (citation omitted). Here, two necessary elements were not present: there was not a final judgment on the merits and the narrow exceptions to non-party preclusion were not met.

### 1. The consent decree is not a final judgment on the merits for purposes of claim preclusion

Because the consent decree was not a final judgment on the merits, it does not preclude Washington's claims. "To be given preclusive effect, a judgment must be a final adjudication of the rights of the parties and must dispose of the litigation on the merits." *In re Jenson*, 980 F.2d 1254, 1257 (9th Cir. 1992) (*Internal citation omitted*)). The very nature of consent decrees is that they are not "a final adjudication of the rights of the parties" and do not "dispose of the litigation on the merits," and thus do not support claim

preclusion. *Id*. This is especially true where a consent decree only disposes of part of a consolidated case. *Tingley*, 181 F.3d at 180-81.

**a. A consent decree is not a final judgment on the merits where it disclaims liability**

When this Court has looked to the claim preclusive effect of settlements or consent decrees, it has found that they are not final judgments with respect to preclusion of a third party's claims. In *Cell Therapeutics,* this Court held that a settlement agreement did not create claim preclusion against a third party where the third party was not a signatory to the settlement agreement and where the agreement specifically "disclaims its potential preclusive effect regarding issues of liability." *Cell Therapeutics, Inc. v. Lash Group, Inc*., 586 F.3d 1204, 1211 (9th Cir. 2009). The *Cell Therapeutics* court found that where a settlement agreement released only certain parties, but not all parties, the settlement agreement "should not be construed as a final judgment on [a party's] liability." *Id*. at 1211. The Court found that in that case "there has been no final judgment on the merits" to support application of claim preclusion *Id*. at 1212.

Here, the terms of the consent decree explicitly disclaim any admission or adjudication of liability. *See* 2-ER-188-189 ("It is not an admission or adjudication regarding any allegations by OHA in this case, any fact or conclusion of law related to those allegations, any of Defendants' defenses to those allegations, or any fact or conclusion of law related to those defenses.

This consent decree is not evidence of any wrongdoing or misconduct on the part of Defendants."). Additionally, the district court did not reach a conclusion on Crown's liability in its relevant order. The court reviewed the consent decree to determine if it "arises from and serves to resolve a dispute within [the Court's] subject matter jurisdiction," "comes within the general scope of the case made by the pleadings and furthers the objectives of the Clean Water Act," and is "fair, reasonable, and equitable, and that there is no indication it violates the law or public policy." 2-ER-180-181. While Crown stipulated to liability earlier in the case, this was only for a subset of the alleged violations and notably Kinross Gold. U.S.A. Inc. did not stipulate to any liability. 3-ER-330-448. Nowhere did the Court make a finding of liability or otherwise review the merits of the case to make the consent decree a final judgment on Crown's liability under the CWA. 2-ER-179-181. Where, as here, a court's entry of a consent decree does not decide the merits of a case, the consent decree does not have a preclusive effect. *See, e.g.*, *Justice Oaks*, 898 F.2d at 1549 (concluding a settlement agreement entered by a bankruptcy court did not have a preclusive effect where the court did not decide the merits).

Crown's reliance on *Mi Familia* for the finality of consent decrees is unavailing because that case does not address the application of claim preclusion against a non-party to a consent decree. 2-ER-163 (citing *Mi Familia Vota v. Fontes*, 111 F.4th 976, 982 (9th Cir. 2024)); *see also* 1-ER-11.

In *Mi Familia*, this court held that a consent decree was a "final judgment with the force of res judicata" that "cabins the authority of the parties to the Decree" such that a subsequent legislative act could not compel the parties to act contrary to the decree. *Mi Familia*, 111 F.4th at 982. But the *Mi Familia* case is distinguishable because that court was *not* deciding if a consent decree can preclude the claims of a non-signatory. *Id*. Where this Court has specifically looked at the claim preclusive effect of agreements against non-signatories, it has found the opposite. *See, e.g.*, *Cell Therapeutics* discussion, *supra*.

#### b. A consent decree resolving part of a consolidated lawsuit is not a final judgment

Where a consent decree only resolves part of a consolidated case, claim preclusion does not apply to the remaining parts of the case. Generally, claim preclusion should not apply within a single lawsuit that is managed as a single action, including in a consolidated matter. *See, e.g.*, 18 Wright and Miller's Federal Practice and Procedure § 4401 (3d ed. 2024) ("Claim preclusion, however, is not appropriate within a single lawsuit so long as it continues to be managed as a single action."). Where, as here, one party in a consolidated case receives a judgment, courts have held that claim preclusion against a remaining party is inappropriate as there is no final judgment. *Gamino v. SPCP Group, LLC*, No. 5:21-cv-01466-SB-SHK, 2022 WL 336469, at *3 (C.D. Cal. Feb. 2, 2022) (citing *Tingley*, 181 F.3d at 180-81) (holding that consolidated cases "should be treated as a single action for res judicata purposes" and stating that

"consolidation precludes the use of the doctrine of res judicata to bar one action when the other action is resolved first").

In *Tingley*, the First Circuit directly addressed why claim preclusion does not apply in a case like this one. There, two cases filed by Tingley were consolidated into "one proceeding." *Tingley*, 181 F.3d at 177. Following a settlement between Tingley and one defendant, Bay State, a stipulation and order of dismissal was entered. *Id*. The second defendant, CSC, subsequently moved for summary judgment on res judicata grounds claiming that the order of dismissal against Bay State barred Tingley's claims against CSC. *Id.* The First Circuit ultimately concluded that the Bay State and CSC cases should be treated as a single action for res judicata purposes specifically because they were consolidated and that "consolidation precludes the use of the doctrine of res judicata to bar one action when the other action is resolved first." *Id*. at 180-182. *See also Id.* at 181 n.5. The court concluded that "there was no final judgment on the merits in an earlier action; there was only a final judgment on a portion of the aggregate case." *Tingley*, 181 F.3d at 177. Like *Tingley*, this matter involved two cases that were consolidated and then a subsequent settlement between only three of the four parties – "a portion of the aggregate case." *Id*. While the *Tingley* case involved application of res judicata by multiple defendants against a single plaintiff, the underlying analysis applies and is instructive in this case. In finding that there was a final judgment in this

case, the district court ignored the impact of consolidation. The consent decree resolved only "a portion of the aggregate case" and cannot be a final judgment. *Id.*

Significantly, neither Crown nor the district court point to case law applying claim preclusion within a consolidated lawsuit, let alone one where a consent decree disposed of only part of the case. Instead, the underlying facts in the cases cited by Crown and the district court are distinguishable as they apply claim preclusion to claims within a separate unconsolidated lawsuit, often *filed after judgment* in the first case. *See Federated Dep't Stores, Inc. v. Moitie, et al.*, 452 U.S. 394, 396, 398-402 (1981) (claim preclusion barred two *new* lawsuits filed in state court following judgment in federal court action); *Stewart v. U.S. Bancorp*, 297 F.3d 953, 955-58 (9th Cir. 2022) (claim preclusion barred plaintiffs' *new* complaint filed one month after dismissal of earlier suit); *Cell Therapeutics*, 586 F.3d at 1206 (separate lawsuit filed by CTI against Lash, *after* prior lawsuit was settled); *Save the Bull Trout* 51 F. 4th at 1105, 1107-09 (claim preclusion barred Plaintiffs' *new* ESA lawsuit after Plaintiffs failed to appeal denial of Motion to Amend in prior lawsuit).When courts have looked at claim preclusion applied against a third party in a consolidated lawsuit, they have found it does not apply. *Gamino v. SPCP Group, LLC*, 2022 WL 336469, at *3 (citing *Tingley*, 181 F.3d at 180-81, n.5).

Crown argues that allowing Washington's case to proceed would lead to "endlessly duplicative citizen suits." 2-ER-173. However, as in *Tingley,* due to the consolidation of Washington and OHA's cases this argument does not hold. The *Tingley* court found that consolidation avoided the "cost and vexation of multiple lawsuits." *Tingley*, 181 F.3d at 181. Similarly, allowing Washington to continue to litigate its claims against Crown for its persistent and continuing Clean Water Act violations would promote judicial efficiency because OHA and Washington have been litigating this case together as one consolidated case for over four years. Further, concluding that claim preclusion does not apply within a consolidated lawsuit would not lead to endless litigation, as only citizen suits that had been consolidated would benefit from such a holding.

Ruling for Crown here and applying claim preclusion within a consolidated lawsuit could undermine settlement incentives, delay pollution stopping actions, and limit available relief. Were this Court to hold that claim preclusion applies to Washington's claims in this consolidated lawsuit it would encourage citizen suit plaintiffs in future consolidated cases to object to partial settlements, lead to ongoing and needless litigation, and delay resolution and implementation of partial remedial measures. *See Tingley*, 181 F.3d n.6 (recognizing that to hold otherwise "would discourage litigants from entering into partial settlements in consolidated cases"). It would also encourage gamesmanship, with citizen suit defendants attempting to pick off the least

committed plaintiffs in consolidated cases and moving to dismiss all other claims. Additionally, it creates an incentive for parties to object and find fault with an early settling plaintiff's proposed consent decree. When these concerns are persuasive to the court, it will delay resolution of cases and thus delay implementation of any partial remedial measures in the consent decree. This delay could mean that pollution discharges will continue while litigation is ongoing. Finally, finding claim preclusion here will cut Washington out of development of a remedy and enforcement of the consent decree. Allowing only the first settling party to determine the remedy could result in a partial remedy that fails to fully address the environmental harm. As Washington noted in its briefing below, Washington seeks to impose additional, immediately actionable remedial obligations on Crown through further litigation of its claims. 2-ER-23-24. Claim preclusion will prevent the implementation of these remedial actions in this case and future consolidated citizen suits.

Crown raises the specter of "duplicative relief" as a reason to claim preclude Washington's case. 2-ER-173. However, this is not a concern where, as here, two citizen suits have been consolidated. There is no risk of duplicative relief here because Washington's case would proceed under the same case number and the same judge. The district court could review any remedial demand from Washington for duplication or inconsistency with the

court's prior ruling. There is also no risk of an inconsistent decision on liability. The consent decree did *not* adjudicate liability, so any decision on liability in Washington's ongoing case could not conflict with the consent decree. 2-ER-188-189. Furthermore, Washington does not need to seek a liability ruling before the district court on the violations for which Crown has already stipulated liability. 3-ER-330-333. As the remaining alleged violations have not been adjudicated, Washington cannot secure a conflicting ruling.

The consent decree is a final judgment with respect to the issues specifically addressed in the consent decree. It is not, however, a final judgment with respect to the entirety of the aggregate case against a non-signatory for purposes of claim preclusion. Because the consent decree did not resolve the State's portion of the aggregate case it should not bar the State's claims.

**2. The privity element of claim preclusion was not met**

Crown also cannot satisfy the final element of claim preclusion—identical parties or privity. The general rule is that claim preclusion requires identity of parties. That is, claim preclusion bars a particular party from bringing the same claims against another party a second time. *Taylor*, 553 U.S. at 892. Here, it is undisputed that the parties are not identical. OHA is a private, local, non-profit organization; the State of Washington is a sovereign entity. As a result, to preclude the State's claims Crown bears the burden of

establishing "nonparty preclusion," also sometimes referred to as "privity." *Id.* at n.8.

The Supreme Court has recognized a general "rule against nonparty preclusion[.]" *Id.*; *see also Richards v. Jefferson County*, 517 U.S. 793, 798 (1996). The rule against nonparty preclusion is based on "our 'deep-rooted historic tradition that everyone should have his own day in court.'" *Richards*, 517 U.S. at 798 (quoting Wright & Miller, Federal Practice and Procedure § 4449, p. 417 (1981)).

While the Supreme Court has also recognized six categories of exceptions to the "rule against nonparty preclusion," *Taylor*, 553 U.S. at 893, none apply here. Four of the categories in *Taylor* are inapplicable to this case and Crown did not rely on them below. First, Washington did not "agree to be bound" by the consent decree as it was not a signatory to the decree. *Taylor*, 553 U.S. at 893. Second, there is no "substantive legal relationship," such as that of an assignee and assignor, between Washington and either Crown or OHA. *Id*. Third, Washington has not "assumed control" of the litigation. *Id*. Fourth, Washington is not a proxy for any other party here. *Id*.

The two exceptions relied on by Crown also do not apply. This is neither a "special statutory scheme" that "'expressly forecloses successive litigation by nonlitigants,'" nor is this a situation where Washington—a sovereign state—

was adequately represented by someone with the same interests. *Id.* at 894-95 (quoting *Martin v. Wilks*, 490 U.S. 755, 762 n.2 (1989)).

**a. The special statutory scheme exception does not apply**

The Clean Water Act is not a special statutory scheme that expressly forecloses successive citizen suits. It provides a citizen suit process that is only precluded where a regulator takes a traditional enforcement action first. 33 U.S.C. § 1365(b)(1)(B). The Supreme Court provided that "in certain circumstances a special statutory scheme may *expressly foreclose* successive litigation by nonlitigants." *Taylor*, 553 U.S. at 895 (emphasis added). The Court gave examples of such schemes, including bankruptcy and probate proceedings and suits like *quo warranto* actions, that "may be brought only on behalf of the public at large. *Id*. Here, the CWA is not such a statutory scheme.

Nothing in the plain language of the CWA bars a citizen from filing his own citizen suit after another citizen has filed a citizen suit. *See, e.g.*, 33 U.S.C. § 1365. The diligent prosecution bar raised by Crown below expressly forecloses litigation by citizens only after filing of a traditional government enforcement action. 2-ER-167; 33 U.S.C. § 1365(b)(1)(B) ("No action . . . may be commenced … if the Administrator or State has commenced and is diligently prosecuting a civil or criminal action . . ."). However, the statute is silent as to a citizen suit filed <u>after</u> another private citizen suit. *See* 33 U.S.C. § 1365(b)(1)(B).

The diligent prosecution bar is inapplicable here as there is no traditional government enforcement action. Washington filed this suit under the CWA citizen suit provision "on [its] own behalf," acting in the same role as any other citizen suit plaintiff. 4-ER-494; 33 U.S.C. § 1365(b)(1)(B). Thus, the special statutory scheme exception does not apply.

Crown incorrectly elevated the *Taylor* court's *example* of suits that may be brought only on behalf of the public to a binding standard for applying nonparty preclusion. Crown argued that the diligent prosecution bar is evidence that "there is only one claim—the public's claim" in CWA citizen suits. 2-ER-167. Crown incorrectly assumed that because OHA's settlement resolved "the public's claim" that it absolutely bars Washington's claim. 2-ER-170. This is incorrect. The fact that OHA sued to enforce the NPDES permit does not mean that the text of the CWA "expressly foreclose[s] successive litigation by nonlitigants." *Taylor*, 553 U.S. at 900.

If a statute is clear and unambiguous, the court should look no further beyond the plain meaning of the statute. *Burton v. Stevedoring Services of America*, 196 F.3d 1070, 1072 (9th Cir. 1999). Here, the plain meaning of the statute only expressly forecloses litigation by non-litigants following a traditional government enforcement action but is silent on litigation by non-litigants following the filing of a citizen suit. Had Congress intended the CWA

to bar one citizen suit from commencing after another had been resolved, it could have stated so. *See Burton*, 196 F.3d at 1072.

Crown's example does not overrule the plain language of the statute or actual standard provided by the Supreme Court. The text of the CWA is clear and provides the actual answer: a citizen may file a citizen suit even after another citizen has done so.

**b. The adequate representation exception does not apply**

OHA did not adequately represent Washington's interests in negotiating or entering the consent decree. OHA was not acting in a representative capacity for Washington and did not fully protect the interests of Washington in entering the consent decree.

The Supreme Court explained that "in certain limited circumstances" "[a] party's representation of a nonparty is 'adequate' for preclusion purposes only if, at a minimum: (1) The interests of the nonparty and her representative are aligned, and (2) either the party understood herself to be acting in a representative capacity or the original court took care to protect the interests of the nonparty." *Taylor*, 553 U.S. at 900 (cleaned up).

Washington and OHA do not have identical interests in this litigation. Washington and OHA both brought claims available to the general public, but this does not mean they have identical interests. Washington filed suit to "protect the State's own quasi-sovereign and property rights" in the waters

impacted by the Buckhorn Mountain Mine, while OHA was bringing the suit as a private, nonprofit organization. *Compare* 4-ER-481-482, *with* 5-ER-718-720. Indeed, OHA brought its suit "on [its] own behalf," as did Washington. 33 U.S.C. § 1365(b)(1)(B); *see also Ctr. for Env't. Law & Policy v. U.S. Fish & Wildlife Serv.*, 228 F. Supp. 3d 1152, 1159–60 (E.D. Wash. 2017) ("[A] citizen (or entity) bringing a citizen suit under the CWA does not actually represent all citizens; instead, he brings the action 'on his own behalf.'") (citations omitted). Because these interests diverge, OHA could not have sufficiently represented Washington's interests to support nonparty preclusion.

When looking at the representative capacity element, *Taylor* held that the representation is "adequate" for preclusion purposes only if the representative party must have "understood herself to be acting in a representative capacity." *Taylor*, 553 U.S. at 900. There is no indication in the record that OHA understood itself to be acting in a representative capacity for Washington. Indeed, counsel for OHA stated that they did not think the consent decree addressed Washington's claims. 2-ER-178. Furthermore, examples of representative suits with preclusive effect include properly conducted class actions and suits brought by guardians, trustees, and other fiduciaries. *Taylor,* 553 U.S. at 900. Neither OHA nor Defendants claim to be fiduciaries or anything like a fiduciary, for Washington's interests. Notably, *Taylor* makes no

mention of citizen-suit environmental cases, such as the CWA, and it is a stretch to conclude the exception applies here.

The district court and Crown's criticism of Washington for not objecting to the consent decree is misplaced. Washington did not object because it had no need to object. A nonparty's failure to object to a proposed settlement agreement does not mean that they are then bound by that judgment or claim precluded. *In Re. Flashcom, Inc. v. Communications Ventures*, 503 B.R. 99, 112 (C.D. Cal. 2013) (holding that lack of objection to settlement agreement did not provide grounds to bind non-signing party to a settlement agreement or apply claim preclusion). Additionally, there was nothing to object to because, as discussed above, there is no support in the case law for the application of res judicata in a consolidated case on the basis of a consent decree that has no stated intent to preclude a third party's claims. Holding otherwise would require parties to ignore case law applying the intent of the parties to consent decrees in claim preclusion cases. *Wojciechowski*, 923 F.3d at 690.

Furthermore, the district court's assertion that Washington's interests could be protected by objection during the statutory waiting period fails under its own logic. The 45-day period exists to "protect the interests of the United States," not the interests of a co-plaintiff. 33 U.S.C. §1365 (c)(3); 40 C.F.R. § 135.5. The statute makes no reference to providing an opportunity for co-plaintiffs, who are not signatories to a settlement agreement, to comment.

Indeed, there is no explicit process anywhere for such objections. The court did not set any hearing, briefing schedule, or the like where Washington could object. Nor did Washington ask the court for an opportunity because it understood, pursuant to standard claim preclusion principles, that it would have the opportunity to continue pursuing additional relief even should the court enter the consent decree. That understanding was consistent with the terms of the consent decree itself, in which Crown expressly reserved all defenses against Washington's claims.

Importantly, Washington was not aware of Crown's position on claim preclusion until after the consent decree was entered with the district court. By then it was too late to object to the consent decree. Moreover, the Court erred by entering the consent decree three days before the statutory 45-day waiting period expired, thereby depriving Washington of the full objection period. 33 U.S.C. § 1365(c)(3); 2-ER-246. Crown failed to meet the heavy burden required to prove the application of claim preclusion and the court erred in concluding that the limited exceptions to nonparty preclusion served to preclude Washington's claims.

### C. The Consent Decree Does Not Preclude Ongoing Violations

At an absolute minimum, the consent decree cannot preclude Washington's claims for ongoing violations that accrued after entry of the consent decree.

This Court has held that claims for continuing violations cannot be barred by a consent decree entered before the new violations accrue. *See Media Rights*, 922 F.3d at 1021 (holding a claim arising after the date of an earlier judgment is not barred by claim preclusion even if it arises out of a continuing course of conduct). *See also Lawlor v. Nat'l Screen Serv. Corp*., 349 U.S. 322, 328 (1955); *Int'l Tech. Consultants, Inc. v. Pilkington PLC*, 137 F.3d 1381, 1389-90 (9th Cir. 1998). This is true even where the same conduct that led to an earlier adjudicated claim continues and leads to newly filed claims. *Media Rights*, 922 F.3d at 1021.

In this case, entry of the consent decree cannot bar Washington's claims for continuing violations, even though these new violations arise out of a continuing course of conduct on Crown's part. Washington's suit includes claims for violations that have accrued and will accrue after the entry of the consent decree, up until the date that Washington receives a final judgment on its claims. 4-ER-495. The consent decree resolved only OHA's claims. 2-ER-197. Furthermore, OHA's claims asserted in its complaint are those that "occur or are discovered after those described in the Notice Letter but before a final decision in this action." 5-ER-741-742. The consent decree is a final decision with respect to OHA's case. Therefore, any violations that occur after entry of the consent decree could not be claim precluded by the consent decree. *Media*

*Rights*, 922 F.3d at 1021. OHA's release of those claims cannot restrict any other party. 2-ER-197.

So, any claims for violations that have accrued since entry of the consent decree cannot be claim precluded. *Media Rights*, 922 F.3d at 1021. Accordingly, the district court erred in ignoring this Court's authority and concluding the consent decree barred all of Washington's claims, including its claims for future violations.

## VIII. CONCLUSION

For all the reasons addressed herein, this Court should reverse the district court's orders and its conclusion that claim preclusion bars Washington's claims. The matter should be remanded back to district court so that Washington can continue to litigate its case against Crown.

RESPECTFULLY SUBMITTED this 31st day of July, 2025.

NICHOLAS W. BROWN
Attorney General of Washington

*s/ Timothy E. Allen*
TIMOTHY E. ALLEN
ELIZABETH HARRIS
Assistant Attorneys General
800 5th Avenue, Suite 2000
Seattle, WA 98104
(206) 521-3213
Timothy.Allen@atg.wa.gov
Elizabeth.Harris@atg.wa.gov

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule of Appellate Procedure 28-2.6, counsel for Appellant State of Washington hereby state that they are unaware of any related cases to the instant appeal that are currently pending in this Court.

*s/ Timothy E. Allen*
TIMOTHY E. ALLEN
ELIZABETH HARRIS
Assistant Attorneys General
800 5th Avenue, Suite 2000
Seattle, WA 98104
(206) 521-3213
Timothy.Allen@atg.wa.gov
Elizabeth.Harris@atg.wa.gov

## CERTIFICATE OF SERVICE

I hereby certify, under penalty of perjury, that I electronically filed a true and correct copy of the foregoing document with the Clerk of the Court of the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

DATED this 31st day of July, 2025, at Seattle, Washington.

*s/ Timothy E. Allen*
TIMOTHY E. ALLEN
ELIZABETH HARRIS
Assistant Attorneys General
800 5th Avenue, Suite 2000
Seattle, WA 98104
(206) 521-3213
Timothy.Allen@atg.wa.gov
Elizabeth.Harris@atg.wa.gov

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 25-2397

I am the attorney or self-represented party.

**This brief contains** 7,442 **words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

- (●) complies with the word limit of Cir. R. 32-1.
- ( ) is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.
- ( ) is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).
- ( ) is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.
- ( ) complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  - [ ] it is a joint brief submitted by separately represented parties.
  - [ ] a party or parties are filing a single brief in response to multiple briefs.
  - [ ] a party or parties are filing a single brief in response to a longer joint brief.
- ( ) complies with the length limit designated by court order dated ______.
- ( ) is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** Timothy E. Allen **Date** July 31, 2025
*(use "*s/[typed name]*" to sign electronically-filed documents)*