No. 25-2397

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

STATE OF WASHINGTON,
*Plaintiff-Appellant*,

and

OKANOGAN HIGHLANDS ALLIANCE,
*Plaintiff*,

v.

CROWN RESOURCES CORPORATION AND KINROSS GOLD U.S.A., INC.,
*Defendants-Appellees*.

On Appeal from the United States District Court
for the Eastern District of Washington
No. 2:20-cv-00147-MKD
Hon. Mary K. Dimke, United States District Judge

# APPELLEES' ANSWER BRIEF

Jonathan W. Rauchway
Gail L. Wurtzler
James R. Henderson
DAVIS GRAHAM & STUBBS LLP
3400 Walnut Street, Suite 700
Denver, CO 80205
Telephone: (303) 892-9400

*Counsel for Crown Resources Corporation and Kinross Gold U.S.A., Inc.*

October 2, 2025

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1(a), Appellee Kinross Gold U.S.A., Inc. ("KUSA") states that Bema Gold (U.S.) Inc. is the parent company of KUSA. There is no publicly held corporation that owns 10% or more of the stock of KUSA. Bema Gold (U.S.) Inc. is indirectly owned by Kinross Gold Corporation, which is a publicly held corporation.

Appellee Crown Resources Corporation ("Crown") states that Echo Bay, Inc. is the parent company of Crown. There is no publicly held corporation that owns 10% or more of the stock of Crown or Echo Bay, Inc. Echo Bay, Inc. is indirectly owned by Kinross Gold Corporation, which is a publicly held corporation.

# TABLE OF CONTENTS

**Page**


CORPORATE DISCLOSURE STATEMENT ..................................................... ii

TABLE OF CONTENTS ..................................................................................... iii

INTRODUCTION ..........................................................................................1

JURISDICTIONAL STATEMENT ........................................................................4

STATEMENT OF THE ISSUES..............................................................................5

STATEMENT OF THE CASE..................................................................................6

I. Washington permits the Mine and then modifies the permit. ...............6

II. Both OHA and Washington file CWA citizen suits. ............................9

III. The district court enters the Buckhorn Consent Decree. ....................11

IV. The district court grants Defendants' motion for judgment on the pleadings and denies Washington's motion for relief from the judgment. ..........................................................................13

SUMMARY OF ARGUMENT ..........................................................................16

STANDARD OF REVIEW ..............................................................................19

ARGUMENT ........................................................................................................20

I. The Buckhorn Consent Decree is a final judgment with the force of res judicata. ...........................................................................20

A. Washington conceded the final judgment element in the district court. ...........................................................................20

B. Consent decrees are final judgments with preclusive effect. ...........................................................................................22

C. Consolidated cases remain separate for purposes of final judgment. .........................................................................................26

II. The district court correctly applied nonparty preclusion. ....................30

A. Washington's argument conflicts with Supreme Court precedent. ..........................................................................30

B. The district court correctly ruled that the Buckhorn Consent Decree bars Washington's claim. ...............................34

(i) The CWA is a special statutory scheme that forecloses successive citizen suits for the same permit violations. ................................................34

(ii) OHA adequately represented the public's interest in enforcement of the CWA. ...................................41

III. Washington's claim alleging ongoing violations is the same claim as OHA's and is precluded. .....................................................46

A. OHA and Washington brought citizen suits over the same ongoing violations. ..................................................................47

B. Allowing duplicative citizen suit judgments on the same claims would result in absurd outcomes. .................................51

CONCLUSION .........................................................................................53

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Arizona v. California*,
530 U.S. 392 (2000)....22

*Bay State HMO Management, Inc. v. Tingley Systems, Inc.*,
181 F.3d 174 (1st Cir. 1999)....27, 28

*Blakely v. United States*,
276 F.3d 853 (6th Cir. 2002)....23

*Casey v. Albertson's Inc.*,
362 F.3d 1254 (9th Cir. 2004)....19, 22

*Cell Therapeutics, Inc. v. Lash Group, Inc.*,
586 F.3d 1204 (9th Cir. 2009)....24, 25

*Center for Environmental Law and Policy v. U.S. Fish & Wildlife Service*,
228 F. Supp. 3d 1152 (E.D. Wash. 2017)....42

*County of Maui v. Hawai'i Wildlife Fund*,
590 U.S. 165 (2020)....39

*Center for Biological Diversity v. Marina Point Dev. Co.*,
566 F.3d 794 (9th Cir. 2009)....36, 40

*E. Bay Sanctuary Covenant v. Biden*,
993 F.3d 640 (9th Cir. 2021)....51

*Ellis v. Gallatin Steel Co.*,
390 F.3d 461 (6th Cir. 2004)....36, 37

*Environmental Conservation Organization v. City of Dallas*,
529 F.3d 519 (5th Cir. 2008)....35, 41, 43

*EPA v. City of Green Forest*,
921 F.2d 1394 (8th Cir. 1990)....35, 36, 41, 43

*Fleming v. Pickard*,
581 F.3d 922 (9th Cir. 2009) ........................................................................19

*Friends of Milwaukee's Rivers v. Milwaukee Metropolitan Sewerage District*,
382 F.3d 743 (7th Cir. 2004) ...........................................................36, 50, 51

*Gwaltney of Smithfield v. Chesapeake Bay Foundation*,
484 U.S. 49 (1987)...........................................................................43, 48, 49, 52

*H.A.L. NY Holdings, LLC v. Guinan*,
958 F.3d 627 (7th Cir. 2020) ........................................................................25

*Hall v. Hall*,
584 U.S. 59 (2018)......................................................................................26, 27, 28

*Inland Empire Waterkeeper v. Corona Clay Co.*,
17 F.4th 826 (9th Cir. 2021) ...................................................................35, 42

*International Technologies Consultations v. Pilkington PLC*,
137 F.3d 1381 (9th Cir. 1998) ......................................................................48

*Keith v. Aldridge*,
900 F.2d 736 (4th Cir. 1990) ........................................................................23

*Kokkonen v. Guardian Life Insurance Co. of America*,
511 U.S. 375 (1994)...........................................................................................25

*L.A. County Flood Control District v. NRDC, Inc.*,
568 U.S. 78 (2013)..............................................................................................40

*Lawlor v. National Screen Services Corporation*,
349 U.S. 322 (1955)...........................................................................................48

*Media Rights Technologies Inc. v. Microsoft*,
922 F.3d 1014 (9th Cir. 2019) ...................................................................47, 48

*Mendoza v. Amalgamated Transit Union International*,
30 F.4th 879 (9th Cir. 2022) ......................................................................41, 42

*Mi Familia Vota v. Fontes*,
129 F.4th 691 (9th Cir. 2025) ....................................................................22, 26

*Natural Resouces Defense Council v. EPA*,
542 F.3d 1235 (9th Cir. 2008) ....................................................................52

*Owens v. Kaiser Foundation Health Plan, Inc.*,
244 F.3d 708 (9th Cir. 2001) ......................................................................32

*Paolino v. JF Realty, LLC*,
830 F.3d 8 (1st Cir. 2016)....................................................................30, 51

*Paradise v. Prescott*,
767 F.2d 1514 (11th Cir. 1985) ..................................................................23

*Rowland v. Matevousian*,
121 F.4th 1237 (10th Cir. 2024) .................................................................22

*Save the Bull Trout v. Williams*,
51 F.4th 1101 (9th Cir. 2022) .....................................................................16

*Schnabel v. Liu*,
302 F.3d 1023 (9th Cir. 2002) ................................................................26, 27

*Sierra Club, Inc. v. Electronic Controls Design, Inc.*,
909 F.2d 1350 (9th Cir. 1990) ....................................................................44

*Sierra Club v. Chevron U.S.A., Inc.*,
834 F.2d 1517 (9th Cir. 1987) ...............................................................*passim*

*Sierra Club v. Union Oil Co.*,
853 F.2d 667 (9th Cir. 1988) ..................................................................48, 49

*Stewart v. City & County of San Francisco*,
No. 22-16018, 2023 U.S. App. LEXIS 3811 (9th Cir. Feb. 17,
2023) (unpublished)....................................................................................21

*Taylor v. Sturgell*,
553 U.S. 880 (2008).................................................................................*passim*

*Turtle Island Restoration Network v. United States Department of State*,
673 F.3d 914 (9th Cir. 2012) ......................................................................47

*United States v. Gates*,
709 F.3d 58 (1st Cir. 2013).........................................................................21

*United States v. International Building Co.*,
345 U.S. 502 (1953)........................................................................................25

*Wallis v. Justice Oaks II, Ltd.*,
898 F.2d 1544 (11th Cir. 1990) ..................................................................23, 24

*WildEarth Guardians v. Public Service Company of Colorado*,
690 F.3d 1174 (10th Cir. 2012) ........................................................................38

*Wojciechowski v. Kohlberg Ventures, LLC*,
923 F.3d 685 (9th Cir. 2019) ....................................................................*passim*

**Statutes**

28 U.S.C. § 1291 .............................................................................................4, 27

33 U.S.C. § 1251 ...................................................................................................35

33 U.S.C. § 1319 ...........................................................................................36, 37, 52

33 U.S.C. § 1342 .....................................................................................................6

33 U.S.C. § 1365 ...........................................................................................*passim*

Water Pollution Control Act, RCW Chapter 90.48 ......................................6, 29, 38

**Other Authorities**

88 Fed. Reg. 89,309 ......................................................................................29, 38

Fed. R. Civ. P. 60(b) ................................................................................15, 19, 22

*In the Matter of Granting a Water Quality Certification to Crown Resources Corp.*,
Order #5158 .................................................................................................7, 8

# INTRODUCTION

This case presents the question of whether a Clean Water Act ("CWA") citizen plaintiff can recover for the same permit violations already resolved by a consent decree with another citizen plaintiff. The district court ruled that the answer must be no, and its ruling is supported by the statute, Supreme Court precedent, and sound policy.

In 2020, Okanogan Highlands Alliance ("OHA") filed a CWA citizen suit against Crown and KUSA (collectively, "Defendants") alleging violations of Crown's discharge permit for the Buckhorn Mountain Mine (the "Mine"). OHA first gave the State of Washington ("Washington") an opportunity to take enforcement action, but Washington declined to do so. Instead, it did something unusual—it filed its own citizen suit alleging the same permit violations. The district court consolidated the citizen suits in light of their identical facts, and for four years OHA and Washington litigated their citizen suits in concert, relying on the same evidence, including the same expert opinions.

After years of litigation and a court-supervised mediation, Defendants settled with OHA and entered into a court-approved consent decree (the "Buckhorn Consent Decree" or "Consent Decree") that provides for extensive injunctive relief and substantial civil penalties in the form of supplemental environmental projects. But Washington tried to continue litigating the same claims for the same permit

violations addressed by the Buckhorn Consent Decree, seeking additional relief beyond what the district court had already determined was fair and appropriate. Defendants moved for judgment on the pleadings, based on the common-sense argument that Washington should not be allowed to obtain duplicative relief for permit violations already resolved by the Consent Decree.

In granting the motion, the district court correctly ruled that Washington's citizen suit is barred by claim preclusion. All three elements of the claim-preclusion test are satisfied. First, the Buckhorn Consent Decree is a final judgment with the force of res judicata. Second, the Consent Decree bars Washington's claims under principles of nonparty preclusion because citizen suits are brought to vindicate the public's interests and OHA adequately represented those interests. Finally, Washington asserts the same claim that the Consent Decree resolved—namely, a CWA citizen suit alleging the same violations of the same discharge permit over the same period. A contrary ruling would authorize endlessly duplicative actions and reward Washington for abdicating its primary enforcement responsibility under the CWA.

Washington's appeal boils down to its belief that, because it was not a party to the settlement, the Buckhorn Consent Decree has no effect on its citizen suit. Washington misunderstands nonparty preclusion—a body of law that exists precisely because final judgments bar nonparties' claims in certain circumstances.

The Supreme Court explained the nonparty preclusion doctrine in *Taylor v. Sturgell*, 553 U.S. 880 (2008), and the district court correctly applied it here. Indeed, Washington conceded the Consent Decree is a final judgment that would preclude *any other nonparty* from asserting a citizen-suit claim for the same permit violations. (2-ER-45:22–25.) In Washington's view, however, its citizen suit deserves special treatment—a position that simply cannot be squared with its admission that it was "acting in the same role as any other citizen suit plaintiff." (Op. Br. at 32.) Before suing, OHA notified Washington of its planned citizen suit, giving Washington the opportunity to exercise its enforcement authority and have complete control over the enforcement process, and Washington declined. It cannot now escape the preclusive effect of a final judgment obtained by another citizen plaintiff.

The Court should affirm the district court's orders dismissing Washington's duplicative citizen suit and entering judgment in Defendants' favor.

## JURISDICTIONAL STATEMENT

Defendants agree that the Court has jurisdiction under 28 U.S.C. § 1291 to hear Washington's challenge to the district court's orders granting Defendants' motion for judgment on the pleadings (1-ER-6–14) and denying Washington's motion for relief from the judgment (1-ER-2–4).

## STATEMENT OF THE ISSUES

1. Is the Buckhorn Consent Decree a final judgment on the merits for purposes of claim preclusion?

2. Did the district court correctly rule that, under principles of nonparty preclusion, the Buckhorn Consent Decree barred Washington's citizen suit for the same permit violations resolved by the Consent Decree?

3. Did the district court correctly rule that Washington's citizen-suit claim was the same as OHA's citizen-suit claim?

## STATEMENT OF THE CASE

### I. Washington permits the Mine and then modifies the permit.

The Buckhorn Mountain Mine is a closed gold mine located in north central Washington. (4-ER-482 (¶¶ 4.2–4.3); 4-ER-484–85 (¶¶ 6.8, 6.10).) Crown owns the Mine and operated it from 2007 until 2017, when mining ended and final reclamation work began. (4-ER-482 (¶ 4.3); 4-ER-485 (¶¶ 6.9–6.10).) During operation and reclamation, Crown held combined National Pollutant Discharge Elimination System ("NPDES")/State Waste Discharge permits that the Washington State Department of Ecology ("Ecology") issued under the CWA, 33 U.S.C. § 1342, and the state Water Pollution Control Act, chapter 90.48, RCW. (4-ER-486–87 (¶¶ 6.16–6.17).)

Ecology issued the original permit in 2007 following years of extensive environmental review. (*See* 4-ER-486–487 (¶ 6.16); SER-46–47; Buckhorn Mountain Project Tier II Water Quality Analysis ("Tier II Report") at 7–8.[1]) Crown initially proposed an open-pit mine but redesigned the project as an underground mine to reduce potential impacts identified by Ecology and the United States Forest Service in their 1997 Final Environmental Impact Statement. (*See* SER-47.)

[1] The Tier II Report is publicly available from Ecology's website: https://apps.ecology.wa.gov/paris/DownloadDocument.aspx?id=296794. Citations to the Tier II Report are to the pdf page number.

Ecology issued additional Environmental Impact Statements analyzing potential impacts from the Mine in 2006 and 2007. (*See id.*; Tier II Report at 7–8.)

Both Ecology and Crown acknowledged potential impacts from the Mine. Crown's consultant detailed these potential impacts in the Tier II Report, determining that "changes to the water quality" would likely occur. (Tier II Report at 13.) However, the Mine would "create significant economic benefits for an economically distressed area of Washington," and "present[] environmental advantages, incorporating state-of-the-art water treatment technology and a variety of mitigation and reclamation measures that will benefit the surrounding environment." (*Id.* at 14.) After reviewing the Mine's potential impacts, including Crown's Tier II antidegradation analysis, Ecology permitted the Mine and issued a water quality certification, finding that "the lowering of water quality is necessary and in the overriding public interest." *In the Matter of Granting a Water Quality Certification to Crown Res. Corp.*, Order #5158 at 2 (Wash. Dep't of Ecology, Oct. 9, 2007) ("2007 Water Quality Certification").[2]

The Mine's original permit was set to expire in 2012, but Ecology administratively extended it until February of 2014, when it issued a renewed permit.

---

[2] The 2007 Water Quality Certification is publicly available at: https://web.archive.org/web/20100117000400if_/http://www.ecy.wa.gov/programs/sea/fed-permit/pdf/Decisions/CRO/Buckhorn%20Mountain%20Project%20WQC%205158.pdf. The order begins on pdf page 3.

(4-ER-486–87 (¶¶ 6.16–6.17).) Ecology then issued a modified permit on April 1, 2015, which is the current permit for the Mine (the "Permit"). (4-ER-487 (¶ 6.17).) The Permit was set to expire on February 28, 2019, but, like the original permit, Ecology has administratively extended it. (*Id.*)

The 2015 Permit represented a radical shift in discharge permitting for the Mine. The Permit defined a "Capture Zone" and prohibited Crown from allowing mine-related contaminants in groundwater or surface water to escape the Capture Zone. (SER-35; SER-37; SER-118.) Compliance with the Capture Zone is monitored by sampling numerous groundwater and surface water locations in the vicinity of the Mine. (SER-37; SER-118; SER-125.) The samples are then compared to numeric limits set in the Permit—most of which were set at statistically estimated "pre-mining background conditions" for groundwater and surface water near the Mine. (SER-37.) In other words, after "determining that the lowering of water quality [wa]s necessary and in the overriding public interest," Ecology made an about-face and prohibited those impacts after they had occurred. (*See* 2007 Water Quality Certification at 2.)

Due to the new, stricter terms imposed in 2015, Crown was in immediate violation of the Permit upon its issuance. (*See* 4-ER-488 (¶ 6.20).) Crown's consultants determined that permit compliance would be extremely difficult—and potentially infeasible. (SER-195.) Because the Permit's limits are set at statistically

estimated background concentrations, any measurements exceeding the estimated concentrations—even those unrelated to mining—result in a violation of the Permit. (*See, e.g.*, *id.*; SER-29–31.) Consequently, Permit violations continued to occur in the years following issuance—even though mining ceased two years after the 2015 Permit was issued.

## II. Both OHA and Washington file CWA citizen suits.

OHA is a nonprofit organization focused on addressing alleged environmental impacts from the Mine. (5-ER-718–19 (¶ 8).) OHA has been involved in permitting and litigation related to the Mine for almost two decades. (*Id.*) According to OHA, alleged impacts from the Mine implicate its members' environmental, health-related, aesthetic, and recreational interests. (5-ER-719–20 (¶ 9).)

Despite Crown's self-reported violations of the Permit from 2015 through 2019 and OHA's repeated requests for enforcement, Washington declined to file an enforcement action. OHA tired of waiting, and in January of 2020, notified Defendants of its intent to file a citizen suit under section 505 of the CWA, 33 U.S.C. § 1365. (5-ER-717 (¶ 4); *see also* 5-ER-746–864.) OHA alleged that Crown "has violated and continues to violate the terms and conditions of its NPDES permit" for the Mine. (5-ER-747.) OHA also notified Washington (5-ER-717 (¶ 4)), as required before bringing a CWA citizen suit, *see* 33 U.S.C. § 1365(b)(1)(A). Washington again declined to commence an enforcement action. Instead, five weeks later,

Washington sent its own notice of intent to sue Defendants under the federal citizen-suit provision for the same permit violations. (4-ER-480 (¶ 2.3); 4-ER-499–576.)

OHA filed its citizen suit against Defendants in April of 2020, in Case No. 2:20-cv-00147. (*See* 5-ER-715.) OHA asserted a claim under CWA section 505, alleging that "Crown has violated the conditions of its NPDES permit and polluted local waters continuously since Ecology issued the permit in 2014." (5-ER-716 (¶ 2); *see also* 5-ER-742 (¶¶ 68–70).) OHA alleged violations of multiple Permit conditions, including: numeric effluent limitations (Conditions S1.A.7 and S2); requirements to maintain a groundwater capture zone (Conditions S1.A.2.1 and S1.A.2.3); requirements to notify Ecology of trigger exceedances (Condition S2); response and reporting obligations (Conditions S3.D); and various notification and planning conditions (Conditions S6, S16, G4, and G5). (5-ER-731–39 (¶¶ 43, 45, 48, 50, 52, 53–56, 57–60).) OHA alleged violations dating back to February 2015. (*See, e.g.*, 5-ER-731 (¶ 43).)

Washington filed a separate citizen suit one month later in Case No. 2:20-cv-00170. (4-ER-613.) Its claim was the same as OHA's citizen suit: Crown allegedly has "continuously violated the conditions and requirements of the Permit since its issuance." (4-ER-624–25 (¶ 6.20); 4-ER-631–32 (¶¶ 7.1–7.5).) Washington alleged violations of the same Permit conditions. (4-ER-625 (¶ 6.21) (effluent limitations, Conditions S1.A.7 and S2); 4-ER-626 (¶ 6.23) (maintenance of the capture zone,

Condition S1.A.2.1); 4-ER-626–28 (¶¶ 6.25–6.28) (trigger exceedances, Condition S2); 4-ER-628–29 (¶¶ 6.30–6.35) (reporting violations, Condition S3.D); 4-ER-629–30 (¶¶ 6.36–6.43) (notification and planning requirements, Conditions S6, S16, G4, and G5).) Washington asserted causes of action under both CWA section 505 (4-ER-631–32 (¶¶ 7.1–7.5)) and state law (4-ER-632–33 (¶¶ 7.6–7.8)), and alleged violations dating back to March 2015 (*see, e.g.*, 4-ER-625–26 (¶¶ 6.22, 6.24)).

Because OHA's and Washington's citizen suits "both allege[d] the same or similar violations," the parties jointly moved to consolidate the cases. (4-ER-604–09.) The district court granted that motion. (4-ER-602–03.)

Washington filed its First Amended Complaint in March of 2021. (4-ER-478.) It voluntarily dismissed its state-law cause of action, deleted references to the state-law issues, and updated procedural information (e.g., filing dates). The First Amended Complaint was otherwise substantively identical to the original Complaint.

## III. The district court enters the Buckhorn Consent Decree.

After consolidation, Washington and OHA litigated the case in concert, including by disclosing the same expert opinions for injunctive relief and penalties. (*See* 3-ER-328 (notifying the district court that experts were "jointly retained by the State and by [OHA]").) After three years of motions practice and discovery, the district court stayed the case and ordered the parties to mediate. (SER-14–16; SER-

17–25.) The parties spent a year attempting to settle both OHA's and Washington's citizen suits, but their efforts were unsuccessful. (*See* SER-5–11; SER-12–13.)

Following the court-supervised mediation, OHA and Defendants settled. They jointly moved for entry of a Proposed Consent Decree on September 19, 2024. (2-ER-253–56.) In the Proposed Consent Decree, Crown agreed to implement a Site Investigation Plan containing numerous site activities aimed at, among other things, "promoting Permit compliance and improving water quality at and near the Mine." (3-ER-267–71 (¶ 6).) Crown also agreed to pay $3,000,000 in civil penalties in the form of supplemental environmental projects; $2,250,000 in attorneys' fees; and $150,000 to defray the costs of OHA's ongoing compliance monitoring. (3-ER-272–74 (¶¶ 9–11).) Washington did not oppose the motion to enter the Proposed Consent Decree.

OHA also submitted the Proposed Consent Decree to the United States Department of Justice and Environmental Protection Agency ("EPA"), as required by CWA section 505. (*See* 2-ER-244–52.) On October 31, 2024, the Department of Justice responded that the United States had reviewed the Proposed Consent Decree to ensure that it complied with the CWA and was consistent with its purposes, and did not object to the entry of the Proposed Consent Decree. (*See* SER-2–4.)

On October 31, 2024, the Court entered the Buckhorn Consent Decree. (*See* 2-ER-179–81; 2-ER-182–201.) The Court found that the Consent Decree "furthers the objectives of the [CWA]," "is fair, reasonable, and equitable," and does not violate the law or public policy. (2-ER-181.)

After entering the Consent Decree, the district court held a status conference regarding the fate of Washington's citizen suit. (2-ER-178.) Counsel for OHA and Defendants acknowledged that Washington was not a party to the Consent Decree, and therefore Washington had not agreed to release its claim; however, Defendants' counsel asserted that the Consent Decree nevertheless barred Washington's claim under principles of nonparty claim preclusion. (*Id.*) The district court set an expedited briefing schedule to address the issue. (*See id.*)

## IV. The district court grants Defendants' motion for judgment on the pleadings and denies Washington's motion for relief from the judgment.

In November of 2024, Defendants moved for judgment on the pleadings on the ground that the Buckhorn Consent Decree barred Washington's citizen suit under principles of nonparty claim preclusion. (*See* 2-ER-155–177 (the "Rule 12(c) Motion").) The district court ruled that all three elements of the claim preclusion test were met and granted the motion. (1-ER-6–14.)

First, the court concluded that OHA and Washington asserted the same claim—namely, a CWA citizen suit to address the same alleged permit violations over the same period. (1-ER-9–11.) Washington argued that OHA represented

different interests, but the district court concluded that in a CWA citizen suit, "there is only one claim—the public's claim[.]" (1-ER-11.) During the hearing on Defendants' Rule 12(c) Motion, Washington conceded that, as a citizen suit, the case was "being resolved in the best interests of the public." (1-ER-11 (quoting 2-ER-47).)

Second, the district court concluded the Buckhorn Consent Decree was a final judgment on the merits because "[a] consent decree approved by a court is an enforceable, final judgment with the force of res judicata." (1-ER-11 (quoting *Mi Familia Vota v. Fontes*, 111 F.4th 976, 982 (9th Cir. 2024)).) This comported with Washington's concessions that "there was a final judgment . . . as to the claims between OHA and Defendants" (2-ER-144), and that "claim preclusion would absolutely apply"—and thus, the final judgment element would be satisfied—if a *different* nonparty to the Consent Decree filed a citizen suit regarding the same alleged violations. (2-ER-45:22–25.)

Finally, the district court ruled that the privity element was satisfied under the nonparty preclusion doctrine. (1-ER-11–13.) As evidenced by the language and structure of the CWA and the relief available to plaintiffs, citizen suits are brought to vindicate the public's interest in enforcement of the Act. The court concluded that CWA citizen suits, "under the governing law, may be brought only on behalf of the public at large," and the statute therefore forecloses "successive and duplicative

litigation." (1-ER-12–13 (quoting *Taylor*, 553 U.S. at 895).) Alternatively, the court held that OHA adequately represented Washington's interests because OHA's and Washington's interests were aligned, OHA was acting in a representative capacity for the public as a citizen-suit plaintiff, the court protected Washington's interests, and Washington had notice and multiple opportunities to protect its interests. (1-ER-13.) Accordingly, the court ruled that the Buckhorn Consent Decree precluded further litigation of Washington's citizen suit. (1-ER-14.) The district court entered judgment against Washington on February 4, 2025. (1-ER-5.)

Washington then moved for relief from the judgment under Federal Rule of Civil Procedure 60(b). (*See* 2-ER-16–26 (the "Rule 60 Motion".) The district court denied the motion, finding that Washington's arguments "largely mirror the arguments it made opposing Defendants' [Rule 12(c) Motion]—arguments the Court has found unsupported by statute and case law." (1-ER-3.) The district court found Washington's "remaining arguments"—that is, arguments Washington raised for the first time in its Rule 60 Motion—to be "similarly . . . without merit." (1-ER-3.) The district court concluded that Washington "failed to cite any Supreme Court or Ninth Circuit precedent that would squarely foreclose the outcome of the Court's order granting Defendants' motion for judgment on the pleadings." (1-ER-3.)

Washington appeals the district court's orders granting judgment on the pleadings to Defendants and denying Washington's Rule 60 Motion.

## SUMMARY OF ARGUMENT

Claim preclusion—also known as res judicata—applies to bar an action "where [an] earlier suit (1) involved the same 'claim' or cause of action as the later suit, (2) reached a final judgment on the merits, and (3) involved identical parties or privies." *Save the Bull Trout v. Williams*, 51 F.4th 1101, 1107 (9th Cir. 2022) (citation omitted). This test is straightforward, and the district court correctly ruled that the doctrine bars Washington's citizen suit. First, the Buckhorn Consent Decree is a final judgment with the force of res judicata. Second, even though Washington was not a party to the Buckhorn Consent Decree, two categories of nonparty preclusion apply to bar its claim. Third, Washington's citizen suit asserts the exact same claim resolved by the Buckhorn Consent Decree. Because OHA obtained a final judgment in a citizen suit brought to vindicate the public interest, Washington's duplicate claim is barred under controlling Supreme Court precedent.

To avoid this common-sense outcome, Washington asks for a series of special carve-outs to the claim preclusion doctrine—one to negate each element of the test. These proposed carve-outs contradict concessions Washington made in the district court and settled legal principles.

With respect to the final judgment element, Washington asks the Court to adopt several new rules. First, it suggests a rule that a consent decree cannot have claim-preclusive effect if it disclaims liability. Finding no support in the caselaw,

Washington pivots to a proposed rule that consent decrees are final as to the parties but not as to nonparties—confusing the concept of nonparty preclusion with the finality of a judgment. Washington then seeks a carve-out for consolidated cases and asserts that consolidation impacts a judgment's finality—ignoring Supreme Court precedent holding that consolidated cases retain their separate identities. Each of these arguments also conflicts with Washington's concessions that the Buckhorn Consent Decree *is* a final judgment that *would* preclude nonparties. (2-ER-144 ("Here there was a final judgment . . . as to the claims between OHA and Defendants"); 2-ER-45:22–25 ("[I]f this involved Sierra Club or someone coming on next week and filing suit for [violations of the Permit], . . . claim preclusion would absolutely apply"); Op. Br. at 29 ("The consent decree is a final judgment with respect to the issues specifically addressed in the consent decree.").)

As for the nonparty preclusion element, Washington seeks a novel rule that consent decrees cannot preclude the claims of nonparties unless they expressly say so. This is not the law—rather, the nonparty preclusion standards identified by the Supreme Court in *Taylor v. Sturgell* control. Because the CWA is a special statutory scheme that creates only a single public claim, and because OHA adequately represented the public's interest in prosecuting that claim following Washington's abdication of its enforcement responsibility, the Buckhorn Consent Decree precludes Washington's duplicate citizen suit claim.

Finally, Washington requests an exemption from the same-claim element of the preclusion test. OHA and Washington both asserted a CWA citizen-suit claim for the same alleged violations of the same discharge permit over the same period. Washington fails to contend with this Court's test for determining the "identity of claims" and instead seeks yet another carve-out from blackletter preclusion law—this time for claims asserting "ongoing violations." But OHA sued for the same ongoing violations, and the Buckhorn Consent Decree resolved all alleged permit violations through the Decree's termination date in November 2030. Washington is barred from relitigating this same claim.

Washington had its opportunity to control enforcement of the CWA at the Mine by filing a conventional enforcement action. Washington declined, waited for OHA to sue, and then filed its own citizen suit alleging the same violations. Now that the public's claim has been resolved and the public interest has been vindicated through the work of a citizen group, Washington's attempt at duplicative relief is barred. To hold otherwise would open the door to endlessly duplicative citizen suits—with each citizen entitled to seek their own forms of injunctive relief, their own assessment of penalties, and their own attorney's fees. This is not and cannot be the law, and the Court should affirm the dismissal of Washington's citizen suit.

## STANDARD OF REVIEW

Defendants agree with Washington's statement of the standard of review for the district court's order granting judgment on the pleadings to Defendants. This Court reviews an order granting judgment on the pleadings de novo. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). "Judgment on the pleadings is properly granted when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Id.*

Washington omits the standard of review for the district court's order denying Washington relief from the judgment under Federal Rule of Civil Procedure 60(b). "Motions for relief from judgment pursuant to Rule 60(b) are addressed to the sound discretion of the district court and will not be reversed absent an abuse of discretion." *Casey v. Albertson's Inc.*, 362 F.3d 1254, 1257 (9th Cir. 2004) (citing *SEC v. Coldicutt*, 258 F.3d 939, 941 (9th Cir. 2001)). "A district court abuses its discretion if it does not apply the correct law or if it rests its decision on a clearly erroneous finding of material fact." *Id.* This Court reviews the district court's order denying Washington's Rule 60 Motion for abuse of discretion.

# ARGUMENT

## I. The Buckhorn Consent Decree is a final judgment with the force of res judicata.

Washington conceded below that the Buckhorn Consent Decree was a final judgment. That should end the inquiry, but it is settled that consent decrees are final judgments with preclusive effect in any event. The consolidation of OHA's and Washington's identical citizen suits does not affect the finality of the consent decree, as the Supreme Court has held that consolidated cases retain their separate identities for purposes of final judgment. The "final judgment" element of Defendants' claim preclusion defense is satisfied.

### A. Washington conceded the final judgment element in the district court.

The Buckhorn Consent Decree, after it was entered by the district court, was a final judgment in OHA's citizen suit. Washington conceded this element in the district court, explaining that "[h]ere there was a final judgment . . . as to the claims between OHA and Defendants." (2-ER-144.) At the hearing on Defendants' motion, Washington went further, conceding that "if this involved Sierra Club or someone coming on next week and filing suit for [violations of the Permit], . . . claim preclusion would absolutely apply because that's a suit subsequent to the judgment being entered." (2-ER-45:22–25.) Washington therefore may not dispute that the Buckhorn Consent Decree was a final judgment with preclusive effect. "[A] party

cannot concede an issue in the district court and later, on appeal, attempt to repudiate that concession and resurrect the issue. To hold otherwise would be to allow a litigant to lead a trial court down a primrose path and later, on appeal, profit from the invited error." *United States v. Gates*, 709 F.3d 58, 63 (1st Cir. 2013); *see also Stewart v. City & Cnty. of S.F.*, No. 22-16018, 2023 U.S. App. LEXIS 3811, at *1–2 (9th Cir. Feb. 17, 2023) (unpublished) ("Because a party is 'bound by concessions made . . . at oral argument,' the district court did not err by taking Appellants at their word." (citation omitted)). Faced with Washington's concession on this point, the district court did not err when it found that the "final judgment" element of claim preclusion was "readily met." (1-ER-11.)

After the district court dismissed its claim, Washington changed course. In its Rule 60 motion, Washington asserted for the first time that the Buckhorn Consent Decree was not a "final judgment on the merits" because it "does not adjudicate liability." (2-ER-21.) Washington also sought reconsideration on the ground that "[c]onsolidated cases are treated as merged in the Ninth Circuit, including for appeals." (2-ER-20 (citing *Schnabel v. Liu*, 302 F.3d 1023, 1036 (9th Cir. 2002)). According to Washington, this meant the Buckhorn Consent Decree was not a final judgment with preclusive effect because it did not occur in a "separate action." (2-ER-18–20.) The district court denied Washington's Rule 60 motion, finding its new

arguments "without merit" and noting the lack of Supreme Court or Ninth Circuit precedent supporting Washington's newfound position. (1-ER-3 & n.1.)

In its Opening Brief, Washington recycles its Rule 60 arguments. (*See* Op. Br. at 22–24 (arguing consent decree cannot be a final judgment when it "disclaims liability"); *id.* at 24–29 (arguing a consent decree that "only resolves part of a consolidated case" does not qualify as a final judgment for preclusion purposes).) But Washington cannot profit on appeal from the change of position in its Rule 60 motion. *See Rowland v. Matevousian*, 121 F.4th 1237, 1246 (10th Cir. 2024) ("A Rule 60(b) motion is not meant to 'advance arguments that could have been raised in prior briefing.'" (citation omitted)). And the denial of that motion is reviewed for abuse of discretion. *Casey*, 362 F.3d at 1257. Here, the district court did not abuse its discretion by rejecting Washington's attempt to relitigate Defendants' Rule 12(c) Motion by improperly raising legal arguments that could have been asserted earlier.

**B. Consent decrees are final judgments with preclusive effect.**

Washington's belated arguments against finality are wrong in any event. "A consent decree approved by a court is an enforceable, final judgment with the force of *res judicata*." *Mi Familia Vota v. Fontes*, 129 F.4th 691, 717 (9th Cir. 2025). This is established law. *See, e.g.*, *Arizona v. California*, 530 U.S. 392, 414 (2000) ("[C]onsent judgments ordinarily support claim preclusion . . . ."); *Wojciechowski v. Kohlberg Ventures, LLC*, 923 F.3d 685, 691 (9th Cir. 2019)

(holding that a court-approved settlement is "entitled to preclusive effect separate and apart from any contractual obligations it imposed on the parties"); *Blakely v. United States*, 276 F.3d 853, 866 (6th Cir. 2002) ("A consent judgment . . . has the full effect of final judgment for purposes of claim preclusion."); *Keith v. Aldridge*, 900 F.2d 736, 740 (4th Cir. 1990) ("There is no question that the judgment [at issue], though a consent judgment, was, for claim preclusion purposes, a final one on the merits."); *Paradise v. Prescott*, 767 F.2d 1514, 1525 (11th Cir. 1985) ("'A consent decree, although founded on the agreement of the parties, is a judgment.' It therefore has the force of res judicata . . . ." (citation omitted)).

Washington's basis for disagreeing with this longstanding principle is unclear. At times, Washington appears to advocate for an exception for consent decrees that "disclaim[] liability." (*See* Op. Br. at 22.) Elsewhere, it simply asserts that consent decrees "are not final judgments with respect to preclusion of a third party's claims." (*See id.*) Washington cites only two cases to support these novel carve-outs from established preclusion law, but neither of these cases helps Washington.

First, Washington cites *Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II)*, 898 F.2d 1544, 1549 (11th Cir. 1990), for the propositions that "[a] consent decree [that does] not 'decide the merits' of the claims . . . is not a final judgment on the merits with a preclusive effect" (Op. Br. at 15–16), and "a settlement agreement entered by a bankruptcy court did not have a preclusive effect where the court did

not decide the merits" (*id.* at 23). Washington is simply incorrect. *In re Justice Oaks II* had nothing to do with consent decrees, and was instead concerned with a bankruptcy settlement and reorganization plan. *See generally* 898 F.2d 1544. And, while the Eleventh Circuit held that a bankruptcy court's "order *authorizing* settlement" was not a judgment with preclusive effect, the court went on to hold that "the order *confirming* the [reorganization] plan does satisfy the requirements of a judgment that can be given such effect," and that "the doctrine of 'claim preclusion' applie[d]" to bar the claims of a "party in interest." *Id.* at 1549–50 (emphases added). Notably, the "proposed plan of reorganization . . . essentially restated the settlement agreement." *Id.* at 1547. Thus, the court's order confirming and entering a negotiated settlement was held to have preclusive effect.

Second, Washington relies on *Cell Therapeutics, Inc. v. Lash Group, Inc.*, 586 F.3d 1204 (9th Cir. 2009). (Op. Br. at 22–24.) *Cell Therapeutics* held that a settlement agreement resolving a False Claims Act action did not establish the settling defendant's liability under that statute for the purposes of a subsequent indemnity action. 586 F.3d at 1210–12. Once again, *Cell Therapeutics* did not involve a consent decree. Instead, the Court considered the impact of a settlement between the parties, which no court had entered as a judgment or decree. *Id.* at 1207. Such agreements, even when entered to resolve a lawsuit and accompanied by a stipulation of dismissal, are simply private contracts that cannot be enforced in

federal court without an independent basis for jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994). The *Cell Therapeutics* Court held that a private contract resolving a lawsuit did not bar the settling defendant from challenging its liability in a separate action. 586 F.3d at 1212 ("The bottom line is that a settlement agreement under the FCA should not . . . be viewed as an admission of liability that precludes non-FCA claims against third parties."). This holding does nothing to upset the long line of caselaw recognizing that *consent decrees* satisfy the "final judgment" element of the claim preclusion test.

Moreover, Washington's argument that the Buckhorn Consent Decree "was not a 'final judgment on the merits' because it contained no admission of liability . . . is a non-starter." *H.A.L. NY Holdings, LLC v. Guinan*, 958 F.3d 627, 633 (7th Cir. 2020). In *H.A.L.*, the Seventh Circuit rejected this same argument, explaining:

> The rule that a defendant's judgment acts as a bar to a second action on the same claim is based largely on the ground that fairness to the defendant, and sound judicial administration, require that at some point litigation over the particular controversy come to an end. What difference could it make for this purpose that the plaintiff previously insisted it did nothing wrong while agreeing in the same breath to pay money on pain of contempt against defendant's claim of wrongdoing?

*Id*. at 633–34 (citation and quotation marks omitted); *see also United States v. International Bldg. Co.*, 345 U.S. 502, 506 (1953) ("Certainly the judgments entered

are *res judicata* . . . whether or not the basis of the agreements on which they rest reached the merits.”).

The Buckhorn Consent Decree is “an enforceable, final judgment with the force of *res judicata*.” *Mi Familia Vota*, 129 F.4th at 717. Its impact on non-parties is governed by the Supreme Court’s nonparty preclusion analysis in *Taylor v. Sturgell*—not a misplaced and unreasoned carve-out from the final judgment element.

**C. Consolidated cases remain separate for purposes of final judgment.**

Washington faults the district court for “ignor[ing] the impact of consolidation” on a claim preclusion analysis. (Op. Br. at 25–26.) This was not error because consolidation had no “impact” on the finality of the Buckhorn Consent Decree.

Washington first asserted this argument in its Rule 60 Motion, contending that “claim preclusion does not apply within a single lawsuit” and “[c]onsolidated cases are treated as merged in the Ninth Circuit for certain purposes, including for appeals.” (2-ER-18–20 (relying on *Schnabel v. Lui*, 302 F.3d 1023, 1036 (9th Cir. 2002)).) The district court properly rejected this argument when denying Washington’s Rule 60 motion—especially when Washington relied on caselaw that has been overruled by the Supreme Court. In *Hall v. Hall*, the Supreme Court held that “when one of several consolidated cases is finally decided, a disappointed

litigant is free to seek review of that decision in the court of appeals." 584 U.S. 59, 78 (2018). In *Schnabel*—relied upon by Washington—this Court had previously held the exact opposite. *See* 302 F.3d at 1036 (noting that "entry of judgment disposing of one of two consolidated cases was not an appealable judgment under 28 U.S.C. § 1291"). Clearly, *Schnabel* is no longer good law on that point.

The consolidation of OHA's and Washington's citizen suits had no bearing on the finality of the Consent Decree. "'[A]ctions do not lose their separate identity because of consolidation,'" and "'each claim retain[s] its separate character.'" *Hall*, 584 U.S. at 76 (citing *Bank Markazi* v. *Peterson*, 578 U.S. 212, 232–33 (2016)). "'[C]onsolidation is permitted as a matter of convenience and economy in administration, but does not merge the suits into a single cause, or change the rights of the parties . . . .'" *Id.* at 70 (quoting *Johnson*, 289 U.S. at 496–97). Accordingly, "consolidation [cannot] prejudice rights to which the parties would have been due had consolidation never occurred." *Id.* at 72.

According to Washington, the mere fact of consolidation strips parties of their right to assert the defense of claim preclusion if the preclusive final judgment is entered in one case that has been consolidated with another. Washington does not attempt to square its position with *Hall*. Instead, it relies on *Bay State HMO Management, Inc. v. Tingley Systems, Inc.*, 181 F.3d 174 (1st Cir. 1999)—an out-of-circuit case that also predates *Hall*. (Op. Br. at 24–29.)

In *Tingley*, the plaintiff filed separate complaints against two defendants. 181 F.3d at 176. The cases were consolidated. *Id.* The plaintiff settled with one defendant and stipulated to dismiss that action with prejudice. *Id.* The second defendant then sought summary judgment on res judicata grounds. *Id.* The First Circuit, noting a "paucity of authority cited by the parties on this question," and disagreeing with contrary district court holdings, held that the two consolidated cases "should be treated as a single action for res judicata purposes." *Id.* at 180 & n.4. This treatment of consolidated claims does not survive *Hall*'s holdings that consolidated actions retain their separate identities for final judgment purposes, and that consolidation must not prejudice the rights of any party. *See* 584 U.S. at 70, 76–77.

But, even on its own terms, *Tingley* does not assist Washington. The First Circuit was persuaded by the "policy concerns" and "equitable considerations" of punishing a plaintiff for the minor "procedural quirk" of bringing (and consolidating) two separate actions instead of adding the second defendant through a single amended complaint. *See* 181 F.3d at 182.

Here, policy and equity weigh firmly in the opposite direction. Washington's conduct in this action was no "procedural quirk." Washington declined its right to control enforcement of the CWA and instead pursued a citizen suit, allowing it the opportunity to claim substantially higher penalties compared to an enforcement

action under state law and opening the door to an award of attorneys' fees. *See* 33 U.S.C. § 1365(d) (allowing a prevailing party to recover attorney's fees); *compare* 88 Fed. Reg. 89,309, 89,312 (CWA penalty of $66,712 per day), *with* RCW 90.48.144 (state-law penalty of $10,000 per day). Washington alleged the same violations as OHA's earlier filed action, and used the same experts as OHA. (*Compare, e.g.*, 5-ER-716 (¶ 2), 5-ER-742 (¶¶ 68–70); *with* 4-ER-624–25 (¶ 6.20); 4-ER-631–32 (¶¶ 7.1–7.5); *see also* 3-ER-328.) These experts worked with Defendants' experts to craft acceptable consent decree terms on the same claims, but Washington sat on the sidelines—unwilling to join, but offering no objections. As explained by the district court: "[I]f the State's belief is that . . . not enough was being done, that [the Buckhorn Consent Decree] was not in the interests of the public, that it was not a sufficient remedy, there was an opportunity for the State to say so, and the State did not." (2-ER-48.) Now, although unable to point to a single concrete step that Defendants could or should take to improve water quality at the Mine that is not already included in the Buckhorn Consent Decree,[3] Washington

[3] Washington asserts that it "seeks to impose additional, immediately actionable remedial obligations on Crown through further litigation of its claims." (Op. Br. at 28.) In support, Washington cites only its Rule 60 Motion, which simply repeats that there are unspecified "remedial actions already identified by Washington's experts that go beyond those required by the Consent Decree to prevent further contamination." (2-ER-23–24.) Washington does not now, and has never before, explained to Defendants or a court what these "immediately actionable" items are.

claims that it is entitled to more relief, more penalties, and more fees. Policy and equity weigh against allowing this duplicative relief. *See Paolino v. JF Realty, LLC*, 830 F.3d 8, 16 (1st Cir. 2016) ("'Duplicative actions aimed at exacting financial penalties in the name of environmental protection at a time when remedial measures are well underway do not further [the CWA's] goal' and may be 'impediments to environmental remedy efforts.'" (citation omitted)).

## II. The district court correctly applied nonparty preclusion.

Washington argues that a consent decree lacks preclusive effect except as to claims expressly extinguished by the decree. But Washington's contention would negate five of the six types of nonparty preclusion identified by the Supreme Court in *Taylor v. Sturgell*. As Washington conceded below, *Taylor* provides the applicable framework for this case. The district court correctly applied *Taylor* to bar Washington's claims.

### A. Washington's argument conflicts with Supreme Court precedent.

Washington contends that a consent decree cannot preclude the claims of third parties unless such preclusion is expressly provided by the terms of the decree. (Op. Br. at 17–21.) Washington bases its argument on a misreading of this Court's decision in *Wojciechowski v. Kohlberg Ventures, LLC*, and its argument is irreconcilable with the Supreme Court's decision in *Taylor*.

In *Wojciechowski*, the Court recognized that "'[a] settlement can limit the scope of the preclusive effect of a dismissal with prejudice by its terms.'" 923 F.3d at 689 (quoting *U.S. ex rel. Barajas v. Northrop Corp.*, 147 F.3d 905, 911 (9th Cir. 1998)). The Court further explained that "'parties can, in a separate agreement, . . . reserve the right to litigate a claim that would otherwise be barred by' claim preclusion." *Id.* (quoting *Pactiv Corp. v. Dow Chem. Co.*, 449 F.3d 1227, 1231 (Fed. Cir. 2006)). To determine if such a limitation has occurred, courts should "look to the intent of the settling parties to determine the preclusive effect of a dismissal with prejudice entered in accordance with a settlement agreement." *Id.* In *Wojciechowski*, the parties to the agreement *explicitly preserved claims against certain identified nonparties*, and this Court therefore held that the agreement did not preclude claims against those nonparties. *Id.* at 688, 690.

The Buckhorn Consent Decree contains no such preservation of claims or any other limitation on its preclusive effect. The clear intention of the Buckhorn Consent Decree was to resolve "the claims for Clean Water Act and Permit violations alleged in OHA's Complaint in this action"; "any claims for Clean Water Act and Permit violations that occur at or near the Mine through the Termination Date"; and "any other claims that arose or are based on actions that occurred prior to the Effective Date." (2-ER-197.) As the district court correctly ruled, "there is an identity of claims between [OHA's citizen suit and Washington's citizen suit]." (1-ER-9.) The

district court explained that in the context of a CWA citizen suit "there is only one claim—the public's claim[.]" (1-ER-10–11.) The Buckhorn Consent Decree expressly intended to resolve this claim—whether asserted by OHA, Washington, or any other citizen plaintiff.[4] The *Wojciechowski* case does not help Washington.

Washington then distorts the proper test, arguing that the Buckhorn Consent Decree cannot have a preclusive effect on its claims because the Consent Decree "did not explicitly resolve Washington's case . . . ." (Op. Br. at 17.) This position would extinguish five of *Taylor*'s six categories of non-party preclusion for consent decrees. As *Taylor* instructs, an express "agree[ment] to be bound by the determination of issues in an action between others" is *one category* of nonparty preclusion. 553 U.S. at 893–94. But such an explicit agreement is not a prerequisite to the application of nonparty preclusion. To the contrary, *Taylor* lists five additional categories of nonparty preclusion—each independently sufficient to preclude a nonparty from pursuing identical claims that have been litigated to a final judgment. *Id.* at 894–95. And several of the cases *Taylor* relied upon in crafting this rule addressed consent decrees. *See, e.g.*, *id.* (citing *Martin v. Wilks*, 490 U.S.

---

[4] Washington relies on the Buckhorn Consent Decree's reservation of Defendants' defenses against Washington's claims to argue that "the [C]onsent [D]ecree shows no intent to preclude Washington's case." (Op. Br. at 19.) Claim preclusion is a defense. *See Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001). Reserving the defense of claim preclusion against a certain party shows an intent to assert the defense of claim preclusion against that party.

755 (1989) (involving the preclusive effect of a consent decree) and *Richards v. Jefferson County*, 517 U.S. 793 (1996) (addressing the preclusion rules governing "judgment[s] or decree[s] among parties to a lawsuit")). As the district court concluded, the Consent Decree bars Washington's citizen suit under two of these other *Taylor* categories. (1-ER-12–13.)

And once again, Washington's concessions are dispositive. In briefing, the State "agree[d]" that the special statutory scheme and adequate representation categories of nonparty preclusion "are relevant" to determining the preclusive effect of the Buckhorn Consent Decree. (2-ER-144.) At the hearing on Defendants' Rule 12(c) Motion, Washington explained that "if this involved Sierra Club or someone coming on next week and filing suit for [violations of the Permit], . . . claim preclusion would absolutely apply because that's a suit subsequent to the judgment being entered." (2-ER-45:22–25.) The Buckhorn Consent Decree did not explicitly dispose of claims brought by the Sierra Club. Instead, "claim preclusion would absolutely apply" through the application of the special statutory scheme and adequate representation categories of nonparty preclusion. (*Id.*)

In short, absent the type of limitation present in *Wojciechowski*, consent decrees may preclude the claims of nonparties, and the Buckhorn Consent Decree does so here. Instead of limiting its preclusive effect as to the claims of nonparties, it displays an intention to resolve the public's claim and reserves Defendants'

defense of claim preclusion against Washington. (2-ER-197; 2-ER-198–99.) Defendants' assertion of that defense against Washington is governed by the principles of nonparty preclusion set out in *Taylor*.

### B. The district court correctly ruled that the Buckhorn Consent Decree bars Washington's claim.

As explained above, *Taylor* governs the analysis of nonparty preclusion—a point Washington also conceded in the district court. (2-ER-144 ("The State agrees that *Taylor* is the relevant case for addressing privity here since this matter involves allegations of non-party preclusion.").) In *Taylor*, the Supreme Court enunciated six categories under which a final judgment binds a nonparty. *See* 553 U.S. at 893–95. Washington's citizen suit is precluded under two of the *Taylor* categories, and for much of the same reasons. By declining to enforce and instead pursuing a citizen suit, Washington abdicated its role as the primary enforcer of the CWA, and it now must live with the court-approved resolution negotiated by another citizen plaintiff that sued to redress the same alleged injury to the public.

#### (i) *The CWA is a special statutory scheme that forecloses successive citizen suits for the same permit violations.*

Under the sixth *Taylor* category, "a special statutory scheme may 'expressly foreclos[e] successive litigation by nonlitigants . . . if the scheme is otherwise consistent with due process.'" *Taylor*, 553 U.S. at 895 (quoting *Martin v. Wilks*, 490 U.S. 755, 762 n.2 (1989)). "[S]uch schemes include . . . suits that, 'under [the

governing] law, [may] be brought only on behalf of the public at large.'" *Id.* (quoting *Richards*, 517 U.S. at 804).[5]

The CWA is precisely the type of "special statutory scheme" envisioned by the Supreme Court. The Act protects "the public's substantive interest in clean water and the environment." *Inland Empire Waterkeeper v. Corona Clay Co.*, 17 F.4th 826, 833 (9th Cir. 2021); *see also* 33 U.S.C. § 1251 ("The objective of [the CWA] is to restore and maintain the . . . integrity of the Nation's waters."). Citizen-suit plaintiffs "effectively stand in the shoes of the [government]" and sue as "private attorneys general" to vindicate that interest. *Sierra Club v. Chevron U.S.A., Inc.*, 834 F.2d 1517, 1522 (9th Cir. 1987) (citation omitted); *see also EPA v. City of Green Forest*, 921 F.2d 1394, 1403 (8th Cir. 1990). In fact, citizen suits may be brought *only* to vindicate the public's interest in enforcement of the Act—not to obtain personalized relief. *See Chevron*, 834 F.2d at 1522 ("The citizen plaintiff's role is to assert permit violations and to request that a fine be imposed."); *Envtl. Conservation Org. v. City of Dallas*, 529 F.3d 519, 531 (5th Cir. 2008) (*ECO*) (explaining a citizen plaintiff's "interest in the outcome of the litigation was the

[5] Washington faults Defendants for "elevat[ing] the *Taylor* court's example of suits that may be brought only on behalf of the public to a binding standard for applying nonparty preclusion." (Op. Br. at 32.) Defendants, and the district court, quoted and applied the plain language of *Taylor*. The Supreme Court left no ambiguity—"suits that, 'under [the governing] law, [may] be brought only on behalf of the public at large,'" may qualify as special statutory schemes that foreclose duplicative litigation. *Taylor*, 553 U.S. at 895 (quoting *Richards*, 517 U.S. at 804).

public's interest, not an interest specific to [the plaintiff]"); *cf. Ellis v. Gallatin Steel Co.*, 390 F.3d 461, 477 (6th Cir. 2004) (concluding that Clean Air Act citizen plaintiffs "seek relief not on their own behalf but on behalf of society as a whole").

Two key components of the statute demonstrate the public nature of CWA claims. First, the Act contains a notice provision that prioritizes traditional enforcement actions and prevents duplicative actions. *See* 33 U.S.C. § 1365(b). Under section 505(b)(1)(A), a citizen plaintiff must provide 60 days' notice to the government before commencing suit. 33 U.S.C. § 1365(b)(1)(A). The notice affords the government an opportunity to bring an enforcement action under section 309, 33 U.S.C. § 1319, or equivalent state law. *See Ctr. for Biological Diversity v. Marina Point Dev. Co.*, 566 F.3d 794, 800 (9th Cir. 2009). Under section 505(b)(1)(B) (known as the "diligent prosecution bar"), if the government then "commence[s] and is diligently prosecuting a civil or criminal action . . . to require compliance," the plaintiff may not commence a citizen suit. 33 U.S.C. § 1365(b)(1)(B). Moreover, if the government pursues an enforcement action *after* a citizen suit is filed, resolution of that action extinguishes the citizen suit. *See, e.g.*, *Green Forest*, 921 F.2d at 1403–05 (holding res judicata barred citizen suit because "citizens suing under the CWA are cast in the role of private attorneys general"); *Friends of Milwaukee's Rivers v. Milwaukee Metro. Sewerage Dist.*, 382 F.3d 743, 757–65 (7th Cir. 2004) (holding res judicata may bar citizen suits when a consent

decree is "capable of requiring compliance with the Act and is in good faith calculated to do so"); *cf. Gallatin Steel*, 390 F.3d at 473 (holding res judicata barred Clean Air Act citizen suit where plaintiffs intervened and "had an 'opportunity to fully litigate' the issues encompassed by the consent decree" (citation omitted)). Thus, there is only one claim—the public's claim—and the Act forecloses multiple plaintiffs from separately litigating that claim to final judgment.

Second, the CWA's remedy provisions demonstrate that citizen plaintiffs obtain relief on behalf of the public only. The Act allows citizen plaintiffs to seek injunctive relief requiring the alleged violator to comply with its permit—the same relief available to the government in an enforcement action. *Compare* 33 U.S.C. § 1365(a) ("The district courts shall have jurisdiction . . . to enforce such an effluent standard or limitation."), *with* 33 U.S.C. § 1319(a)(1), (b) (allowing government to order compliance and seek injunctive relief in a civil action). Citizen plaintiffs also may seek the same civil penalties as the government, 33 U.S.C. § 1365(a), but the penalties are paid to the United States Treasury. *Chevron*, 834 F.2d at 1522. And under the statutory factors used to set the appropriate penalty, *see* 33 U.S.C. § 1319(d), the plaintiff's identity is irrelevant. The evaluation focuses on the gravity of the violations and the nature of the defendant's conduct—that is, it balances the harm to the public against the defendant's culpability. *See id.* Ultimately, "[a]ny benefit from the lawsuit, whether injunctive or monetary, inures to the public or to

the United States." *Chevron*, 834 F.2d at 1522 (citation omitted); *see also WildEarth Guardians v. Pub. Serv. Co.*, 690 F.3d 1174, 1183 (10th Cir. 2012) (concluding civil penalties "vindicate the public interest" and do not "directly redress any injuries unique to the citizen-plaintiff").

Here, Washington's citizen suit is barred by the Consent Decree entered in OHA's citizen suit. After receiving OHA's notice letter, Washington declined to pursue an enforcement action and took the unusual approach of filing its own citizen suit.[6] (4-ER-494–95 (¶¶ 7.1–7.5).) Had Washington filed an enforcement action, it would have exercised complete control over the litigation. *See* 33 U.S.C. § 1365(b)(1)(A). Instead, it chose to stand in the same shoes as OHA—as a "citizen" enforcer of the public's interest in clean water. (4-ER-480 (¶ 2.2); *see also* Op. Br. at 32 (noting Washington was "acting in the same role as any other citizen suit plaintiff").)

Washington had incentives to bring a citizen suit. It could seek substantially higher penalties in a citizen suit compared to an enforcement action under state law. *Compare* 88 Fed. Reg. 89,309, 89,312 (CWA penalty of $66,712 per day), *with* RCW 90.48.144 (state-law penalty of $10,000 per day). It also could recover its attorneys' fees under the CWA. *See* 33 U.S.C. § 1365(d).

---

[6] States rarely file citizen suits against private parties—a testament to the CWA's clear emphasis on traditional enforcement actions.

But Washington must take the bitter with the sweet. OHA litigated its citizen suit to final judgment, and it negotiated a resolution—on behalf of the public—that involves extensive site investigation and substantial civil penalties. (*See, e.g.*, 3-ER-267–71 (¶ 6); 3-ER-273–74 (¶ 10).) Washington did not object to the Buckhorn Consent Decree, and the district court determined it was fair, reasonable, equitable, did not violate the public interest, and furthered the broad objectives of the CWA. (2-ER-181.) There was nothing left for Washington to do; it had nothing more than a duplicative citizen-suit claim for duplicative relief concerning the same violations of the same permit already redressed by the Consent Decree. Because OHA's citizen suit resolved the public's claim under the CWA, the district court correctly ruled that Washington's duplicative claim is barred. *See Taylor*, 553 U.S. at 895.

Washington offers two reasons why its citizen suit is not barred under *Taylor*'s "special statutory scheme" category. First, Washington repeatedly claims that the CWA is "silent as to a citizen suit filed after another private citizen suit," and therefore does not prevent "a citizen from filing his own citizen suit after another citizen has filed a citizen suit." (Op. Br. at 31–33.) True, multiple citizen plaintiffs may pursue the same public claim such that there are multiple plaintiffs to a CWA citizen suit. This happens all the time. *See, e.g., Cnty. of Maui v. Haw. Wildlife Fund*, 590 U.S. 165 (2020) (considering CWA citizen suit brought by Hawai'i Wildlife Fund, Sierra Club-Maui Group, Surfrider Foundation, and West Maui

Preservation Association); *L.A. Cnty. Flood Control Dist. v. NRDC, Inc.*, 568 U.S. 78 (2013) (considering CWA citizen suit brought by Natural Resources Defense Council and Santa Monica Baykeeper); *Ctr. for Biological Diversity v. Marina Point Dev. Co.*, 566 F.3d 794 (9th Cir. 2009) (considering CWA citizen suit brought by Center for Biological Diversity and Friends of Fawnskin). But this does not mean that each named citizen plaintiff has the right to pursue its own individualized relief after the claim, brought on behalf of the public, is resolved. Because the Consent Decree was a final judgment that resolved the permit violations alleged by both citizen plaintiffs, Washington's suit is barred.

Next, Washington argues that "[t]he diligent prosecution bar is inapplicable here" because Washington is "acting in the same role as any other citizen suit plaintiff." (Op. Br. at 32.) Defendants have never argued that the diligent prosecution bar applies to Washington's citizen suit. Rather, as explained above, that component of the CWA's statutory framework demonstrates the public nature of CWA claims. The facts that (1) traditional enforcement actions preclude later-filed citizen suits, 33 U.S.C. § 1365(b)(1)(B), (2) resolution of enforcement actions precludes ongoing citizen suits, and (3) citizen plaintiffs obtain relief only on behalf of the public, all demonstrate that when crafting the CWA, Congress intended to create a uniquely public claim and avoid duplicative actions to vindicate the public interest. This Court and other circuits have confirmed that citizen suits are not

individualized actions, but rather are public in nature. *See*, *e.g.*, *Chevron*, 834 F.2d at 1522; *City of Green Forest*, 921 F.2d at 1403; *ECO*, 529 F.3d at 531. Washington's claim therefore is barred by nonparty preclusion for special statutory schemes under *Taylor*.

(ii) *OHA adequately represented the public's interest in enforcement of the CWA.*

The district court correctly ruled that Washington's citizen suit also is barred under the third *Taylor* category of nonparty preclusion. Under that category, "a nonparty may be bound by a judgment because she was 'adequately represented by someone with the same interests who [wa]s a party' to the suit." *Taylor*, 553 U.S. at 894 (quoting *Richards*, 517 U.S. at 798). "A party's representation of a nonparty is 'adequate' for preclusion purposes only if, at a minimum: (1) The interests of the nonparty and her representative are aligned . . . ; and (2) either the party understood herself to be acting in a representative capacity or the original court took care to protect the interests of the nonparty." *Id.* at 900 (citations omitted); *see also Mendoza v. Amalgamated Transit Union Int'l*, 30 F.4th 879, 887–88 (9th Cir. 2022) (holding plaintiffs were adequately represented by another party where their claims "necessarily r[o]se and f[e]ll" based on proof of the same conduct and they "s[ought] relief on identical grounds"). "In addition, adequate representation sometimes requires (3) notice of the original suit to the persons alleged to have been

represented." *Taylor*, 553 U.S. at 900. All three requirements for adequate representation are met here.

**Aligned Interests.** First, Washington's and OHA's interests were aligned. Both plaintiffs asserted a citizen-suit claim to vindicate "the public's substantive interest in clean water and the environment." *Corona Clay*, 17 F.4th at 833; *see also Chevron*, 834 F.2d at 1522. They also sought identical relief (*compare* 5-ER-742–43, *with* 4-ER-495–96) on identical grounds—litigating the case together and relying on jointly retained experts. Accordingly, their CWA claims "necessarily rise and fall" based on proof of the same alleged permit violations. *Mendoza*, 30 F.4th at 887–88.

Washington provides no reason why OHA failed to adequately represent the public's interests, and none exists. Washington argues that it and OHA did not have "identical interests in this litigation." (Op. Br. at 33.) But "identical interests" is not the standard; Washington's interests need only be "aligned" with OHA's. *Taylor*, 553 U.S. at 900. And, as explained by this Court in *Mendoza*, a plaintiff's interests are aligned with another's when their claims "necessarily rise and fall" together. 30 F.4th at 887–88. Instead of addressing the governing standard, Washington relies on a district court decision, *Center for Environmental Law and Policy v. U.S. Fish & Wildlife Service*, 228 F. Supp. 3d 1152 (E.D. Wash. 2017), for the proposition that citizen-suit plaintiffs sue only to vindicate their own interests. (Op. Br. at 34.) To

be sure, citizen plaintiffs bring CWA suits "on [their] own behalf," 33 U.S.C. § 1365(b)—but that simply means citizen plaintiffs sue in their own names and must individually establish standing. This does nothing to undermine the law in this Circuit and elsewhere confirming that a CWA citizen suit vindicates public, not private, interests. *See, e.g.*, *Chevron*, 834 F.2d at 1522; *City of Green Forest*, 921 F.2d at 1403; *ECO*, 529 F.3d at 531. Washington and OHA asserted the same claim for the same violations, and both sought relief on behalf of the public. There is no basis to conclude that Washington's and OHA's interests were not aligned.

**Representative Capacity or Protection of Nonparty's Interests.** As for the second prong of the adequate representation test, OHA sued Defendants in a representative capacity. After Washington declined to commence an enforcement action, OHA stepped in as a private attorney general, *Chevron*, 834 F.2d at 1522, to champion the public's interest in enforcement against the alleged permit violations. OHA's citizen suit was, at its core, a representative action. Indeed, the very purpose of citizen suits is to "supplement" governmental action where "[f]ederal, State, and local agencies fail to exercise their enforcement responsibility" on behalf of the public. *Gwaltney of Smithfield v. Chesapeake Bay Found.*, 484 U.S. 49, 60 (1987).

Washington asserts that OHA did not understand itself to be acting in a representative capacity because "counsel for OHA stated that they did not think the consent decree addressed Washington's claims." (Op. Br. at 34.) A comment at a

status conference cannot negate the fact that citizen suits are public in nature. *See Chevron*, 834 F.2d at 1522. Moreover, OHA's counsel merely acknowledged that Washington was not a party to the Buckhorn Consent Decree and that the Consent Decree therefore did not address Washington's claim. As Defendants' counsel noted, a motion asserting claim preclusion—a defense reserved by the Consent Decree—was procedurally necessary, and the district court accordingly set a briefing schedule. (*See* 2-ER-178.)

In any event, the second prong of the adequate representation test also is satisfied because the district court took care to protect Washington's interests.[7] *See Taylor*, 553 U.S. at 900. When OHA and Defendants sought entry of the Buckhorn Consent Decree, the court ensured the decree was fair, reasonable, equitable, did not violate the law or public policy, came within the scope of the pleadings, and furthered the broad objectives of the CWA. (2-ER-181); *see also Sierra Club, Inc. v. Elec. Controls Design, Inc.*, 909 F.2d 1350, 1355 (9th Cir. 1990). The district court's decision was informed by comments from the Department of Justice, which reviewed the proposed Consent Decree and determined it includes relief "sufficient

---

[7] Washington mischaracterizes *Taylor* by claiming "the representative party must have 'understood herself to be acting in a representative capacity.'" (Op. Br. at 34.) The Supreme Court held that the second prong is met if "*either* the party understood herself to be acting in a representative capacity *or* the original court took care to protect the interests of the nonparty." *Taylor*, 553 U.S. at 900 (emphases added).

to deter future violations." (SER-3.) Neither Washington nor the United States opposed entry of the Consent Decree.

Washington argues that it was not afforded an opportunity to object and that its failure to object has no bearing on the preclusion analysis.[8] (Op. Br. at 35–36.) That is incorrect. OHA and Defendants filed a motion for entry of the proposed Consent Decree, providing an obvious opportunity for Washington to file a response in opposition if it wanted to object. (*See* 2-ER-253–57.) Washington claims it is the dedicated enforcer, forging ahead after Defendants "pick[ed] off the least committed plaintiff[]." (*See* Op. Br. at 27–28.) But it strains credulity for Washington to assert that it both: (1) determined the Consent Decree was inadequate to protect its interests, and (2) decided there was no reason to inform the district court, the Department of Justice, or EPA of that perceived inadequacy. In the face of Washington's silence, the district court reasonably considered its failure to object as evidence that OHA had negotiated a settlement protective of the public interest. (*See* 2-ER-48.)

---

[8] Washington faults the district court for entering the Buckhorn Consent Decree three days before the expiration of the 45-day comment period; however, the United States already had notified the court that it did not object to the Consent Decree. (*See* SER-2–4.) Washington suggests it was deprived of its full opportunity to object (Op. Br. at 36), but stops short of claiming it intended to object. After all, Washington believes "it had no need to object" and found "nothing to object to" in the Consent Decree. (Op. Br. at 35.)

**Notice to Nonparty.** Regarding the third prong of the test, both Washington and EPA received notice of OHA's citizen suit before it was filed. (5-ER-717 (¶ 4).) The notice afforded Washington an opportunity to take the reins in enforcing the CWA. Had Washington timely filed a traditional enforcement action, all of its complaints would have been addressed—it would have exercised exclusive control over the litigation, advocated for its preferred injunctive relief, and achieved its desired settlement. Instead, Washington chose to "act[] in the same role as any other citizen suit plaintiff" (Op. Br. at 32)—opening the door to a larger award, but giving up its opportunity to exert exclusive control over the action. Any argument that OHA's citizen suit was inadequate to protect the public is belied by the CWA's numerous protections for the public interest, *see, e.g.*, 33 U.S.C. § 1365(b)(1)(A), (c)(3), and OHA's zealous pursuit of its multiyear citizen suit, resulting in a court-approved consent decree. The Court should affirm the district court's orders preventing Washington from needlessly continuing to litigate a duplicative claim.

## III. Washington's claim alleging ongoing violations is the same claim as OHA's and is precluded.

In a final bid to avoid preclusion, Washington argues that, even if the Buckhorn Consent Decree bars Washington's claim as to some of the alleged permit violations, it does not bar claims for ongoing violations that continue after entry of the Consent Decree. (Op. Br. at 36–38.) However, both Washington's citizen suit and OHA's claims—like all CWA citizen suits—were predicated on ongoing

violations. Washington cannot manufacture a new claim based on the violations it was required to assert from the outset. In any event, the Consent Decree addressed continuing violations and therefore bars Washington from relitigating those same violations.

### A. OHA and Washington brought citizen suits over the same ongoing violations.

This Court's test for the "identity of claims" weighs four factors, the most important being "whether the two suits arise out of the same transactional nucleus of facts." *Turtle Island Restoration Network v. United States Dep't of State*, 673 F.3d 914, 917–18 (9th Cir. 2012). Applying the test, the district court correctly ruled that Washington and OHA asserted the same claim. (1-ER-9–11.) Washington does not challenge this finding on appeal, nor does it cite the relevant test.

Washington instead relies on *Media Rights Technologies Inc. v. Microsoft*, 922 F.3d 1014, 1021 (9th Cir. 2019), for the proposition that "continuing violations cannot be barred by a consent decree entered before the new violations accrue." (Op. Br. at 37.) *Media Rights* is inapposite as it concerned this Court's idiosyncratic "separate-accrual rule" for copyright infringement claims. *See* 922 F.3d at 1023. Washington has not identified a single case where a court applied the separate-accrual rule to CWA citizen suits, and it provides no grounds for the Court to do so

here.[9] All CWA citizen suits involve ongoing violations, and those ongoing violations were resolved in this case for the duration of the Consent Decree.

Application of the separate-accrual rule here would be inconsistent with the CWA and Supreme Court precedent. As the Court explained in *Media Rights*, "claim preclusion does not apply to claims that were *not in existence* and *could not have been sued upon*—i.e., were not legally cognizable—when the allegedly preclusive action was initiated." 922 F.3d at 1021 (emphases added). But Washington's claim for ongoing violations *did* exist, and in fact, such violations were a necessary precondition of its citizen suit. *See Gwaltney*, 484 U.S. at 59 (holding citizen plaintiffs "may seek civil penalties only in a suit brought to enjoin or otherwise abate an ongoing violation"); *Sierra Club v. Union Oil Co.*, 853 F.2d 667, 669 (9th Cir. 1988). To have a cognizable citizen-suit claim, a plaintiff "must allege 'a state of either continuous or intermittent violation—that is, a reasonable likelihood that a past polluter will continue to pollute in the future.'" *Id.* (quoting

[9] Washington also cites *Lawlor v. National Screen Services Corporation*, 349 U.S. 322, 328 (1955), and *International Technologies Consultations v. Pilkington PLC*, 137 F.3d 1381, 1389-90 (9th Cir. 1998). But those cases involved new, post-consent decree conduct that differed from the pre-consent decree conduct and therefore gave rise to new claims. *See Lawlor*, 349 U.S. at 328 (describing new anticompetitive behavior and changed circumstances that gave rise to new antitrust violations); *Pilkington*, 137 F.3d at 1389–90 (holding that claims related to new manufacturing project and defendants' attempts to enforce confidentiality provision in consent decree were not barred because they arose out of different conduct than claims resolved by the consent decree).

*Gwaltney*, 484 U.S. at 57). Under Washington's theory, the same continuing violations that were a requirement for its (and OHA's) citizen suit would give rise to a "new" claim as soon as OHA and Defendants executed a settlement that provided for substantial civil penalties and injunctive relief to address permit compliance going forward. That position cannot be squared with *Gwaltney* and *Union Oil*.

Here, the district court correctly concluded that OHA's and Washington's claims were the same. (1-ER-9–11.) As required by the CWA and *Gwaltney*, both OHA and Washington asserted citizen-suit claims for ongoing violations of the Permit. (*Compare* 4-ER-495 (alleging that "Defendants' violations are continuing, ongoing, and reasonably likely to reoccur"), *with* 5-ER-742 (alleging "[t]he CWA and NPDES permit violations alleged herein are ongoing or are reasonably likely to continue to occur").) The existence of ongoing and future violations of the Permit does not distinguish Washington's claim—it underscores that OHA and Washington sought relief for the same alleged violations of the same CWA permit, including continuing violations.

The Buckhorn Consent Decree addressed those violations. Given the Mine's geology and the terms of the 2015 Permit, the parties understood that violations would not and could not cease overnight. Consequently, OHA negotiated a settlement with the objectives of "better understanding sources and pathways of

constituents potentially influencing groundwater quality at and near the Mine" and "promoting Permit compliance and improving water quality at and near the Mine." (2-ER-189.) The purpose of the Buckhorn Consent Decree was to provide redress for continuing Permit violations, and it expressly resolved "Permit violations that occur at or near the Mine through the Termination Date" of the Consent Decree—a date set six years after entry of the decree to allow Defendants time to investigate and remediate the Mine as necessary. (2-ER-197; 2-ER-188.) As Washington concedes, "[t]he consent decree is a final judgment with respect to the issues specifically addressed in the consent decree" (Op. Br. at 29), and the Buckhorn Consent Decree clearly addressed continuing Permit violations. Washington's attempt to continue litigating those same ongoing violations therefore is barred.

The Seventh Circuit addressed this exact issue and held that a consent decree bars CWA claims based on violations that postdate the decree if they are "related in origin" to the pre-decree violations and "have the same factual basis." *Milwaukee Metro. Sewerage Dist.*, 382 F.3d at 758. The court emphasized that the consent decree "address[ed] the underlying causes of the continuing violations by implementing remedial measures some of which, due to their large scale, will take several years to complete." *Id.* The same is true of the Buckhorn Consent Decree. Given the comprehensive nature of the decree, Washington's desire to proceed to trial and "secure additional relief . . . not included in the consent decree" (Op. Br. at

14) undermines the CWA's and the Consent Decree's remedial objectives. *Milwaukee Metro. Sewerage Dist.*, 382 F.3d at 763 ("Levying additional penalties on violators who are undertaking massive remedial projects will not bring about compliance any faster or cause the result to be any more effective—it will just cause the result to be more expensively arrived at."); *see also Paolino*, 830 F.3d at 16.

### B. Allowing duplicative citizen suit judgments on the same claims would result in absurd outcomes.

The district court applied controlling Supreme Court and Ninth Circuit precedent to bar Washington's duplicative citizen suit. The ruling was correct, and it also avoided absurd outcomes. *See E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 670 (9th Cir. 2021) ("We avoid absurd results when interpreting statutes."). Allowing Washington's case to proceed would incentivize endlessly duplicative citizen suits seeking additional relief for identical violations, undermining the CWA's carefully wrought enforcement framework and eliminating any incentive to settle a citizen claim.

If Washington can obtain double recovery over-and-above what the district court determined was "fair, reasonable, and equitable," then there is nothing to stop any other citizen with standing from also obtaining duplicative relief. Under Washington's view of the citizen-suit provision, a discharger could, for example, find itself defending multiple suits brought by a birder, a hiker, a mountain biker, a kayaker, and an environmental non-profit. Each of these citizens might have slightly

different interests and bases for standing. *See Nat. Res. Def. Council v. EPA*, 542 F.3d 1235, 1245 (9th Cir. 2008) (explaining that the citizen suit provision of the CWA broadly extends standing to the outer boundaries of Article III). Under Washington's view of the statute, each could seek its own preferred injunctive relief and penalty assessment, along with separate attorneys' fees. And, under Washington's view, a judicially-approved consent decree in the birder's suit under which the discharger committed to pay significant penalties, perform corrective actions, and pay attorneys' fees would have *no impact* on the hiker's suit asserting the *same claim* for the *same violation*. That hiker could proceed with her claim and seek to impose duplicative penalties, injunctive relief, and attorneys' fees. As could the mountain biker, the kayaker, the non-profit, etc. This cannot be how the CWA was intended to work.

And here, this anomaly is a problem of Washington's own making. It had the opportunity to pursue an enforcement action as contemplated by the CWA. An enforcement action brought by Washington would have barred OHA's suit, only exposing Defendants to a single prosecution. 33 U.S.C. § 1319(g)(6)(A); 33 U.S.C. § 1365(b). Washington, however, "fail[ed] to exercise [its] enforcement responsibility." *Gwaltney*, 484 U.S. at 60. This abdication of responsibility cannot now create a novel avenue for duplicative liability that is simply not contemplated by the statute.

## CONCLUSION

Citizen suits serve as a backstop to enforcement, not as a tool for obtaining multiple recoveries for the same CWA violations. Any interpretation of the statute that allows for duplicative citizen suits seeking relief above what the district court found to be fair and equitable would undercut the finality of the judgment and undermine the CWA's prohibition on redundant recoveries. This is particularly true when the citizen pursuing a successive suit is the State of Washington—the very entity whose failure to enforce the CWA made successive citizen suits possible in the first place. The Court should affirm the district court's orders granting judgment on the pleadings to Defendants and denying Washington's motion for relief from the judgment.

DATED this 2nd day of October, 2025

Respectfully submitted,

*s/ Jonathan W. Rauchway*

Jonathan W. Rauchway
Gail L. Wurtzler
James R. Henderson
DAVIS GRAHAM & STUBBS LLP
3400 Walnut Street, Suite 700
Denver, CO 80205
Telephone: (303) 892-9400

*Attorneys for Appellees Crown Resources Corporation and Kinross Gold U.S.A., Inc.*

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

**This brief contains 12,207 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[x] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  [ ] it is a joint brief submitted by separately represented parties;
  [ ] a party or parties are filing a single brief in response to multiple briefs; or
  [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated ______________.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/ *Jonathan W. Rauchway* **Date** October 2, 2025
*(use* "s/[typed name]" *to sign electronically-filed documents)*