No. 25-2397

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

STATE OF WASHINGTON,

Plaintiff - Appellant,

and

OKANOGAN HIGHLANDS ALLIANCE,

Plaintiff,

v.

CROWN RESOURCES CORPORATION and KINROSS GOLD USA, INC.,

Defendants - Appellees.

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON
AT SPOKANE

No. 2:20-cv-00147-MKD
The Honorable Mary K. Dimke
United States District Court Judge

# REPLY BRIEF FOR THE STATE OF WASHINGTON

NICHOLAS W. BROWN
Attorney General of Washington

TIMOTHY E. ALLEN
ELIZABETH HARRIS
Assistant Attorneys General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 521-3213
Timothy.Allen@atg.wa.gov
Elizabeth.Harris@atg.wa.gov

## TABLE OF CONTENTS


I. INTRODUCTION ........................................................................ 1

II. ARGUMENT ................................................................................ 2

A. Crown Fails to Show Intent to Preclude Washington's Claims in the Consent Decree ........................................................ 2

B. The District Court Erred Because Common Law Claim Preclusion Does Not Bar Washington's Case ............................ 6

1. The District Court Erred Because Claim Preclusion Does Not Apply Within a Consolidated Case ................................ 7

2. The Consent Decree Was Not a Final Judgment With Preclusive Effects on Washington's Claims ...................... 10

a. The consent decree does not have a preclusive effect against nonparty Washington's claims ......................... 11

b. Washington did not concede the final judgment element ............................................................ 14

(1) Washington did not concede that the consent decree is a final judgment with preclusive effect. 14

(2) Washington did not change its position with its Rule 60(B) motion ............................................. 16

3. There Was No Privity Between OHA and Washington ...... 18

a. The CWA does not provide a basis for precluding Washington's case ...................................................... 18

b. Without adequate representation, Washington's case survives ..................................................................... 22

c. Washington and OHA's Interests were not completely aligned......23

d. Neither OHA nor the district court represented Washington or "took care" to protect Washington's interests......25

C. The Identity of Claims Element is Lacking Because Claim Preclusion Does Not Preclude Violations That Accrue After Entry of the Consent Decree......28

D. Washington's Case Supports the Purposes of the CWA......30

III. CONCLUSION......31

# TABLE OF AUTHORITIES

## Cases

*Allen v. McCurry*,
449 U.S. 90 (1980) ........................................................................ 8

*Arizona v. California*,
530 U.S. 392 (2000) .................................................................... 7, 12

*Bay State HMO Management Inc. v. Tingley Systems Inc.*,
181 F.3d 174 (1st Cir. 1999) ............................................... 7, 8, 9, 30

*Blakely v. United States*,
276 F.3d 853 (6th Cir. 2002) ................................................... 11, 12

*Brownback v. King*,
592 U.S. 209 (2021) ........................................................................ 10

*Cell Therapeutics, Inc. v. Lash Group, Inc.*,
586 F.3d 1204 (9th Cir. 2009) ..................................... 10, 11, 12, 13

*Center For Environmental Law & Policy v. U.S. Fish & Wildlife Service*,
228 F. Supp. 3d 1152 (E.D. Wash. 2017) ................................... 24, 26

*Frank v. United Airlines, Inc.*,
216 F.3d 845 (9th Cir. 2000) ........................................................... 29

*Friends of Milwaukee's Rivers v. Milwaukee Metropolitan Sewerage District*,
382 F.3d 743 (7th Cir. 2004) ........................................................... 29

*Gamino v. SPCP Group, LLC*,
2022 WL 336469 (C.D. CA Feb. 2, 2022) ........................................ 8

*H.A.L. NY Holdings, LLC v. Guinan*,
958 F.3d 627 (7th Cir. 2020) ...................................................... 10, 11

*Hall v. Hall*,
584 U.S. 59 (2018) .......... 8, 9

*Hansberry v. Lee*,
311 U.S. 32 (1940) .......... 27

*In re Jenson*,
980 F.2d 1254 (9th Cir. 1992) .......... 10

*Keith v. Aldridge*,
900 F.2d 736 (4th Cir. 1990) .......... 3, 11, 12

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
571 F.3d 873 (9th Cir. 2009) .......... 16, 17

*Martin v. Wilks*,
490 U.S. 755 (1989) .......... 19

*Media Rights Technology Inc. v. Microsoft*,
922 F.3d 1014 (9th Cir. 2019) .......... 29

*Mendoza v. Amalgamated Transit Union International*,
30 F.4th 879 (9th Cir. 2022) .......... 23, 24

*Mi Familia Vota v. Fontes*,
129 F.4th 691 (9th Cir. 2025) .......... 11

*Paradise v. Prescott*,
767 F.2d 1514 (11th Cir. 1985) .......... 3, 11

*Richards v. Jefferson County, Alabama*,
517 U.S. 793 (1996) .......... 22, 26, 27

*Save the Bull Trout v. Williams*,
51 F.4th 1101 (9th Cir. 2022) .......... 6

*Schreiber v. Estate of Robert Knievel*,
637 F. App’x. 479 (9th Cir. 2016) .......... 4

*Schnabel v. Liu*,
302 F.3d 1023 (2002)........................................................................ 9

*Sierra Club, Inc. v. Electronic Controls, Inc.*,
900 F.2d 1350 (9th Cir. 1990) ..................................................................... 13

*Stewart v. City & County of San Francisco*,
No. 22-16018, 2023 WL 2064162 (9th Cir. Feb. 17, 2023).................. 15, 16

*Taylor v. Sturgell*,
553 U.S. 880 (2008)......................................................... 5, 6, 18, 19, 22, 25

*United States v. Gates*,
709 F.3d 58 (1st Cir. 2013)......................................................................... 15

*Vazquez v. Jan-Pro Franchising International, Inc.*,
986 F.3d 1106 (9th Cir. 2021) ..................................................................... 22

*Wild Fish Conservancy v. Cooke Aquaculture Pacific LLC*,
2019 WL 6310660 (W.D. Wash. Nov. 19, 2019)....................................... 21

*Wojciechowski v. Kohlberg Ventures, LLC*,
923 F.3d 685 (9th Cir. 2019) ............................................................ 2, 3, 5, 6

**Statutes**

11 U.S.C. § 1141(d)(1)(A)(1) ....................................................................... 19

33 U.S.C. § 1251(a) ....................................................................................... 30

33 U.S.C. § 1251(a)(2)................................................................................... 30

33 U.S.C. §1319............................................................................................. 21

33 U.S.C. §1319(a)(1).................................................................................... 20

33 U.S.C. §1319(b) ........................................................................................ 20

33 U.S.C. §1319(d) .......... 20, 21

33 U.S.C. § 1319(g)(6)(A)-(B) .......... 21

33 U.S.C. §1365(a) .......... 20

33 U.S.C. § 1365(b) .......... 20, 24

33 U.S.C. §1365(b)(1)(B) .......... 5

33 U.S.C. § 1365(d) .......... 20

OKLA. STAT. ANN. tit. 58, § 333 (1981) .......... 20

Pub. L. 95-598, 92 Stat. 2638 (1978) .......... 19

WASH. REV. CODE § 77.64.012 .......... 24

WASH. REV. CODE § 90.03.010 .......... 24

# I. INTRODUCTION

Crown asks this Court to hold, for the first time, that partial settlement of a consolidated citizen suit precludes non-settling parties from pursuing their claims. This conclusion is inconsistent with the principles of res judicata and is unsupported by the Clean Water Act. The court below failed to hold Crown to its burden of proving claim preclusion applies to Washington's case. That was error, and Washington should be permitted to litigate its claims in district court.

Claim preclusion cannot bar Washington's claims because the consent decree entered by OHA and Crown demonstrated no mutual intent to preclude Washington's claims. Because consent decrees are contractual in nature the claim preclusion analysis is modified to look at the intent of the parties to determine the preclusive effect. Even under an unmodified common law analysis, Washington prevails. The consent decree between OHA and Crown was not a final judgment on the merits because (a) the court did not reach the merits of Washington's claims and (b) the decree only disposed of part of a consolidated action. Moreover, there was no privity between OHA and Washington because the limited exceptions to the bar against non-party preclusion do not apply. Finally, the identity of claims element was not met

because Washington seeks to litigate claims that arose after implementation of the consent decree.

For the above reasons, Washington has demonstrated the district court erred in finding claim preclusion applied. Crown's Answer Brief fails to appropriately rebut or address Washington's arguments. Accordingly, this Court should reverse the district court's Orders and remand for further proceedings.

## II. ARGUMENT

### A. Crown Fails to Show Intent to Preclude Washington's Claims in the Consent Decree

Courts modify the claim preclusion analysis to look at intent where there is a negotiated agreement such as a consent decree. *Wojciechowski v. Kohlberg Ventures, LLC*, 923 F.3d 685, 689 (9th Cir. 2019). This does not require an explicit carve out of liability. The district court erred in precluding Washington's claims because on its face the consent decree showed no intent to preclude Washington's claims.

When assessing the claim preclusive effect of a consent decree, this court should "look to the intent of the settling parties to determine the preclusive effect . . . rather than to general principle[ ] of claim preclusion" because of the "contractual nature" of consent judgments. *Id*. at 689, 740-41.

Crown recognizes this authority, and cites to additional authorities that emphasize the contractual nature of consent decrees. *See* Answer Br. at 31. *See also* Answer Br. at 23 (citing *Paradise v. Prescott*, 767 F.2d 1514, 1525 (11th Cir. 1985) and *Keith v. Aldridge*, 900 F.2d 736, 740-41 (4th Cir. 1990)).

Crown misinterprets the application of *Wojciechowski* by claiming the intent analysis is limited to situations where the parties agreed to explicitly preserve claims – which is the case in *Wojciechowski* but not here. Answer Br. at 31. Crown then points to several lines within the consent decree it claims show "no such preservation of claims or any other limitation on its preclusive effect." *Id.* at 31-32. But Crown talks past Washington's argument – that OHA and Crown did not intend to preclude Washington's claims. *Wojciechowski*, *Keith*, and *Paradise* stand for the broad proposition that when a claim preclusion defense is premised on a consent decree, courts must look to the intent of the parties to the decree to determine the decree's preclusive effect. *Wojciechowski*, 923 F.3d at 689; *Keith*, 900 F.2d at 740-41; *Paradise*, 767 F.2d at 1525. Crown bears the burden of showing the consent decree precludes Washington's case, but point to no language explicitly precluding Washington's case. The factual distinction within *Wojciechowski* does not eliminate its overriding holding.

Nonetheless, Crown's reference to the language within the decree is insufficient to prove intent. Contract law requires a "meeting of the minds" of all of the parties as to the intended terms. *See Schreiber v. Estate of Robert Knievel*, 637 F. App'x. 479, 480 (9th Cir. 2016). Here, the plain language of the consent decree does not indicate the parties' mutual intent to preclude Washington's claims given the absence of language mentioning Washington's case. Instead, the consent decree mentions again and again that the only parties to the decree are OHA and Crown. *See* 3-ER-260 (Agreement between Crown and OHA); 3-ER-262 ¶12 (identifying OHA and Crown as "the Parties"); 3-ER-262 ¶16 (parties agree to settle and resolve OHA's complaint); 3-ER-264 ¶17 (decree will avoid risks of litigation and "resolve OHA's Complaint"); 3-ER-264 ¶18 (decree constitutes entire agreement between the Parties regarding OHA's CWA complaint).

Notwithstanding the plain language of the consent decree, if we look outside the four corners of the contract, OHA's counsel stated that the consent decree "does not resolve any claims" by Washington. 2-ER-178. Without proof of a "meeting of the minds" to preclude Washington's case, Crown's argument fails.

Crown then wrongly argues that the public nature of citizen suits precludes Washington's claims. Crown specifically argues that the consent decree precludes Washington's claims because "there is only one claim – the public's claim," Answer Br. at 32 (citing 1-ER-10-11), and therefore the decree "expressly intended to resolve this claim – whether asserted by OHA, Washington, or any other citizen plaintiff," Answer Br. at 32. Crown then cites to authority relating to the "diligent prosecution bar" of the CWA. Answer Br. at 36-37. However, as addressed further below, the "diligent prosecution bar" has no application to two citizen suit plaintiffs within the same consolidated lawsuit. It precludes citizen suits filed after a government enforcement action but does not address preclusion of one citizen suit prosecuted after another citizen suit. *See* 33 U.S.C. §1365(b)(1)(B). Indeed, Crown cites to no case other than the district court decision in this case for this proposition. Answer Br. at 32. Finally, Crown's position is contradicted by the consent decree, which is silent about the public nature of Washington's or OHA's claims, again illustrating the lack of intent.

Crown's attempt to pivot away from *Wojciechowski* and rely on common law claim preclusion under *Taylor* rings hollow. Answer Br. at 32. First, Crown's claim preclusion argument here is premised on a consent decree,

which modifies the claim preclusion analysis by focusing on the parties' mutual intent. Second, and relatedly, the *Taylor* case did not involve claim preclusion arising from a consent decree. *Taylor v. Sturgell*, 553 U.S. 880, 886-87 (2008) (first suit resolved by summary judgment motion). Accordingly, *Taylor* does not override or contradict *Wojciechowski* and the other line of cases holding that contractual analysis applies when claim preclusion defenses are premised on consent decrees.

In sum, Crown cannot meet its burden of proving that the consent decree intended to preclude Washington's claims. Therefore, the district court's orders were in error.

### B. The District Court Erred Because Common Law Claim Preclusion Does Not Bar Washington's Case

Even under the unmodified common law of claim preclusion, Washington's case survives. Traditionally, courts conduct a three-part analysis to determine if claim preclusion applies by looking to whether a prior case involved (1) the same claim or cause of action; (2) reached a final judgment on the merits; and (3) involved identical parties or privies. *Save the Bull Trout v. Williams*, 51 F.4th 1101, 1107 (9th Cir. 2022). Here, there was not a "prior suit" as Washington and OHA's cases are part of a consolidated case. There was not a final judgment on the merits because Washington was not a party to the

consent decree. There was no privity between the parties because OHA did not adequately represent Washington and the CWA does not preclude a second citizen suit proceeding to judgment. Finally, violations that accrue after the consent decree was entered do not meet the identity of claims requirement.

### 1. The District Court Erred Because Claim Preclusion Does Not Apply Within a Consolidated Case

The district court erred in holding that Washington's claims are barred by claim preclusion because preclusion does not apply within a single action. *See Arizona v. California*, 530 U.S. 392, 410 (2000) ("technical rules of preclusion are not strictly applicable [in the context of a single ongoing original action]") (brackets in original). Contrary to Crown's assertion, consolidation of OHA and Washington's lawsuits and subsequent management of the matter as a single action bars the use of claim preclusion against Washington. Answer Br. at 27.

Even if claim preclusion could apply within a consolidated action, the final judgement element of claim preclusion is not met. Entry of a consent judgment within a consolidated case is "only a final judgment on a portion of the aggregate case." *Bay State HMO Mgmt. Inc. v. Tingley Sys. Inc.*, 181 F.3d 174, 182 (1st Cir. 1999). This is so because consolidated cases "should be treated as a single action for res judicata purposes." *Id*. Because of this, "claim

preclusion is particularly inappropriate where, as here, the two cases have been consolidated." *Gamino v. SPCP Group*, *LLC*, 2022 WL 336469, at *3 (C.D. CA Feb. 2, 2022) (citing *Tingley*, 181 F.3d at 180-81, n.5). Thus, there was never a final judgment on the full action capable of precluding Washington's claim.

Although the Nine Circuit Court of Appeals has not squarely addressed res judicata in a consolidated case, allowing Washington's case to proceed following entry of the consent decree is consistent with res judicata. Res judicata serves to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). *Tingley* held the rationale for res judicata did not support the application of preclusion within a consolidated case. 181 F.3d at 177. The same arguments apply here. Opening Br. at 19. Because the State's case here would proceed as a continuance of the same action before the same judge who entered the consent decree, it avoids the vexation of multiple lawsuits, conserves judicial resources, and prevents the possibility of inconsistent decisions.

Crown dramatically overstates the holding in *Hall v. Hall*, 584 U.S. 59 (2018). *Hall* did not involve claim preclusion at all; instead, *Hall* concerned the

impact of consolidation on appealability. *Id.* at 61-62. In fact, the Supreme Court's decision makes clear that its holding is limited to the appealability context: "What our decision does mean is that constituent cases retain their separate identities *at least to the extent that a final decision in one is immediately appealable by the losing party.*" *Id.* at 77 (emphasis added). Nothing in *Hall* undermines the holding in *Tingley*. Crown is simply wrong to represent that *Hall* holds that "consolidated actions retain their separate identities *for final judgment purposes*." Answer Br. at 28 (emphasis added). *Hall* said nothing at all about the relationship between consolidation and the "final judgment" element of the common law claim preclusion test.

Importantly, Crown points to no Ninth Circuit case, or indeed any case, addressing the impact of consolidation on res judicata. When this Court surveyed the impact of consolidation on claim preclusion in *Schnabel v. Liu*, it ultimately left the issue open. 302 F.3d 1023, 1036 (2002) ("[W]e do not resolve the issue of whether consolidated actions in general retain their separate character under *Johnson* and its progeny, or are merged for purposes of determining personal jurisdiction.")

### 2. The Consent Decree Was Not a Final Judgment With Preclusive Effects on Washington's Claims

The district court erred because the consent decree was not a final judgment with a preclusive effect on Washington's claims. A final judgment on the merits is typically triggered when a court enters a judgment following litigation of the merits in favor of one party and against the other parties. *Brownback v. King*, 592 U.S. 209, 214 (2021); *In re Jenson*, 980 F.2d 1254, 1257 (9th Cir. 1992) (final judgment where the court "disposed of the litigation on the merits.") (internal citation omitted). Conversely, where resolution of a case does not decide liability, it is not a final judgment on the merits. *Cell Therapeutics, Inc. v. Lash Group, Inc.*, 586 F.3d 1204, 1211 (9th Cir. 2009). A final judgement was not entered here because any judgment was just between Crown and OHA, the court did not address the merits of the claims or remedy, and the consent decree disclaimed liability.

Crown relies on *H.A.L. NY Holdings, LLC v. Guinan*, 958 F.3d 627 (7th Cir. 2020) to argue that the consent decree was a final judgment on the merits with preclusive effect even though there was no admission of liability. Answer Br. at 25. But, *H.A.L.* is distinguishable. First, the claim preclusion defense in *H.A.L.* arose out of a judgment following a Rule 68 Offer of Judgement rather

than a consent decree. Second, *H.A.L.* involved an assertion of preclusion by a nonparty in a subsequent suit. *H.A.L.*, 958 F.3d at 631.

#### a. The consent decree does not have a preclusive effect against nonparty Washington's claims

Consent decrees do not preclude nonparties and, since Washington was not a party to the decree, there was no final judgment on the merits precluding its claims. The district court erred in finding a final judgment on the merits precluding Washington's claim. Crown wrongly suggests that Washington is asking the Court to "adopt several new rules" and that its arguments are unsupported by the law. This is in error because, as addressed below, the Ninth Circuit recognizes that settlement agreements do not bind non-parties. *Cell Therapeutics*, 586 F.3d at 1212.

Crown relies on several cases to argue that consent decrees are final judgments with preclusive effect against nonparties: *Mi Familia*, *Arizona*, *Blakely*, *Keith*, *and Paradise.* Answer Br. at 22-23 (citations incorporated by reference). But all of these cases apply claim preclusion to the actual parties to a consent decree, not to non-parties. In *Mi Familia Vota v. Fonte*s, the Ninth Circuit applied the terms of a consent decree entered into by Arizona election officials to bar those same Arizona election officials from enforcing a state statute. 129 F.4th 691, 718 (9th Cir. 2025) (finding the consent decree "cabins

the authority of parties to the decree"). In *Arizona v. California*, the Supreme Court recognized preclusion as between signatories to a consent decree does not extend beyond those parties to issue preclude a nonparty's claims in a subsequent suit. 530 U.S. at 414. *In Blakely*, the Sixth Circuit stated that a consent judgment … has the full effect of a final judgment for purposes of claim preclusion" when looking at claim preclusion where the parties to the consent decree are the same parties in the precluded action. *Blakely v. United States,* 276 F.3d 853, 866 (6th Cir. 2002). In *Keith*, the court found claim preclusion from a settlement applied in a subsequent litigation between the same parties. *Keith*, 900 F.2d at 737.

Importantly, none of Crown's authority conflicts with Washington's authority that consent decrees normally do not have a preclusive effect on non-parties. *Cell Therapeutics* stands for the proposition that a settlement agreement did not create claim preclusion against a nonparty where the nonparty was not a signatory to the settlement agreement. *Cell Therapeutics*, 586 F.3d at 1212. The *Cell Therapeutics* court concluded "settlement [agreements] generally do not bar claims against non-parties . . . on the subsequent litigation of issues not expressly resolved in the settlement." *Id*. at

1210. This is particularly true when the agreement disclaims liability and one "was not even a party to the settlement." *Id.* at 1210.

Rather than addressing the *Cell Therapeutics* holding head on, Crown attempts to suggest it does not apply because the case involved different legal issues and a settlement agreement rather than a consent decree. Answer Br. at 24-26. But this is a distinction without a difference. A consent decree is a formalized settlement that is approved by the court to ensure it is fair, reasonable, and equitable. *See Sierra Club, Inc. v. Electronic Controls, Inc.*, 900 F.2d 1350, 1355 (9th Cir. 1990). This turns it into a final judgment, but not necessarily a final judgment on the merits. The argument that *Cell Therapeutics* is inapposite because it arose out of a settlement agreement instead of a consent decree is a non-starter. Moreover, the fact that *Cell Therapeutics* involved different legal issues does not take away the import of its overall holding - a holding that is still good law within the Ninth Circuit and does not conflict with the precedent relied upon by *Crown*.

Moreover, Crown has the burden to prove claim preclusion applies. Crown can point to no cases holding that a consent decree can preclude the claims of a nonparty. Without this authority, Crown's argument fails.

In sum, the district court erred because the consent decree here did not serve as a final judgment on the merits and does not have a preclusive effect on Washington's claims since it was not a party to the decree.

### b. Washington did not concede the final judgment element

Crown tries to sidestep its shortcomings by arguing Washington "conceded" the consent judgment had a preclusive effect based on a statement made at oral argument and that Washington made "new arguments" within its Rule 60(b) motion. Answer Br. at 20-22. Neither of these arguments has merit.

#### (1) Washington did not concede that the consent decree is a final judgment with preclusive effect

Washington did not concede the consent decree was a final judgment on the merits. In its briefing, Washington stated, "Here, there was a final judgment but only as to the claims between OHA and Defendants." 2-ER-144. This was a final judgment settling OHA's claims which did not reach the merits of the case.

At oral argument Washington's counsel emphasized that this case did not involve a "subsequent action" as required under the common law for claim preclusion. Instead, Washington's suit was part of a single lawsuit litigated contemporaneously with OHA's lawsuit. *See* 2-ER-45. Washington's counsel stated: "So you asked if this involved Sierra Club or someone coming [in] next

week and filing suit for this Clean Water Act permit, that would – claim preclusion would absolutely apply because that's a suit subsequent to the judgment being entered." 2-ER-45. Washington also made this point in its response brief below: "Here the State's case is not a 'successive' litigation as it was filed contemporaneously with OHA's." 2-ER-143. Washington never "conceded" that the consent decree was a final judgment on the merits with preclusive effect against Washington's case.

Crown incorrectly relies on a First Circuit criminal case to support their position. Answer Br. at 21 (citation omitted). In *Gates*, the defense explicitly conceded that an officer had "reasonable articulable suspicion to effect the traffic stop," a fundamental element of criminal constitutional procedure, and then later reversed that concession on appeal. *United States v. Gates*, 709 F.3d 58, 61 (1st Cir. 2013). Here, Washington's counsel never made an explicit concession about the final judgment on the merits element; instead, Crown relies on its erroneous interpretation of a statement regarding the subsequent suit requirement, a different element of claim preclusion.

*Stewart v. City & Cnty. of S.F.* is similarly inapplicable. No. 22-16018, 2023 WL 2064162 (9th Cir. Feb. 17, 2023) (unpublished). *Stewart* involved a party's concession at oral argument that their motion was only based on

statutory grounds and then they inappropriately sought an appeal on new constitutional grounds. *Id*. The court there concluded that "an appellate court does not decide issues the trial court did not decide." *Id*. Here, Washington's statement at oral argument did not involve a concession related to the grounds for relief. Moreover, the district court here considered the same issues raised by Washington related to the lack of preclusive effect by consent decree judgment. 2-ER-137-138 and 2-ER-20-21. Washington did not raise an issue on appeal that was not brought before the trial court.

**(2) Washington did not change its position with its Rule 60(B) motion**

Washington elaborated below on the non-preclusive effect of the consent decree and the unique nature of a consolidated lawsuit in a Rule 60(b) motion. Crown's argument that Washington is trying to benefit on appeal from a "change of position" in its Rule 60(b) motion is inaccurate. *See* Answer Br. at 22. Rule 60(b) motions "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) (internal quotation omitted). However, here Washington elaborated on a position; it did not change its position.

Washington argued below that the consent decree did not have a preclusive effect on Washington's claims, stating "there was a final judgment but only as to the claims between OHA and Defendants." 2-ER-144. In its order, the district court found the consent decree was a final judgment without discussion of the basis for finding that the consent decree met the final judgment on the merits standard. 1-ER-11 (citation omitted). Washington elaborated on this issue in its Rule 60(b) motion to clarify that the consent decree did not result in a judgment on the merits because it did not dispose of the merits of the action or adjudicate liability. 2-ER-21. Similarly, Washington's argument regarding claim preclusion within a consolidated action expanded on its argument that claim preclusion only applies to a subsequent lawsuit filed after entry of judgment. *See* 2-ER-142, 2-ER-45.

Washington did not "raise arguments or present evidence for the first time" in the Rule 60(b) motion – it elaborated on its position, which is perfectly appropriate for a Rule 60(b) motion. *Marlyn Nutraceuticals, Inc.*, 571 F.3d at 880.

Even if the Court determines that Washington raised these arguments too late, which it did not, this is only one part of the common law claim preclusion

analysis. Crown fails to prove the additional elements of identity of claims and privity required under common law claim preclusion.

### 3. There Was No Privity Between OHA and Washington

Washington and OHA were not in privity when OHA and Crown moved to enter the consent decree. Ordinarily, as in this case, a consent decree binds and claim precludes the parties to the judgment, but does not apply to nonparties who did not have a chance to actually litigate the claims. *See Taylor*, 553 U.S. at 892-93 ("The application of claim and issue preclusion to nonparties thus runs up against the 'deep-rooted historic tradition that everyone should have his own day in court.'") However, in rare instances the claims of a nonparty can be precluded if they meet a specific exception. *Id.* at 893. Neither the CWA citizen suit provision nor the relationship between Washington and OHA's claims is one of the "discrete exceptions that apply in "limited circumstances" to bind a nonparty to a judgment. *Taylor*, 553 U.S. at 898.

#### a. The CWA does not provide a basis for precluding Washington's case

The Clean Water Act is not a special statutory scheme that creates an exception to nonparty preclusion against a second citizen suit. Crown argues nonparty preclusion applies because a CWA citizen suit is one that may be brought only on behalf of the public at large. Answer Br. at 35. However, the

fact that a citizen suit is brought on behalf of the public does not make it a special statutory scheme with claim preclusive effect. *Taylor*, 553 U.S. at 895.

Crown claims the CWA "is precisely the type of "statutory scheme" envisioned by the Supreme Court to be "brought only on behalf of the public at large" and thus preclude a nonparty's claim. Answer Br. at 35. However, this does not meet the Supreme Court's standard that the statutory scheme must "*expressly foreclos[e]* successive litigation." *Taylor*, 553 U.S. at 895; (citing *Martin v. Wilks*, 490 U.S. 755, n.2 (1989)) ("[W]here a special remedial scheme exists *expressly foreclosing* successive litigation by nonlitigants…, legal proceedings may terminate pre-existing rights ….") (emphasis added)). In *Wilks*, where the Supreme Court developed the "expressly foreclosing" standard, the statutory schemes referenced were clear and unambiguous. The first statute, part of the federal Bankruptcy Code, provided that "the confirmation of a plan—*discharges the debtor from any debt* that arose before the date of such confirmation … *whether or not – a proof of the claim based on such debt is filed* or deemed filed under section 501 of this title." 11 U.S.C. § 1141(d)(1)(A)(1) (enacted by Pub. L. 95-598, 92 Stat. 2638) (1978) (emphasis added). The second statute was the Oklahoma Probate law which stated "[a]ll claims arising upon contracts [hereafter made], whether the same

be due, not due or contingent, must be presented [within] the [time limited] in the notice, and *any claim not so presented is barred forever*." OKLA. STAT. ANN. tit. 58, § 333 (1981) (emphasis added). In both cases, there was an express bar on claims by nonparties written into the statute.

The CWA does not provide similarly specific preclusive language. Crown unsuccessfully tries to use two provisions in the CWA that make it "public in nature" to argue it is a special statutory scheme. Answer Br. at 35-36. The first is the citizen suit notice provision, which provides that a citizen suit may not be filed after the government files a traditional enforcement action. Answer Br. at 36 (citing 33 U.S.C. § 1365(b)). This provision prevents a "duplicative action," but only if the government files first. Nowhere in the text of this section is there mention of, let alone preclusion of, a second citizen suit. Indeed, Crown concedes that the CWA permits multiple citizens suits. Answer Br. at 39.

Similarly, the remedy provisions cited by Crown do not amount to a statutory scheme capable of precluding a second citizen suit. Answer Br. at 37 (*citing* 33 U.S.C. §1365(a), 33 U.S.C. §1319(a)(1), (b), §1319(d), 1365(d).) Nowhere in the text of these statutory provisions is there an express foreclosure of a co-litigating citizen plaintiff's case. Crown argues the similarity of relief

available to a citizen suit plaintiff and a traditional government enforcer is evidence of the public nature of the suit. Answer Br. at 37. However, this is in error becuase this text does not expressly address or foreclose a second citizen suit. In fact, the remedial provision Crown cited at 33 U.S.C. § 1319(d) fits neatly within the preclusive scheme of the CWA that expressly precludes a citizen suit filed after a traditional government enforcement action. Penalties assessed under §1319 in a traditional government enforcement action preclude a later filed citizen suit seeking civil penalties. 33 U.S.C. § 1319(g)(6)(A)-(B). This "specific statutory preclusion rule" operates only when the government files first but says nothing about a second citizen suit. *Wild Fish Conservancy v. Cooke Aquaculture Pac. LLC*, 2019 WL 6310660 at *13 (W.D. Wash. Nov. 19, 2019). Had Congress intended to preclude a second filed citizen suit it could have, but did not.

Because the CWA is silent as to a citizen suit filed after another private citizen suit,the Supreme Court's standard requiring a statutory scheme that "*expressly foreclose[s]* successive litigation" has not been met. Crown argues a torturous reading of the statute to find Congressional silence regarding a second-filed citizen suit amounts to a statutory scheme to preclude. Crown's

argument fails because it does not, and cannot, point to any statutory text that expressly forecloses Washington's suit.

#### b. Without adequate representation, Washington's case survives

Neither Crown nor OHA provided adequate representation of Washington in the entry of the consent decree as required under nonparty preclusion principles. *Taylor*, 553 U.S. at 900.

To show Washington was adequately represented, Crown must demonstrate that "(1) The interests of the nonparty and her representative are aligned, and (2) either the party understood herself to be acting in a representative capacity or the original court took care to protect the interests of the nonparty." *Taylor*, 553 U.S. at 900 (cleaned up). This is a high bar that can be met in suits brought by trustees, guardians, and other fiduciaries. *Taylor* at 894; *see also Vazquez v. Jan-Pro Franchising Int'l, Inc.*, 986 F.3d 1106, 1115–16 (9th Cir. 2021). Where the Supreme Court has looked at adequacy of representation it has concluded that the prior proceeding would have to "insure that those present are of the same class as those absent and that the litigation is so conducted as to insure the full and fair consideration of the common issue." *Richards*, 517 U.S. at 801. Crown points to no evidence of such a relationship between OHA and Washington.

### c. Washington and OHA's Interests were not completely aligned

Neither Crown nor OHA's interests sufficiently align with Washington's to meet the adequate representation requirement for claim preclusion.

Crown relies on *Mendoza v. Amalgamated Transit Union International*, 30 F.4th 879 (9th Cir. 2022), for the proposition that where one party's interests "necessarily rise and fall" based on the proof of another's case, there is adequate representation. Answer Br. at 42. *Mendoza*, however, does not say what Crown wishes it did: the Ninth Circuit found claim preclusion where one party's interest "completely aligned" with the other. *Id.* at 888. In a fact-specific inquiry, the *Mendoza* court assessed the legally intertwined relationship of Executive Board members following imposition of a trusteeship due to the misconduct of one Board member. *Id*. No such dependent relationship exists between the State and OHA. Crown argues that it is the "proof of the same alleged permit violations" which perfectly align the State and OHA's interests. Answer Br. at 42. However, not only have those violations not been proved due to the settlement, but proving violations is only part of the interests at stake – different interests in a remedy also differentiate the State and OHA's interests.

Additionally, in that case one party filed suit on behalf of a union, of which the later filing plaintiffs were members. *Mendoza*, 30 F.4th at 889. So, claim preclusion sprang from one plaintiff filing on behalf of the later plaintiffs. That is not the case here.

Here, Washington's interests were not "completely aligned" with OHA's interests. *Mendoza*, 30 F.4th at 888. While the State and OHA co-litigated for several years, and shared experts, this is not complete alignment. A CWA citizen-suit protects a public good, but citizen-suit plaintiffs ultimately bring the suit "on [their] own behalf," 33 U.S.C. § 1365(b), and do "not actually represent all citizens*." Ctr. For Env't Law & Policy v. U.S. Fish & Wildlife Serv.*, 228 F. Supp. 3d 1152, 1159-60 (E.D. Wash. 2017). Washington's interests are necessarily broader than OHA's as they encompass all the waters of the state and all the fish and wildlife. WASH. REV. CODE § 90.03.010, WASH. REV. CODE § 77.64.012. A remedy sufficient to address OHA's interests may not satisfy the State's interests. For example, Washington could demonstrate that the CWA requires additional remedial measures, such as capturing and treating contaminated discharges at two locations already identified by Washington's experts without the need for further study. Notably, the consent decree does not require Crown to implement these remedies. 2-ER-189-193

(providing for a Site Investigation Plan and development of a Corrective Action Plan, without mandating implementation of a particular remedy). Washington could also seek to hold Kinross Gold USA, Inc., Crown Resources Corp.'s parent company, accountable for the long-term implementation costs of the remedy, something the consent decree does not do. *See* 2-ER-189-193 (providing in paragraph six that Crown, and not the joint "Defendants," must implement the injunctive relief). Washington could also seek additional penalties against Crown to address the full duration and extent of violations at the mine site. Each of these interests is not aligned with the terms of the consent decree. By granting Crown's motion for judgment on the pleadings, the district court prevented Washington from proving the necessity of this additional relief.

#### d. Neither OHA nor the district court represented Washington or "took care" to protect Washington's interests

For the consent decree to preclude Washington's claims, either OHA must have "understood [itself] to be acting in a representative capacity or the original court took care to protect the interests of the nonparty." *Taylor*, 553 U.S. 880 at 900. Neither is true here.

OHA's work in entering the consent decree does not show it understood it was representing Washington. Crown attempts to use the fact that citizen suits are "public in nature" to claim that OHA acted in a representative capacity of Washington. Answer Br. at 43. By this argument, OHA represented every citizen of Washington. But, this is not how a CWA citizen suit is structured. *Ctr. For Env't Law & Policy*, 228 F. Supp. 3d at 1159-60 (citizen suit plaintiffs do "not actually represent all citizens."). It also conflicts with Supreme Court precedent. In *Richards*, the Supreme Court found that a nonparty's claims were not precluded where, in a previous adjudication, the previous plaintiffs did not sue on behalf of a class, did not purport to assert claims on behalf of nonparties, and the judgment did not purport to bind nonparties. *Richards*, 517 U.S. at 801-02. In other words, adequate representation existed where there were procedures to protect a nonparty or there was an understanding that the initial suit was brought to represent the nonparty. These are not present here. OHA did not sue on behalf of a class including Washington, OHA did not purport to assert claims on behalf of Washington, and the consent decree did not purport to bind Washington. So, OHA's actions do not amount to adequate representation.

Tellingly, Crown points to no statement from OHA showing it understood or believed it was representing Washington. In fact, OHA represented the opposite to the district court: they were not addressing Washington's claims through entry of the consent decree. 2-ER-178.

The district court also did not say that it was taking care to protect the interests of Washington. In *Richards*, the Supreme Court found that there was "no reason to suppose that the [previous] court took care to protect the interests of petitioners" where the previous litigation did not "insure that those present are of the same class as those absent and that the litigation is so conducted as to insure the full and fair consideration of the common issue." *Richards*, 517 U.S. at 802 (citing *Hansberry v. Lee*, 311 U.S. 32 (1940)). The district court here never took care to ensure OHA and Washington are "of the same class." *Id*. Additionally, there was not a "full and fair consideration of the common issue" as neither the claims nor the appropriate remedy were fully litigated. It would be incorrect to conclude that the district court "took care to protect the interests of Washington." *Richards*, 517 U.S. at 802.

Crown asserts the district court's review of the consent decree amounts to taking "care to protect the interests of" Washington. Answer Br. at 44. However, the Court did not state it was considering Washington's interests in

entering the consent decree. *See* 1-ER-6-14. Crown points to comments at oral argument for the proposition that "the district court reasonably considered Washington's failure to object as evidence that OHA had negotiated a settlement protective of the public interest." Answer Br. at 45. However, while the district court noted at oral argument that Washington had an opportunity to object and did not, it did not state that Washington's lack of objection was evidence that the consent decree was protective of the public interest, let alone Washington's interests. *Id.* Similarly, the district court's order also did not state that Washington's lack of objection was evidence that the settlement was protective of the public interest or of Washington's interests. S*ee* 1-ER 6-14.

### C. The Identity of Claims Element is Lacking Because Claim Preclusion Does Not Preclude Violations That Accrue After Entry of the Consent Decree

Crown hopes that its settlement with OHA can shield it from liability for thousands of future CWA violations too, arguing that the ongoing violation requirement for filing a CWA citizen suit bars the prosecution of any claims accruing after entry of a consent decree. Answer Br. at 47. This confounds common sense and misreads the law. This Court has pointed out "[a] claim arising after the date of an earlier judgment is not barred, even if it arises out of a continuing course of conduct that provided the basis for the earlier claim."

*Media Rights Tech. Inc. v. Microsoft*, 922 F.3d 1014 (9th Cir. 2019) (citing *Frank v. United Airlines, Inc.*, 216 F.3d 845, 851 (9th Cir. 2000)). Thus, in the Ninth Circuit, even if the continuing violations at the mine arise from "a continuing course of conduct that provided the basis for the earlier claim," it is settled law that they are not barred. *Id.*

Crown's reliance on a Seventh Circuit case to show identity of claims with respect to ongoing violations is misplaced. In *Friends of Milwaukee Rivers*, the Seventh Circuit did not analyze the application of res judicata as between two citizen suits, but rather as between a government prosecution and a citizen suit. *Friends of Milwaukee's Rivers v. Milwaukee Metro. Sewerage Dist.*, 382 F.3d 743, 757 (7th Cir. 2004). Importantly, the court was analyzing the identity of claims under Wisconsin state law, not federal common law. *Friends of Milwaukee's Rivers*, 382 F.3d at 757. Additionally, Washington is seeking additional injunctive relief, not merely additional penalties. *Id*. at 763 (disapproving of additional penalties where a remedy is already underway). The relief provided for in *Milwaukee* "was intended to address the underlying causes of the continuing violations by implementing remedial measures." *Id*. However, here the consent decree does not implement remedial measures but rather implements an investigation and framework designed to develop

eventual remedial measures. 2-ER-179-243. Washington could seek to implement remedial measures already identified by experts without further study in addition to the continuing consent decree investigation work. 2-ER-189-193. Thus, here Washington could seek actions that may add expense, but could also cause the ultimate remedy to be faster and more effective, in contrast to *Milwaukee*.

### D. Washington's Case Supports the Purposes of the CWA

The Clean Water Act seeks to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters" with a goal of fully fishable and swimmable waters. 33 U.S.C. § 1251(a), (a)(2). Washington seeks to hold Crown to account for its past and ongoing violations, and also to implement remedies to address existing contamination and prevent future contamination to fulfill these purposes.

Allowing Washington's case to proceed as part of a consolidated action following implementation of a consent decree between the other parties does not lead to "absurd outcomes." Answer Br. at 51. Any ruling here could be limited to apply within a consolidated action resolved by a consent decree, preventing the "endless" citizen suits feared by Crown. *Id*. Resolution of the remaining part of an "aggregate case" is discrete, not endless. *Tingley*, 181

F.3d at 177. It is not true that one party's settlement "would have *no impact*" on another party's potential relief. Answer Br. at 51. Rather, the same judge who enters a partial settlement could review the further relief sought by the remaining party to ensure a fair result. Controls to prevent endless or duplicative recovery are built into the very structure of the consolidated action.

## III. CONCLUSION

For all the reasons addressed herein, this Court should reverse the district court's orders and its conclusion that claim preclusion bars Washington's claims.

RESPECTFULLY SUBMITTED this 24th day of November, 2025.

NICHOLAS W. BROWN
Attorney General of Washington

*s/ Timothy E. Allen*
TIMOTHY E. ALLEN
ELIZABETH HARRIS
Assistant Attorneys General
800 5th Avenue, Suite 2000
Seattle, WA 98104
(206) 521-3213
Timothy.Allen@atg.wa.gov
Elizabeth.Harris@atg.wa.gov

## CERTIFICATE OF COMPLIANCE

I am the attorney or self-represented party.

**This brief contains 6,517 words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

[ ] it is a joint brief submitted by separately represented parties.
[ ] a party or parties are filing a single brief in response to multiple briefs.
[ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated ______________.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** _*/s/ Timothy E. Allen*________ **Date** __November 24, 2025_____

## CERTIFICATE OF SERVICE

I hereby certify, under penalty of perjury, that I electronically filed a true and correct copy of the foregoing document with the Clerk of the Court of the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

DATED this 24th day of November 2025, at Seattle, Washington.

*s/ Timothy E. Allen*
TIMOTHY E. ALLEN
ELIZABETH HARRIS
Assistant Attorneys General
800 5th Avenue, Suite 2000
Seattle, WA 98104
(206) 521-3213
Timothy.Allen@atg.wa.gov
Elizabeth.Harris@atg.wa.gov

## ADDENDUM TABLE OF CONTENTS

33 U.S.C.A. § 1319 .................................................................... ADDENDUM 1-10

33 U.S.C.A. § 1365 .................................................................. ADDENDUM 11-13

OKLA. STAT. TIT. 58, §§ 332-333 (1981) ............................. ADDENDUM 14-15

KeyCite Yellow Flag
Proposed Legislation

United States Code Annotated
Title 33. Navigation and Navigable Waters (Refs & Annos)
Chapter 26. Water Pollution Prevention and Control (Refs & Annos)
Subchapter III. Standards and Enforcement (Refs & Annos)

33 U.S.C.A. § 1319

§ 1319. Enforcement

Currentness

**(a) State enforcement; compliance orders**

**(1)** Whenever, on the basis of any information available to him, the Administrator finds that any person is in violation of any condition or limitation which implements section 1311, 1312, 1316, 1317, 1318, 1328, or 1345 of this title in a permit issued by a State under an approved permit program under section 1342 or 1344 of this title he shall proceed under his authority in paragraph (3) of this subsection or he shall notify the person in alleged violation and such State of such finding. If beyond the thirtieth day after the Administrator's notification the State has not commenced appropriate enforcement action, the Administrator shall issue an order requiring such person to comply with such condition or limitation or shall bring a civil action in accordance with subsection (b) of this section.

**(2)** Whenever, on the basis of information available to him, the Administrator finds that violations of permit conditions or limitations as set forth in paragraph (1) of this subsection are so widespread that such violations appear to result from a failure of the State to enforce such permit conditions or limitations effectively, he shall so notify the State. If the Administrator finds such failure extends beyond the thirtieth day after such notice, he shall give public notice of such finding. During the period beginning with such public notice and ending when such State satisfies the Administrator that it will enforce such conditions and limitations (hereafter referred to in this section as the period of “federally assumed enforcement”), except where an extension has been granted under paragraph (5)(B) of this subsection, the Administrator shall enforce any permit condition or limitation with respect to any person--

**(A)** by issuing an order to comply with such condition or limitation, or

**(B)** by bringing a civil action under subsection (b) of this section.

**(3)** Whenever on the basis of any information available to him the Administrator finds that any person is in violation of section 1311, 1312, 1316, 1317, 1318, 1322(p), 1328, or 1345 of this title, or is in violation of any permit condition or limitation implementing any of such sections in a permit issued under section 1342 of this title by him or by a State or in a permit issued under section 1344 of this title by a State, he shall issue an order requiring such person to comply with such section or requirement, or he shall bring a civil action in accordance with subsection (b) of this section.


WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**(4)** A copy of any order issued under this subsection shall be sent immediately by the Administrator to the State in which the violation occurs and other affected States. In any case in which an order under this subsection (or notice to a violator under paragraph (1) of this subsection) is issued to a corporation, a copy of such order (or notice) shall be served on any appropriate corporate officers. An order issued under this subsection relating to a violation of section 1318 of this title shall not take effect until the person to whom it is issued has had an opportunity to confer with the Administrator concerning the alleged violation.

**(5)(A)** Any order issued under this subsection shall be by personal service, shall state with reasonable specificity the nature of the violation, and shall specify a time for compliance not to exceed thirty days in the case of a violation of an interim compliance schedule or operation and maintenance requirement and not to exceed a time the Administrator determines to be reasonable in the case of a violation of a final deadline, taking into account the seriousness of the violation and any good faith efforts to comply with applicable requirements.

**(B)** The Administrator may, if he determines (i) that any person who is a violator of, or any person who is otherwise not in compliance with, the time requirements under this chapter or in any permit issued under this chapter, has acted in good faith, and has made a commitment (in the form of contracts or other securities) of necessary resources to achieve compliance by the earliest possible date after July 1, 1977, but not later than April 1, 1979; (ii) that any extension under this provision will not result in the imposition of any additional controls on any other point or nonpoint source; (iii) that an application for a permit under section 1342 of this title was filed for such person prior to December 31, 1974; and (iv) that the facilities necessary for compliance with such requirements are under construction, grant an extension of the date referred to in section 1311(b)(1)(A) of this title to a date which will achieve compliance at the earliest time possible but not later than April 1, 1979.

**(6)** Whenever, on the basis of information available to him, the Administrator finds (A) that any person is in violation of section 1311(b)(1)(A) or (C) of this title, (B) that such person cannot meet the requirements for a time extension under section 1311(i)(2) of this title, and (C) that the most expeditious and appropriate means of compliance with this chapter by such person is to discharge into a publicly owned treatment works, then, upon request of such person, the Administrator may issue an order requiring such person to comply with this chapter at the earliest date practicable, but not later than July 1, 1983, by discharging into a publicly owned treatment works if such works concur with such order. Such order shall include a schedule of compliance.

**(b) Civil actions**

The Administrator is authorized to commence a civil action for appropriate relief, including a permanent or temporary injunction, for any violation for which he is authorized to issue a compliance order under subsection (a) of this section. Any action under this subsection may be brought in the district court of the United States for the district in which the defendant is located or resides or is doing business, and such court shall have jurisdiction to restrain such violation and to require compliance. Notice of the commencement of such action shall be given immediately to the appropriate State.

**(c) Criminal penalties**

**(1) Negligent violations**

Any person who--


WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**(A)** negligently violates section 1311, 1312, 1316, 1317, 1318, 1321(b)(3), 1322(p), 1328, or 1345 of this title, or any permit condition or limitation implementing any of such sections in a permit issued under section 1342 of this title by the Administrator or by a State, or any requirement imposed in a pretreatment program approved under section 1342(a)(3) or 1342(b)(8) of this title or in a permit issued under section 1344 of this title by the Secretary of the Army or by a State; or

**(B)** negligently introduces into a sewer system or into a publicly owned treatment works any pollutant or hazardous substance which such person knew or reasonably should have known could cause personal injury or property damage or, other than in compliance with all applicable Federal, State, or local requirements or permits, which causes such treatment works to violate any effluent limitation or condition in any permit issued to the treatment works under section 1342 of this title by the Administrator or a State;

shall be punished by a fine of not less than $2,500 nor more than $25,000 per day of violation, or by imprisonment for not more than 1 year, or by both. If a conviction of a person is for a violation committed after a first conviction of such person under this paragraph, punishment shall be by a fine of not more than $50,000 per day of violation, or by imprisonment of not more than 2 years, or by both.

**(2) Knowing violations**

Any person who--

**(A)** knowingly violates section 1311, 1312, 1316, 1317, 1318, 1321(b)(3), 1322(p), 1328, or 1345 of this title, or any permit condition or limitation implementing any of such sections in a permit issued under section 1342 of this title by the Administrator or by a State, or any requirement imposed in a pretreatment program approved under section 1342(a)(3) or 1342(b)(8) of this title or in a permit issued under section 1344 of this title by the Secretary of the Army or by a State; or

**(B)** knowingly introduces into a sewer system or into a publicly owned treatment works any pollutant or hazardous substance which such person knew or reasonably should have known could cause personal injury or property damage or, other than in compliance with all applicable Federal, State, or local requirements or permits, which causes such treatment works to violate any effluent limitation or condition in a permit issued to the treatment works under section 1342 of this title by the Administrator or a State;

shall be punished by a fine of not less than $5,000 nor more than $50,000 per day of violation, or by imprisonment for not more than 3 years, or by both. If a conviction of a person is for a violation committed after a first conviction of such person under this paragraph, punishment shall be by a fine of not more than $100,000 per day of violation, or by imprisonment of not more than 6 years, or by both.

**(3) Knowing endangerment**

**(A) General rule**

Any person who knowingly violates section 1311, 1312, 1313, 1316, 1317, 1318, 1321(b)(3), 1322(p), 1328, or 1345 of this title, or any permit condition or limitation implementing any of such sections in a permit issued under section 1342 of this title by the Administrator or by a State, or in a permit issued under section 1344 of this title by the Secretary of the Army or by a State, and who knows at that time that he thereby places another person in imminent danger of death or

 © 2025 Thomson Reuters. No claim to original U.S. Government Works. 

serious bodily injury, shall, upon conviction, be subject to a fine of not more than $250,000 or imprisonment of not more than 15 years, or both. A person which is an organization shall, upon conviction of violating this subparagraph, be subject to a fine of not more than $1,000,000. If a conviction of a person is for a violation committed after a first conviction of such person under this paragraph, the maximum punishment shall be doubled with respect to both fine and imprisonment.

**(B) Additional provisions**

For the purpose of subparagraph (A) of this paragraph--

**(i)** in determining whether a defendant who is an individual knew that his conduct placed another person in imminent danger of death or serious bodily injury--

**(I)** the person is responsible only for actual awareness or actual belief that he possessed; and

**(II)** knowledge possessed by a person other than the defendant but not by the defendant himself may not be attributed to the defendant;

except that in proving the defendant's possession of actual knowledge, circumstantial evidence may be used, including evidence that the defendant took affirmative steps to shield himself from relevant information;

**(ii)** it is an affirmative defense to prosecution that the conduct charged was consented to by the person endangered and that the danger and conduct charged were reasonably foreseeable hazards of--

**(I)** an occupation, a business, or a profession; or

**(II)** medical treatment or medical or scientific experimentation conducted by professionally approved methods and such other person had been made aware of the risks involved prior to giving consent;

and such defense may be established under this subparagraph by a preponderance of the evidence;

**(iii)** the term "organization" means a legal entity, other than a government, established or organized for any purpose, and such term includes a corporation, company, association, firm, partnership, joint stock company, foundation, institution, trust, society, union, or any other association of persons; and

**(iv)** the term "serious bodily injury" means bodily injury which involves a substantial risk of death, unconsciousness, extreme physical pain, protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty.

**(4) False statements**

Any person who knowingly makes any false material statement, representation, or certification in any application, record, report, plan, or other document filed or required to be maintained under this chapter or who knowingly falsifies, tampers with,


WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.

or renders inaccurate any monitoring device or method required to be maintained under this chapter, shall upon conviction, be punished by a fine of not more than $10,000, or by imprisonment for not more than 2 years, or by both. If a conviction of a person is for a violation committed after a first conviction of such person under this paragraph, punishment shall be by a fine of not more than $20,000 per day of violation, or by imprisonment of not more than 4 years, or by both.

**(5) Treatment of single operational upset**

For purposes of this subsection, a single operational upset which leads to simultaneous violations of more than one pollutant parameter shall be treated as a single violation.

**(6) Responsible corporate officer as "person"**

For the purpose of this subsection, the term "person" means, in addition to the definition contained in section 1362(5) of this title, any responsible corporate officer.

**(7) Hazardous substance defined**

For the purpose of this subsection, the term "hazardous substance" means (A) any substance designated pursuant to section 1321(b)(2)(A) of this title, (B) any element, compound, mixture, solution, or substance designated pursuant to section 9602 of Title 42, (C) any hazardous waste having the characteristics identified under or listed pursuant to section 3001 of the Solid Waste Disposal Act (but not including any waste the regulation of which under the Solid Waste Disposal Act has been suspended by Act of Congress), (D) any toxic pollutant listed under section 1317(a) of this title, and (E) any imminently hazardous chemical substance or mixture with respect to which the Administrator has taken action pursuant to section 2606 of Title 15.

**(d) Civil penalties; factors considered in determining amount**

Any person who violates section 1311, 1312, 1316, 1317, 1318, 1322(p), 1328,, [1] or 1345 of this title, or any permit condition or limitation implementing any of such sections in a permit issued under section 1342 of this title by the Administrator, or by a State, or in a permit issued under section 1344 of this title by a State, or any requirement imposed in a pretreatment program approved under section 1342(a)(3) or 1342(b)(8) of this title, and any person who violates any order issued by the Administrator under subsection (a) of this section, shall be subject to a civil penalty not to exceed $25,000 per day for each violation. In determining the amount of a civil penalty the court shall consider the seriousness of the violation or violations, the economic benefit (if any) resulting from the violation, any history of such violations, any good-faith efforts to comply with the applicable requirements, the economic impact of the penalty on the violator, and such other matters as justice may require. For purposes of this subsection, a single operational upset which leads to simultaneous violations of more than one pollutant parameter shall be treated as a single violation.

**(e) State liability for judgments and expenses**

Whenever a municipality is a party to a civil action brought by the United States under this section, the State in which such municipality is located shall be joined as a party. Such State shall be liable for payment of any judgment, or any expenses incurred as a result of complying with any judgment, entered against the municipality in such action to the extent that the laws of that State prevent the municipality from raising revenues needed to comply with such judgment.


WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**(f) Wrongful introduction of pollutant into treatment works**

Whenever, on the basis of any information available to him, the Administrator finds that an owner or operator of any source is introducing a pollutant into a treatment works in violation of subsection (d) of section 1317 of this title, the Administrator may notify the owner or operator of such treatment works and the State of such violation. If the owner or operator of the treatment works does not commence appropriate enforcement action within 30 days of the date of such notification, the Administrator may commence a civil action for appropriate relief, including but not limited to, a permanent or temporary injunction, against the owner or operator of such treatment works. In any such civil action the Administrator shall join the owner or operator of such source as a party to the action. Such action shall be brought in the district court of the United States in the district in which the treatment works is located. Such court shall have jurisdiction to restrain such violation and to require the owner or operator of the treatment works and the owner or operator of the source to take such action as may be necessary to come into compliance with this chapter. Notice of commencement of any such action shall be given to the State. Nothing in this subsection shall be construed to limit or prohibit any other authority the Administrator may have under this chapter.

**(g) Administrative penalties**

**(1) Violations**

Whenever on the basis of any information available--

**(A)** the Administrator finds that any person has violated section 1311, 1312, 1316, 1317, 1318, 1322(p), 1328, or 1345 of this title, or has violated any permit condition or limitation implementing any of such sections in a permit issued under section 1342 of this title by the Administrator or by a State, or in a permit issued under section 1344 of this title by a State, or

**(B)** the Secretary of the Army (hereinafter in this subsection referred to as the "Secretary") finds that any person has violated any permit condition or limitation in a permit issued under section 1344 of this title by the Secretary,

the Administrator or Secretary, as the case may be, may, after consultation with the State in which the violation occurs, assess a class I civil penalty or a class II civil penalty under this subsection.

**(2) Classes of penalties**

**(A) Class I**

The amount of a class I civil penalty under paragraph (1) may not exceed $10,000 per violation, except that the maximum amount of any class I civil penalty under this subparagraph shall not exceed $25,000. Before issuing an order assessing a civil penalty under this subparagraph, the Administrator or the Secretary, as the case may be, shall give to the person to be assessed such penalty written notice of the Administrator's or Secretary's proposal to issue such order and the opportunity to request, within 30 days of the date the notice is received by such person, a hearing on the proposed order. Such hearing shall not be subject to section 554 or 556 of Title 5, but shall provide a reasonable opportunity to be heard and to present evidence.

**(B) Class II**


WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.

The amount of a class II civil penalty under paragraph (1) may not exceed $10,000 per day for each day during which the violation continues; except that the maximum amount of any class II civil penalty under this subparagraph shall not exceed $125,000. Except as otherwise provided in this subsection, a class II civil penalty shall be assessed and collected in the same manner, and subject to the same provisions, as in the case of civil penalties assessed and collected after notice and opportunity for a hearing on the record in accordance with section 554 of Title 5. The Administrator and the Secretary may issue rules for discovery procedures for hearings under this subparagraph.

**(3) Determining amount**

In determining the amount of any penalty assessed under this subsection, the Administrator or the Secretary, as the case may be, shall take into account the nature, circumstances, extent and gravity of the violation, or violations, and, with respect to the violator, ability to pay, any prior history of such violations, the degree of culpability, economic benefit or savings (if any) resulting from the violation, and such other matters as justice may require. For purposes of this subsection, a single operational upset which leads to simultaneous violations of more than one pollutant parameter shall be treated as a single violation.

**(4) Rights of interested persons**

**(A) Public notice**

Before issuing an order assessing a civil penalty under this subsection the Administrator or Secretary, as the case may be, shall provide public notice of and reasonable opportunity to comment on the proposed issuance of such order.

**(B) Presentation of evidence**

Any person who comments on a proposed assessment of a penalty under this subsection shall be given notice of any hearing held under this subsection and of the order assessing such penalty. In any hearing held under this subsection, such person shall have a reasonable opportunity to be heard and to present evidence.

**(C) Rights of interested persons to a hearing**

If no hearing is held under paragraph (2) before issuance of an order assessing a penalty under this subsection, any person who commented on the proposed assessment may petition, within 30 days after the issuance of such order, the Administrator or Secretary, as the case may be, to set aside such order and to provide a hearing on the penalty. If the evidence presented by the petitioner in support of the petition is material and was not considered in the issuance of the order, the Administrator or Secretary shall immediately set aside such order and provide a hearing in accordance with paragraph (2)(A) in the case of a class I civil penalty and paragraph (2)(B) in the case of a class II civil penalty. If the Administrator or Secretary denies a hearing under this subparagraph, the Administrator or Secretary shall provide to the petitioner, and publish in the Federal Register, notice of and the reasons for such denial.

**(5) Finality of order**

An order issued under this subsection shall become final 30 days after its issuance unless a petition for judicial review is filed under paragraph (8) or a hearing is requested under paragraph (4)(C). If such a hearing is denied, such order shall become final 30 days after such denial.


WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**(6) Effect of order**

**(A) Limitation on actions under other sections**

Action taken by the Administrator or the Secretary, as the case may be, under this subsection shall not affect or limit the Administrator's or Secretary's authority to enforce any provision of this chapter; except that any violation--

**(i)** with respect to which the Administrator or the Secretary has commenced and is diligently prosecuting an action under this subsection,

**(ii)** with respect to which a State has commenced and is diligently prosecuting an action under a State law comparable to this subsection, or

**(iii)** for which the Administrator, the Secretary, or the State has issued a final order not subject to further judicial review and the violator has paid a penalty assessed under this subsection, or such comparable State law, as the case may be,

shall not be the subject of a civil penalty action under subsection (d) of this section or section 1321(b) of this title or section 1365 of this title.

**(B) Applicability of limitation with respect to citizen suits**

The limitations contained in subparagraph (A) on civil penalty actions under section 1365 of this title shall not apply with respect to any violation for which--

**(i)** a civil action under section 1365(a)(1) of this title has been filed prior to commencement of an action under this subsection, or

**(ii)** notice of an alleged violation of section 1365(a)(1) of this title has been given in accordance with section 1365(b)(1)(A) of this title prior to commencement of an action under this subsection and an action under section 1365(a)(1) of this title with respect to such alleged violation is filed before the 120th day after the date on which such notice is given.

**(7) Effect of action on compliance**

No action by the Administrator or the Secretary under this subsection shall affect any person's obligation to comply with any section of this chapter or with the terms and conditions of any permit issued pursuant to section 1342 or 1344 of this title.

**(8) Judicial review**

Any person against whom a civil penalty is assessed under this subsection or who commented on the proposed assessment of such penalty in accordance with paragraph (4) may obtain review of such assessment--


WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**(A)** in the case of assessment of a class I civil penalty, in the United States District Court for the District of Columbia or in the district in which the violation is alleged to have occurred, or

**(B)** in the case of assessment of a class II civil penalty, in United States Court of Appeals for the District of Columbia Circuit or for any other circuit in which such person resides or transacts business,

by filing a notice of appeal in such court within the 30-day period beginning on the date the civil penalty order is issued and by simultaneously sending a copy of such notice by certified mail to the Administrator or the Secretary, as the case may be, and the Attorney General. The Administrator or the Secretary shall promptly file in such court a certified copy of the record on which the order was issued. Such court shall not set aside or remand such order unless there is not substantial evidence in the record, taken as a whole, to support the finding of a violation or unless the Administrator's or Secretary's assessment of the penalty constitutes an abuse of discretion and shall not impose additional civil penalties for the same violation unless the Administrator's or Secretary's assessment of the penalty constitutes an abuse of discretion.

**(9) Collection**

If any person fails to pay an assessment of a civil penalty--

**(A)** after the order making the assessment has become final, or

**(B)** after a court in an action brought under paragraph (8) has entered a final judgment in favor of the Administrator or the Secretary, as the case may be,

the Administrator or the Secretary shall request the Attorney General to bring a civil action in an appropriate district court to recover the amount assessed (plus interest at currently prevailing rates from the date of the final order or the date of the final judgment, as the case may be). In such an action, the validity, amount, and appropriateness of such penalty shall not be subject to review. Any person who fails to pay on a timely basis the amount of an assessment of a civil penalty as described in the first sentence of this paragraph shall be required to pay, in addition to such amount and interest, attorneys fees and costs for collection proceedings and a quarterly nonpayment penalty for each quarter during which such failure to pay persists. Such nonpayment penalty shall be in an amount equal to 20 percent of the aggregate amount of such person's penalties and nonpayment penalties which are unpaid as of the beginning of such quarter.

**(10) Subpoenas**

The Administrator or Secretary, as the case may be, may issue subpoenas for the attendance and testimony of witnesses and the production of relevant papers, books, or documents in connection with hearings under this subsection. In case of contumacy or refusal to obey a subpoena issued pursuant to this paragraph and served upon any person, the district court of the United States for any district in which such person is found, resides, or transacts business, upon application by the United States and after notice to such person, shall have jurisdiction to issue an order requiring such person to appear and give testimony before the administrative law judge or to appear and produce documents before the administrative law judge, or both, and any failure to obey such order of the court may be punished by such court as a contempt thereof.

**(11) Protection of existing procedures**

 © 2025 Thomson Reuters. No claim to original U.S. Government Works. 

Nothing in this subsection shall change the procedures existing on the day before February 4, 1987, under other subsections of this section for issuance and enforcement of orders by the Administrator.

**(h) Implementation of integrated plans**

**(1) In general**

In conjunction with an enforcement action under subsection (a) or (b) relating to municipal discharges, the Administrator shall inform a municipality of the opportunity to develop an integrated plan, as defined in section 1342(s) of this title.

**(2) Modification**

Any municipality under an administrative order under subsection (a) or settlement agreement (including a judicial consent decree) under subsection (b) that has developed an integrated plan consistent with section 1342(s) of this title may request a modification of the administrative order or settlement agreement based on that integrated plan.

**CREDIT(S)**

(June 30, 1948, c. 758, Title III, § 309, as added Pub.L. 92-500, § 2, Oct. 18, 1972, 86 Stat. 859; amended Pub.L. 95-217, §§ 54(b), 55, 56, 67(c)(2), Dec. 27, 1977, 91 Stat. 1591, 1592, 1606; Pub.L. 100-4, Title III, §§ 312, 313(a)(1), (b)(1), (c), 314(a), Feb. 4, 1987, 101 Stat. 42, 45, 46; Pub.L. 101-380, Title IV, § 4301(c), Aug. 18, 1990, 104 Stat. 537; Pub.L. 115-282, Title IX, § 903(c)(2), Dec. 4, 2018, 132 Stat. 4356; Pub.L. 115-436, § 3(b), Jan. 14, 2019, 132 Stat. 5560.)

Notes of Decisions (427)

## Footnotes

1 So in original.

33 U.S.C.A. § 1319, 33 USCA § 1319
Current through P.L. 119-36. Some statute sections may be more current, see credits for details.

End of Document © 2025 Thomson Reuters. No claim to original U.S. Government Works.

United States Code Annotated
Title 33. Navigation and Navigable Waters (Refs & Annos)
Chapter 26. Water Pollution Prevention and Control (Refs & Annos)
Subchapter V. General Provisions

33 U.S.C.A. § 1365

§ 1365. Citizen suits

Currentness

**(a) Authorization; jurisdiction**

Except as provided in subsection (b) of this section and section 1319(g)(6) of this title, any citizen may commence a civil action on his own behalf--

**(1)** against any person (including (i) the United States, and (ii) any other governmental instrumentality or agency to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation, or

**(2)** against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator.

The district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce such an effluent standard or limitation, or such an order, or to order the Administrator to perform such act or duty, as the case may be, and to apply any appropriate civil penalties under section 1319(d) of this title.

**(b) Notice**

No action may be commenced--

**(1)** under subsection (a)(1) of this section--

**(A)** prior to sixty days after the plaintiff has given notice of the alleged violation (i) to the Administrator, (ii) to the State in which the alleged violation occurs, and (iii) to any alleged violator of the standard, limitation, or order, or

**(B)** if the Administrator or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or a State to require compliance with the standard, limitation, or order, but in any such action in a court of the United States any citizen may intervene as a matter of right.


WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**(2)** under subsection (a)(2) of this section prior to sixty days after the plaintiff has given notice of such action to the Administrator,

except that such action may be brought immediately after such notification in the case of an action under this section respecting a violation of sections 1316 and 1317(a) of this title. Notice under this subsection shall be given in such manner as the Administrator shall prescribe by regulation.

**(c) Venue; intervention by Administrator; United States interests protected**

**(1)** Any action respecting a violation by a discharge source of an effluent standard or limitation or an order respecting such standard or limitation may be brought under this section only in the judicial district in which such source is located.

**(2)** In such action under this section, the Administrator, if not a party, may intervene as a matter of right.

**(3) Protection of interests of United States**

Whenever any action is brought under this section in a court of the United States, the plaintiff shall serve a copy of the complaint on the Attorney General and the Administrator. No consent judgment shall be entered in an action in which the United States is not a party prior to 45 days following the receipt of a copy of the proposed consent judgment by the Attorney General and the Administrator.

**(d) Litigation costs**

The court, in issuing any final order in any action brought pursuant to this section, may award costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, whenever the court determines such award is appropriate. The court may, if a temporary restraining order or preliminary injunction is sought, require the filing of a bond or equivalent security in accordance with the Federal Rules of Civil Procedure.

**(e) Statutory or common law rights not restricted**

Nothing in this section shall restrict any right which any person (or class of persons) may have under any statute or common law to seek enforcement of any effluent standard or limitation or to seek any other relief (including relief against the Administrator or a State agency).

**(f) Effluent standard or limitation**

For purposes of this section, the term "effluent standard or limitation under this chapter" means (1) effective July 1, 1973, an unlawful act under subsection (a) of section 1311 of this title; (2) an effluent limitation or other limitation under section 1311 or 1312 of this title; (3) standard of performance under section 1316 of this title; (4) prohibition, effluent standard or pretreatment standards under section 1317 of this title; (5) a standard of performance or requirement under section 1322(p) of this title; (6) a certification under section 1341 of this title; (7) a permit or condition of a permit issued under section 1342 of this title that is in effect under this chapter (including a requirement applicable by reason of section 1323 of this title); or (8) a regulation under section 1345(d) of this title.


WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**(g) "Citizen" defined**

For the purposes of this section the term "citizen" means a person or persons having an interest which is or may be adversely affected.

**(h) Civil action by State Governors**

A Governor of a State may commence a civil action under subsection (a), without regard to the limitations of subsection (b) of this section, against the Administrator where there is alleged a failure of the Administrator to enforce an effluent standard or limitation under this chapter the violation of which is occurring in another State and is causing an adverse effect on the public health or welfare in his State, or is causing a violation of any water quality requirement in his State.

**CREDIT(S)**

(June 30, 1948, c. 758, Title V, § 505, as added Pub.L. 92-500, § 2, Oct. 18, 1972, 86 Stat. 888; amended Pub.L. 100-4, Title III, § 314(c), Title IV, § 406(d)(2), Title V, §§ 504, 505(c), Feb. 4, 1987, 101 Stat. 49, 73, 75, 76; Pub.L. 115-282, Title IX, § 903(c)(3), Dec. 4, 2018, 132 Stat. 4356.)

Notes of Decisions (980)

33 U.S.C.A. § 1365, 33 USCA § 1365
Current through P.L. 119-36. Some statute sections may be more current, see credits for details.

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

# OKLAHOMA STATUTES 1981

COMPRISING ALL LAWS OF A GENERAL AND PERMANENT NATURE INCLUDING LAWS AND AMENDMENTS PASSED BY THE FIRST REGULAR AND FIRST EXTRAORDINARY SESSIONS OF THE THIRTY-EIGHTH LEGISLATURE, 1981

Edited and Published Under the Direction of the Justices of the Supreme Court

## Volume 2

## Titles 20—59

## Courts—Professions and Occupations

Oklahoma Statutes Annotated Classification

ST. PAUL, MINN.
WEST PUBLISHING CO.
1981

**Indebtedness constituting valid claim**
In re Goodin's Estate, 198 Okl. 9, 174 P.2d 275; Gibbs v. Barksdale, 199 Okl. 141, 184 P.2d 755, 2 A.L.R.2d 345.

**Notice**
Hensley v. Superior Court of Sacramento County, 111 Cal. 541, 44 P. 232; Johnston v. Superior Court of Napa County, 105 Cal. 666, 39 P. 36; Union Savings Ass'n v. Somers, 40 S.D. 177, 166 N.W. 638.

**Tax claim**
In re Hooper's Estate, 301 P.2d 419, 144 C.A.2d 522.

**Time for presentation**
Wise v. Burton, 179 Okl. 77, 64 P.2d 664; Graber v. Schram, 111 Cal. 432, 44 P. 165.

## § 332. Proof and record of notice

After notice is given as required by the preceding section, copies thereof with the affidavit of publication must be filed in the court.

R.L.1910, § 6337; Laws 1953, p. 237, § 22; Laws 1969, c. 302, § 9, eff. Jan. 1, 1970.

C.L.Dak.1887, § 5789; Laws 1910, p. 115; C.S.1921, § 1233; St.1931, § 1232.

*Executors and Administrators* ⇐226.

## § 333. Bar of claims not presented in time—Exceptions

If a claim arising upon a contract heretofore made, be not presented within the time limited in the notice, it is barred forever, except as follows: If it be not then due, or if it be contingent, it may be presented within one (1) month after it becomes due or absolute; if it be made to appear by the affidavit of the claimant, to the satisfaction of the executor or administrator and the judge of the district court, that the claimant had no notice as provided in this article,[1] by reason of being out of the state, it may be presented at any time before a decree of distribution is entered; a claim for a deficiency remaining unpaid after a sale of property of the estate mortgaged or pledged must be presented within one (1) month after such deficiency is ascertained. All claims arising upon contracts hereafter made, whether the same be due, not due or contingent, must be presented within the time limited in the notice; and any claim not so presented is barred forever: Provided, however, that when it is made to appear by the affidavit of the claimant, as above provided, that he had no notice by reason of being out of the state, it may be presented as therein provided: Provided, further, that nothing in this section, nor in this chapter[2] contained, shall be construed to prohibit the right or limit the time of foreclosure of mortgages upon real property of decedents, but every such mortgage may be foreclosed within the time and in the mode prescribed in civil procedure, except that no balance of the debt secured by such mortgage remaining unpaid after foreclosure shall be a claim against the estate, unless such debt was presented as required by this code.

R.L.1910, § 6338.

[1] R.L.1910, c. 64, art. 7, Section 331 et seq. of this title.
[2] R.L.1910, c. 64, incorporated in this title.

C.L.Dak.1887, § 5790; C.S.1921, § 1234; St.1931, § 1233.

*Executors and Administrators* ⇐225.

**Construction and application**
Woofter v. Fourth Nat. Bank, 182 Okl. 483, 78 P.2d 683; McCoy v. Spears, 186 Okl. 526, 99 P.2d 153; Fish v. DeLaray, 8 S.D. 320, 66 N.W. 465, 59 Am.St.Rep. 764; American Surety Co. of N. Y. v. Haskins, 57 S.D. 231, 231 N.W. 942; Stanley v. Brannan, 206 Okl. 292, 243 P.2d 346; Casper v. Neubert, C.A.Okl., 489 F.2d 543 (1973); Matter of Carlin's Estate, Okl.App., 572 P.2d 606 (1977).
Strict construction In re Jameson's Estate, 74 Okl. 286, 182 P. 518.
Purpose. Haddock v. Williams, Okl., 378 P.2d 774.
Claims, what constitutes. Olsen v. First Nat. Bank, 83 N.W.2d 842, 76 S.D. 605; Potter v. Bland, 288 P.2d 569, 136 C.A.2d 125.

**Affidavits**
Commercial Inv. Trust v. Harsha, 116 Okl. 140, 243 P. 955.

**Assignments**
In re Crosby's Estate, 55 Cal. 574.

**Claim arising on contract**
Spruill v. Reserve Loan Life Ins. Co., D.C.Okl., 21 F.Supp. 889; Timmons v. Hanna Const. Co., 176 Okl. 180, 55 P.2d 110; Bilby v. Hart-Parr Co., 102 Okl. 53, 226 P. 360.

**Constructive trusts**
This section requiring presentation to and rejection of claim by administrator does not apply to claim of equitable nature for establishment of constructive trust. Pfleider v. Smith, Okl., 370 P.2d 17.
Mandatory nature. Cleage v. Jackson, 200 Okl. 375, 194 P.2d 843.

**Constructive trust**
Casper v. Neubert, C.A.Okl., 489 F.2d 543 (1973).

**Contingent claims**
O'Neill v. Lauderdale, 80 Okl. 170, 195 P. 121; Pico v. De La Guerria, 18 Cal. 422.

**Deficiency found after foreclosure**
Kelsey v. Welch, 8 S.D. 255, 66 N.W. 390; Thurber v. Miller, 11 S.D. 124, 75 N.W. 900.

**Equitable liens and claims**
McLeod v. Palmer, 189 Okl. 466, 117 P.2d 770; Grayson v. Crawford, 189 Okl. 546, 119 P.2d 42.

**Insolvency**
Richison v. State ex rel. Barnett, 176 Okl. 537, 56 P.2d 840.

**Mechanic's lien claims**
Purdin v. Archer, 4 S.D. 54, 54 N.W. 1043; Fish v. De Laray, 8 S.D. 320, 66 N.W. 465, 59 Am.St.Rep. 764.

**Mortgage claim against estate**
In re Cardin's Estate, 132 Okl. 286, 270 P. 554, followed in 132 Okl. 288, 270 P. 557; Hopkins v. National Bank of Norman, 115 Okl. 196, 242 P. 532.

**Necessity of presentation**
Hoehn v. Crews, C.C.A., 144 F.2d 665, certiorari denied 65 S.Ct. 132, 135, 2 cases, 323 U.S. 773, 89 L.Ed. 618, rehearing denied 65 S.Ct. 312, 323 U.S. 817, 89 L.Ed. 649, affirmed 65 S.Ct. 600, 324 U.S. 200, 89 L.Ed. 870; Cleage v. Jackson, 200 Okl. 375, 194 P.2d 843.

**Presentation and allowance**
In re Kaspari's Estate, N.D., 71 N.W.2d 558; Reith v. Mountrail County, N.D., 104 N.W.2d 667; In re Congdon's Estate, 74 S.D. 306, 51 N.W.2d 877.

**Secured claims**
Correll v. Holt, 191 Okl. 622, 132 P.2d 953.

**Time for presentation**
In re Hartnett's Estate, 318 P.2d 79, 155 C.A.2d 277.

## § 334. Proof of claims

Every claim which is due when presented to the administrator must be supported by the affidavit of the claimant or someone in his behalf, that the amount is justly due, that no payments have been made thereon which are not credited, and that there are no offsets to the same, to the knowledge of the