**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>*Plaintiff - Appellant*,<br><br>and<br><br>OKANOGAN HIGHLANDS ALLIANCE,<br><br>*Plaintiff*,<br><br>v.<br><br>CROWN RESOURCES CORPORATION; KINROSS GOLD USA, INC.,<br><br>*Defendants - Appellees*. | No. 25-2397<br><br>D.C. No. 2:20-cv-00147-MKD<br><br>OPINION |

Appeal from the United States District Court
for the Eastern District of Washington
Mary K. Dimke, District Judge, Presiding

Argued and Submitted April 20, 2026
Seattle, Washington

Filed September 28, 2026

Before: M. Margaret McKeown, William A. Fletcher, and Lucy H. Koh, Circuit Judges.

Opinion by Judge W. Fletcher

## SUMMARY*


### Environmental Law / Claim Preclusion

The panel reversed the district court's dismissal of the State of Washington's citizen suit under the Clean Water Act against Crown Resources Corp. and its parent company, and remanded for further proceedings.

The Okanogan Highlands Alliance ("OHA") filed a second citizen suit against Crown, and the two cases were consolidated and litigated in concert. OHA negotiated with Crown without Washington's knowledge or involvement. OHA and defendants reached an agreement and informed Washington of their settlement the day before submitting a proposed consent decree to the court. The district court entered the consent decree between OHA and Crown. It then granted judgment on the pleadings for Crown in Washington's case on the ground that Washington's claims were now claim-precluded.

The panel held that because Washington was not a party to the consent decree and was not in privity with OHA, the elements of claim preclusion were not satisfied, and


* This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Washington's suit was therefore not barred. The panel found inapplicable exceptions to nonparty preclusion for (1) a party that was adequately represented by someone with the same interests who was a party to the second suit and (2) a statutory scheme that expressly forecloses successive civil litigation by nonlitigants.

---

## COUNSEL

Elizabeth Harris (argued) and Timothy E. Allen, Assistant Attorneys General; Nicholas W. Brown, Washington Attorney General; Office of the Washington Attorney General, Seattle, Washington; for Plaintiff-Appellant.

Jonathan W. Rauchway (argued), James R. Henderson, and Gail L. Wurtzler, Davis Graham & Stubbs LLP, Denver, Colorado; William M. Symmes, Williams Kastner, Spokane, Washington; for Defendants-Appellees.

# OPINION

W. FLETCHER, Circuit Judge:

Two separate citizen suits were filed in the spring of 2020 against Crown Resources Corporation and its parent company, Kinross Gold U.S.A. (hereinafter, "Crown" or "Defendants"), alleging violations of the Clean Water Act. One suit was filed by the Okanogan Highlands Alliance ("OHA"), a private environmental organization based in north-central Washington. The other was filed by the State of Washington. OHA and Washington jointly moved to consolidate their cases, and then litigated in concert over the next several years. The district court referred the consolidated cases to mediation. After mediation failed, OHA negotiated with Crown without Washington's knowledge or involvement. OHA and Crown reached an agreement and informed Washington of their settlement the day before submitting a proposed consent decree to the court. After the district court entered the consent decree between OHA and Crown, Crown moved for judgment on the pleadings in Washington's case, arguing that Washington's claims were now claim-precluded. The district court agreed and granted judgment for Crown. We reverse. Because Washington was not in privity with OHA, the elements of claim preclusion are not satisfied. Washington's suit is therefore not barred.

## I. Background

The Clean Water Act ("CWA") generally prohibits the discharge of pollutants into the waters of the United States. 33 U.S.C. § 1311(a). Section 402 of the CWA establishes the National Pollutant Discharge Elimination System ("NPDES"), which authorizes the Environmental Protection

Agency ("EPA") and individual states to issue NPDES permits for the limited discharge of pollutants. 33 U.S.C. § 1342.

The CWA authorizes "any citizen" to "commence a civil action on his own behalf" to enforce any "effluent standard or limitation" under the Act. 33 U.S.C. § 1365(a). The district courts have jurisdiction to enforce such standards and limitations and to "apply any appropriate civil penalties." *Id.* "Citizen" is defined as any "person or persons having an interest which is or may be adversely affected." 33 U.S.C. § 1365(g). Because the CWA defines "effluent standard or limitation" to include the limitations provided in NPDES permits, a citizen suit may challenge a permit violation as a violation of the CWA. 33 U.S.C. § 1365(f)(7); *see also Cal. Sportfishing Prot. All. v. Chico Scrap Metal, Inc.*, 728 F.3d 868, 871 (9th Cir. 2013) (noting that a violation of an NPDES permit is a violation of the CWA).

Crown owns and operates the Buckhorn Mountain Mine, an underground gold mine located in Okanogan County, Washington. In 2007, the Washington State Department of Ecology issued an NPDES permit to Crown for operation of the mine. The permit was reissued in February 2014, and reissued again, with revisions, in April 2014 and April 2015.

OHA and Washington each brought citizen suits against Crown. OHA is a "non-profit membership organization dedicated to protecting the natural resources of north-central Washington and the Okanogan Highlands." On January 31, 2020, OHA gave notice of its intent to file a citizen suit against Crown, alleging extensive violations of the Buckhorn Mine NPDES permit. *See* 33 U.S.C. § 1365(b)(1)(A) (requiring 60 days' notice of intent to sue).

OHA filed a civil complaint against Crown in the Eastern District of Washington on April 10, 2020.

Washington gave Crown notice of its intent to file a separate citizen suit on March 5, 2020, also alleging extensive violations of the same NPDES permit. While states administering NPDES permit programs have the option to bring enforcement actions under state law, *see* 33 U.S.C. § 1319(g)(6)(A)(ii), Washington chose to file a citizen suit under 33 U.S.C. § 1365(a). Crown does not dispute that it may do so (noting only that Washington "took the unusual approach of filing its own citizen suit" and "had incentives to bring a citizen suit," and must now "take the bitter with the sweet"). Washington filed its civil complaint on May 7, 2020, and filed an amended complaint on March 4, 2021.

On June 16, 2020, OHA and Washington jointly moved to consolidate their cases in the district court, noting that the actions "share common questions of law and fact," that the actions "allege the same or similar violations of a water quality permit for a gold mine," and that "plaintiffs in both cases seek similar relief—civil penalties and declaratory and injunctive relief." The district court granted the motion on June 25, 2020.

OHA and Washington jointly litigated the consolidated cases for the next four years. In March 2023, the district court referred the cases for mediation and in April 2023 it stayed proceedings to allow time for mediation. In April 2024, Washington informed the court that mediation had been unsuccessful and requested an amended scheduling order. The court set a trial date for August 2025.

In the months that followed, OHA and Crown pursued settlement negotiations without Washington's knowledge or

involvement. On September 18, 2024, counsel for OHA called Assistant Attorney General Elizabeth Harris, who was serving as counsel for Washington. Harris wrote in a sworn declaration that counsel for OHA informed her on that day "that his client had reached an agreement with the Defendants in settlement of OHA's claims, and that they would be filing a proposed consent decree for review by the court." Prior to the September 18 phone call, Harris had been "unaware of ongoing settlement talks" between Crown and OHA.

The next day, OHA and Crown submitted a joint motion for entry of the proposed consent decree to the district court. No one representing Washington saw the proposed consent decree before it was filed. Crown does not dispute that Washington was unaware of the negotiations leading to entry of the proposed consent decree.

The joint motion and consent decree both expressly indicate that the consent decree resolves only OHA's claims against Crown. The joint motion begins by identifying Crown and Kinross as Defendants, and OHA as the sole Plaintiff. Citing *Hall v. Hall*, 584 U.S. 59, 70–72 (2018), the motion states that the court "can enter a separate judgment on OHA's Complaint in these consolidated cases." In *Hall*, the Supreme Court reaffirmed the "settled understanding" that consolidated cases "remain distinct" and therefore require "separate verdicts and judgments." *Id.* at 71, 75 (citations omitted). The motion explains that the accompanying documents "bear the caption and case number of the consolidated case *even though the State of Washington is not a party to the Proposed Consent Decree filed herewith.*" (Emphasis added.)

The consent decree likewise identifies three parties—OHA, Crown, and Kinross—and indicates that the parties intend "to resolve OHA's Complaint against Defendants." Washington is nowhere named as a party in the decree. In a section on "Information Sharing," the decree requires Defendants to share data with OHA, and provides for annual discussions between the named Parties—that is, between Defendants and OHA only. The decree requires Defendants to pay $150,000 to OHA for compliance monitoring, and $2,250,000 in reimbursement for OHA's attorneys' fees. There is no mention in the decree of Washington's attorneys' fees.

On October 31, 2024, the district court granted the joint motion for entry of the proposed consent decree between OHA and Crown. On November 14, the district court held a status conference at which attorneys for Washington, Crown, and OHA all agreed that the consent decree did not itself resolve or dispose of Washington's claims against Crown. However, counsel for Crown indicated that he believed that the decree barred Washington's claims by claim preclusion.

On November 22, Crown moved for judgment against Washington on the pleadings, arguing that its claims were now barred by claim preclusion. The district court agreed and entered judgment for Defendants on February 4, 2025. *Okanogan Highlands All. v. Crown Res. Corp.*, No. 2:20-CV-00147-MKD, 2025 WL 394952, at *4 (E.D. Wash. Feb. 4, 2025). The court relied on two of the exceptions—the third and the sixth—to the rule against nonparty preclusion identified by the Supreme Court in *Taylor v. Sturgell*, 553 U.S. 880 (2008). Washington moved for relief from judgment, which the district court denied. *Okanogan*

*Highlands All. v. Crown Res. Corp.*, No. 2:20-CV-00147-MKD, 2025 WL 1096249, at *1 (E.D. Wash. Mar. 11, 2025).

This appeal followed. We reverse.

## II. Standard of Review

We review de novo an order granting a motion for judgment on the pleadings. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). "[A] party asserting preclusion must carry the burden of establishing all necessary elements." *Taylor*, 553 U.S. at 907 (alteration in original) (quoting 18 Wright & Miller's Federal Practice & Procedure § 4405 (2d ed. 2002)).

## III. Discussion

Claim preclusion "applies when there is (1) an identity of claims; (2) a final judgment on the merits; and (3) identity or privity between the parties." *Cell Therapeutics, Inc. v. Lash Grp., Inc.*, 586 F.3d 1204, 1212 (9th Cir. 2009) (quoting *Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir. 2002)), *as amended on denial of reh'g and reh'g en banc*. Because we hold that the third requirement—identity or privity between the parties—is not satisfied, we do not address the first two requirements.

It is uncontested that Washington was not a party to the consent decree between OHA and Crown. The third requirement for claim preclusion therefore cannot be satisfied by identity between the parties. Washington's claims may therefore be barred only by the consent decree under the doctrine of nonparty preclusion, which would require that Washington be in privity with OHA. *See Taylor*, 553 U.S. at 894 n.8.

Nonparty preclusion is generally disfavored. The Supreme Court has noted, "[O]ur decisions emphasize the fundamental nature of the general rule that a litigant is not bound by a judgment to which she was not a party." *Id.* at 898. This is so because "[a] person who was not a party to a suit generally has not had a 'full and fair opportunity to litigate' the claims and issues settled in that suit. The application of claim and issue preclusion to nonparties thus runs up against the 'deep-rooted historic tradition that everyone should have his own day in court.'" *Id.* at 892–93 (quoting *Montana v. United States*, 440 U.S. 147, 153 (1979), then quoting *Richards v. Jefferson Cnty.*, 517 U.S. 793, 798 (1996)).

The Supreme Court in *Taylor* identified six "discrete exceptions" to the usual rule against non-party preclusion. *Id.* at 898. In granting judgment on the pleadings, the district court concluded that two of those exceptions—the third and sixth—were satisfied here. We disagree as to both.

### A. Third *Taylor* Exception

The third *Taylor* exception recognizes that, "'in certain limited circumstances,' a nonparty may be bound by a judgment because she was 'adequately represented by someone with the same interests who [wa]s a party' to the suit." *Id.* at 894 (quoting *Richards*, 517 U.S. at 798). Examples of such "[r]epresentative suits with preclusive effect" include "properly conducted class actions and suits brought by trustees, guardians, and other fiduciaries." *Id.* at 894–95 (citations omitted).

*Taylor* identified three specific requirements for adequate representation under the third exception:

> [R]epresentation of a nonparty is 'adequate' for preclusion purposes only if, at a minimum: (1) The interests of the nonparty and her representative are aligned; and (2) either the party understood herself to be acting in a representative capacity or the original court took care to protect the interests of the nonparty. In addition, adequate representation sometimes requires (3) notice of the original suit to the persons alleged to have been represented.

*Id.* at 900 (citations omitted). Neither of the first two requirements was met in this case.

a. Alignment of Interests

Our precedents require precise alignment of relevant interests to overcome the general rule against nonparty preclusion. "For two parties to have privity, they must be 'so identified in interest . . . that [they] represent[ ] precisely the same right' on the relevant issues." *Grondal v. United States*, 21 F.4th 1140, 1163 (9th Cir. 2021) (alteration in original) (quoting *In re Schimmels*, 127 F.3d 875, 881 (9th Cir. 1997)). Defendants point to the language in *Taylor* requiring that the "interests of the nonparty and her representative" must be, simply, "aligned." 553 U.S. at 900. They would have us read "aligned" to mean something less than precisely aligned. But *Taylor* elsewhere states that a nonparty may be "adequately represented" under the third exception "'in certain limited circumstances . . . by someone with *the same interests* who [wa]s a party' to the suit." *Id.*

at 894 (alteration in original) (emphasis added) (quoting *Richards*, 517 U.S. at 798). We read these two passages of *Taylor* in harmony with each other, and therefore read "aligned" to mean precise alignment of interests. *See also Mendoza v. Amalgamated Transit Union Int'l*, 30 F.4th 879, 888 (9th Cir. 2022) (concluding that the third *Taylor* exception was satisfied where the interests of the relevant parties were "completely aligned"); *Hansberry v. Lee*, 311 U.S. 32, 43 (1940) (recognizing nonparty preclusion "where the interest of the members of the class, some of whom are present as parties, is joint").

Whether a non-party has been "adequately represented by someone with the same interests . . . is a fact-intensive inquiry." *GP Vincent II v. Est. of Beard*, 68 F.4th 508, 518 (9th Cir. 2023) (citing *Taylor*, 553 U.S. at 894). The facts of this case show that Washington's interests and OHA's interests were not aligned, and that the consent decree does not fully protect Washington's interests. The consent decree requires Crown to contribute $3,000,000 to three environmental organizations in support of conservation projects in the upper Columbia Basin, unrelated to Crown's challenged mining operations. As to pollution caused by the mine, Crown is required only to take steps to develop a plan for corrective action. The agreement requires Crown to implement a "Site Investigation Plan" at the mine consisting of various data-gathering measures and regular consultation with OHA representatives. Relying on those data, Crown is to "work in good faith with OHA to develop a corrective action plan for the Mine." But nothing in the consent decree requires Crown to take any actual remedial action.

Washington offers several examples of the kind of additional relief it would seek if it were not precluded by OHA's settlement with Crown:

> For example, Washington could demonstrate that the CWA requires additional remedial measures, such as capturing and treating contaminated discharges at two locations already identified by Washington's experts . . . . Notably, the consent decree does not require Crown to implement these remedies. Washington could also seek to hold Kinross Gold USA, Inc., Crown Resources Corp.'s parent company, accountable for the long-term implementation costs of the remedy, something the consent decree does not do. Washington could also seek additional penalties against Crown to address the full duration and extent of violations at the mine site.

(Internal citations omitted.)

The divergence between Washington's and OHA's interests is also evident in the payments to OHA required by the consent decree. As noted above, the consent decree requires Crown to pay $150,000 to OHA for compliance monitoring, and $2,250,000 in reimbursement for OHA's attorneys' fees. The agreement has no provision for payment to Washington or for reimbursement of its attorneys' fees.

Crown urges us to adopt a broad view of privity under which OHA and Washington are in privity simply because their citizen suits both advance the public interest. In Crown's view, the interests of any citizen-suit plaintiff in a

suit brought under the CWA are necessarily aligned with the interests of every other citizen-suit plaintiff brought against the same defendant under the same cause of action.

Crown's view of privity under the CWA has already been rejected by a district court in our circuit. In *Center for Environmental Law and Policy v. United States Fish and Wildlife Service*, 228 F. Supp. 3d 1152 (E.D. Wash. 2017) (Mendoza, J.), the district court rejected defendants' argument that "privity extends to all members of the public" in a CWA citizen suit, noting that "[n]o court has ever adopted such a rule." *Id.* at 1159. We reject it, too.

In support of its view of privity, Crown relies on *Inland Empire Waterkeeper v. Corona Clay Co.*, 17 F.4th 825 (9th Cir. 2021). Crown notes that in that case we referred generally to "the public's substantive interest in clean water and the environment." *Id.* at 833. But *Inland Empire* neither adopted nor even considered the sort of privity that Crown proposes here. Defendant Corona Clay had argued that citizen-plaintiff Inland Empire Waterkeeper lacked standing to sue for alleged monitoring and reporting violations under the CWA because such violations were "bare procedural violation[s], divorced form any concrete harm." *Id.* (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)). We rejected that argument, noting that "[t]he monitoring and reporting requirements in Corona's permits are far from 'bare' procedure." *Id.* (quoting *Spokeo*, 578 U.S. at 341). "Rather," we wrote, "they serve the public's substantive interest in clean water and the environment. The CWA elevated that interest by providing a cause of action to affected citizens." *Id.* Read in context, our language in *Inland Empire* affirmed the important substantive interests advanced by the CWA. We neither held nor contemplated that the interests of all citizen plaintiffs were so closely

aligned as to put all citizen plaintiffs in privity with one another.

The other cases upon which Crown relies offer no more support for its argument. In *Environmental Conservation Organization v. City of Dallas*, 529 F.3d 519 (5th Cir. 2008), for example, the Fifth Circuit dismissed a citizen suit as moot after a government enforcement action secured a consent decree to address the same alleged violations. The court held that a citizen suit may be mooted by a "government-backed consent decree" unless the citizen shows a "realistic prospect that the violations alleged . . . will continue notwithstanding the government-backed consent decree." *Id.* at 528–29. The court's reasoning stressed the particular relationship between government enforcement actions and citizen suits. The court emphasized that its mootness analysis "respects Congress's intent that citizen suits 'supplement rather than . . . supplant government action.'" *Id.* at 528 (quoting *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 60 (1987)). The Fifth Circuit never suggested that all citizen-suit plaintiffs are necessarily in privity with one another, or that settlement of a citizen suit by a private organization necessarily moots or otherwise bars a citizen suit by a state. The remaining cases cited by Crown likewise do not support its theory. *See also Sierra Club v. Chevron U.S.A., Inc.*, 834 F.2d 1517, 1522 (9th Cir. 1987) (holding that the same statute of limitations applies to both government and citizen enforcement actions in view of their similarities, but nowhere holding that all citizen plaintiffs are in privity); *EPA v. City of Green Forest*, 921 F.2d 1394 (8th Cir. 1990) (barring citizen suit after entry of a consent decree in a later-filed EPA enforcement action, but nowhere holding that one citizen suit bars all others).

b. Representative Capacity

The second part of the third *Taylor* exception may be satisfied in one of two ways: "either the party understood herself to be acting in a representative capacity or the original court took care to protect the interests of the nonparty." 553 U.S. at 900. Neither condition is satisfied here.

There is overwhelming evidence that OHA neither acted in a representative capacity for Washington nor understood itself to be so acting. The consent decree expressly resolved only the claims of OHA against Defendants, and the joint motion for entry of the consent decree expressly reaffirmed that intention. Counsel for OHA and Crown agreed in a status conference two weeks after entry of the consent decree that the decree did not resolve Washington's claims. And, as noted above, Crown does not deny that Washington was entirely unaware of the negotiations that produced the consent decree between OHA and Crown.

The district court also failed to take care to protect Washington's interests, either substantively or procedurally. As discussed above, Washington's substantive interests differed meaningfully from OHA's interests, and those interests were not protected by the consent decree. Nor was Washington afforded meaningful procedural protections. Washington did not learn of the proposed consent decree until the day before it was submitted to the district court for approval; neither the district court nor the other parties warned Washington that the proposed decree would be invoked to preclude its claims; and the express terms of the proposed decree and the joint motion addressed OHA's claims alone. Consider, by contrast, the sort of procedural protections afforded in a key example of preclusion

discussed in *Taylor*: class actions under Federal Rule of Civil Procedure 23. The Court noted in *Taylor* that "[i]n the class-action context," the requirements of the third *Taylor* exception "are implemented by the procedural safeguards contained in Federal Rule of Civil Procedure 23." *Id.* at 900–01. Rule 23 requires, *inter alia*, that members of classes certified under the opt-out provision be afforded notice of "the binding effect of a class judgment on members" and of the opportunity to "request[] exclusion" from the class judgment. Fed. R. Civ. P. 23(c)(2)(B).

B. Sixth *Taylor* Exception

The Supreme Court in *Taylor* described the sixth exception as follows:

> Sixth, in certain circumstances a special statutory scheme may "expressly foreclos[e] successive litigation by nonlitigants . . . if the scheme is otherwise consistent with due process." Examples of such schemes include bankruptcy and probate proceedings, and *quo warranto* actions or other suits that, "under [the governing] law, [may] be brought only on behalf of the public at large."

553 U.S. at 895 (alteration in original) (quoting *Martin v. Wilks*, 490 U.S. 755, 762 n.2 (1989), then quoting *Richards*, 517 U.S. at 804).

The sixth *Taylor* exception does not apply here because the CWA does not "expressly foreclose successive civil litigation by nonlitigants." *Id.* (citation modified). Defendants correctly note that under the CWA, certain federal or state *government* enforcement actions expressly

preclude subsequent citizen suits. *See* 33 U.S.C. § 1365(b)(1)(B); 33 U.S.C. § 1319(g)(6)(A); *Cal. Sportfishing Prot. All.*, 728 F.3d at 873–77 (discussing the application of the statutory bars to citizen suits following government action). Under § 1319(g)(6)(A), citizen suits are barred as to "any violation . . . with respect to which a State has commenced and is diligently prosecuting an action under a State law comparable to this subsection." 33 U.S.C. § 1319(g)(6)(A). And under § 1365(b)(1)(B), a citizen suit may be barred where the government "has commenced and is diligently prosecuting a civil or criminal action . . . to require compliance with the standard, limitation, or order" at issue. 33 U.S.C. § 1365(b)(1)(B). But as Defendants conceded at argument, the CWA nowhere expressly forecloses successive citizen suits based on a prior citizen suit. We see no reason why this should not be so when the successive citizen suit is brought by a state.

### C. Obligation to Object

The CWA requires the district court to wait at least 45 days after a copy of the proposed consent decree has been received by the Attorney General and the EPA Administrator before entering a proposed consent decree. 33 U.S.C. § 1365(c)(3). Crown argues that Washington was required to lodge an objection to the proposed consent decree during the 45-day statutory waiting period. Because Washington failed to object during that period, Crown argues, it is now bound by the decree.

Crown's argument has no basis in law. First, neither Crown nor the district court points to any statutory text imposing an obligation on nonparties to object during the waiting period. Second, all the available evidence indicates that the waiting period exists to afford the federal

government—not citizen-suit plaintiffs—an opportunity to object. The statutory heading points directly to this purpose: "Protection of interests of United States." 33 U.S.C. § 1365(c)(3). Consistent with that purpose, the implementing regulation requires notice of the proposed settlement to the Attorney General, the EPA Administrator, and the relevant EPA Regional Administrator. 40 C.F.R. § 135.5(a). There is no requirement to notify citizen plaintiffs. Third, no statute or regulation provides a mechanism authorizing a citizen-suit plaintiff to enter an objection.

## IV. Conclusion

The district court erred in holding Washington's suit claim-precluded by the settlement between OHA and Crown. We remand for further proceedings consistent with this holding. We express no view on the merits of Washington's claims.

**REVERSED and REMANDED.**